Adam J. Tunning
Katherine E. Antonson
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Adam.Tunning@moultonbellingham.com
Kat.Antonson@moultonbellingham.com

Attorney for Reciprocity Industries, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| Reciprocity Industries, LLC,<br><br>                      Plaintiff,<br><br>-vs-<br><br>Century Indemnity Company,<br><br>                      Defendant. | Case No.<br><br>**RECIPROCITY INDUSTRIES, LLC'S BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA** |

## **INTRODUCTION**

Reciprocity Industries, LLC ("Reciprocity") is a Billings, Montana company. Century Indemnity Company ("Century") served a subpoena out of the U.S. Bankruptcy Court for the District of Delaware on Reciprocity. The Subpoena fails to comply with Fed. R. Civ. P. 45. Under Rule 45, "the court for the district where compliance is required", Montana in this case, "must quash" the Subpoena.

## BACKGROUND

Reciprocity is a Billings, Montana company that provides, among other things, software development, administrative support services, website management, call intake, advertising, and marketing to law firms representing clients in class action or multi-district litigation.

There is currently litigation pending in Delaware Bankruptcy Court involving the Boy Scouts of America and thousands of former boy scouts asserting abuse claims. *See In re Boy Scouts of America and Delaware BSA LLC*, (Del Bankr. 20-10343).

Reciprocity was retained by three law firms, Eisenberg Rothweiler, Kosnoff Law, and AVA Law Group, to provide administrative services including client intake and data entry for the abuse claims being filed by these law firms on behalf of their respective clients in *In re Boy Scouts of America*. In total, more than 15,000 claims were filed by these law firms, whose clients' data is now contained in Reciprocity's proprietary case management system.

On September 10, 2021, Century (one of the insurance companies that may be obligated to indemnify the Boy Scouts of America for the abuse claims) served Reciprocity with a Subpoena to produce documents in *In re Boy Scouts of America*. A copy of the Subpoena is attached as Exhibit 1. Reciprocity is not a party to *In re Boy Scouts of America*.

Century's Subpoena contains two pages of "Definitions", imposes three pages of "Instructions", and contains three pages with Century's preferred "Manner of Production". The Subpoena then presents fifteen overly broad requests for production seeking materials "For each [of the over 15,000] Claim Form[s]" and "All Documents" related to various matters concerning Reciprocity's work on this large project.

On September 24, 2021, Reciprocity wrote to Century (Exhibit 2), timely objecting to the Subpoena under Rule 45(d)(2)(B). Reciprocity objected to the Subpoena on the grounds that it seeks privileged information, proprietary information, and imposed an undue burden and expense. Reciprocity invited Century to reissue a new subpoena that addressed these concerns.

Century responded on October 4, 2021 (Exhibit 3) dismissing Reciprocity's concerns and demanding Reciprocity's "full and complete compliance with the [original] subpoena" by October 11, 2021, or it would file a motion to compel in Delaware (in further violation of Rule 45 which requires challenges to subpoenas to occur "in the court for the district where compliance is required.") In its response letter, Century took absolutely no steps to avoid imposing an undue burden or expense on non-party Reciprocity.

Century asserts that the information it seeks is relevant to determine who amongst the abuse claimants and attorneys is permitted to vote in the *In re Boy Scouts of America* bankruptcy case. However, on the same date, October 4, 2021, Century served comprehensive deposition and document subpoenas seeking to acquire the same information directly from the law firms and parties involved in the *In re Boy Scouts of America* abuse claims. *See* Exhibit 4.

## ARGUMENT

The Court should quash the subpoena for the following reasons: (1) it imposes an undue burden on Reciprocity in violation of Fed. R. Civ. P. 45(d)(1); (2) it does not allow Reciprocity a reasonable amount of time to comply in violation of Fed. R. Civ. P. 45(d)(3)(A)(i). (3) it seeks privileged attorney work product and attorney client communications in violation of Fed. R. Civ. P. 45(d)(3)(A)(iii); and (4) it seeks proprietary information which would require the disclosure of a "trade secret or other confidential research, development, or commercial information" in violation of Fed. R. Civ. P. 45(d)(3)(B)(i).

Pursuant to Fed. R. Civ. P. 45(c)(1), reasonable attorney's fees should be assessed against Century for failure to comply with Fed. R. Civ. P. 45.

### I. THE SUBPOENA IMPOSES AN UNDUE EXPENSE AND BURDEN ON RECIPROCITY

Century's broad and sweeping Subpoena to Reciprocity should be quashed because it is unduly burdensome. Fed. R. Civ. P. 45(d)(1) requires that the party

issuing a subpoena "take reasonable steps to avoid imposing an undue burden or expense on a party subject to a subpoena", and Fed. R. Civ. P. 45(d)(3)(A)(iv) states a Court <u>must</u> quash or modify a subpoena that subjects a person to an undue burden.

This Court has previously stated that "non-party status is a significant factor to be considered" in determining whether a subpoena is unduly burdensome. *Ross v. Brigade Leveraged Cap. Structures Fund, Ltd.,* No. CV 14-95-BLG-SPW, 2014 WL 3854949, at *4 (D. Mont. Aug. 5, 2014) citing *Whitlow v. Martin,* 263 F.R.D. 507, 512 (C.D.Ill.2009). Where discovery can by produced by an actual party to the litigation, courts are reluctant to require non-parties to produce it. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014). Accordingly, "[a] court may prohibit a party from obtaining discovery from a non-party if that same information is available from another party to the litigation."

In this case Century is seeking information from Reciprocity related to the validity of the abuse claims filed against the Boy Scouts of America in the Delaware bankruptcy proceedings. Of course, information bearing on the legitimacy of a claimant's claim can be sought directly from the party or his attorney in *In re Boy Scouts of America* itself.

Indeed, it appears Century has acknowledged this as it issued sweeping subpoenas against the law firms that filed the abuse claims on the same day it responded to Reciprocity's objections. (*See* Exhibit 4.) Whatever relevant and

accessible information Century seeks from Reciprocity can be obtained in a far less burdensome manner by simply making these requests to the actual parties in *In re Boy Scouts of America.* Reciprocity is not a party to *In re Boy Scouts of America* and should not be burdened by requests which could easily be directed instead to the parties themselves.

Further, even if the materials were not accessible from the parties themselves, "an evaluation of undue burden [under Rule 45] requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005). In making such evaluation, courts consider the relevance of the requested documents, the party's need for the documents, the extensiveness of the documents, the time period covered by the request, and how specifically the documents are described in the subpoena. *Id.* Here, Century's Subpoena imposes significant burden on Reciprocity without a corresponding value.

It is quite clear from the face of the Subpoena that Century intentionally avoided its obligation to take "reasonable steps to avoid imposing an undue burden" on Reciprocity. The Subpoena contains two pages of "Definitions", three pages of "Instructions", and three pages of its preferred "Manner of Production", before culminating in fifteen exceptionally broad requests for production that do not bother to specify what Century is actually seeking. (*See* Exhibit 1.) Century's requests for

production seek materials "For each [of the over 15,000] Claim Form[s]" and "All Documents" related to various matters concerning Reciprocity's work on this large project, and does not make any arrangements to cover the cost of compliance with the Subpoena. (Exhibit 1).

Century claims these fifteen requests are "highly relevant to determining who is permitted to vote for the Plan." (Exhibit 3). That statement is Century's sole justification for its Subpoena, which includes requests for documents pertaining not just to the abuse claims but also Reciprocity's processes, procedures, employees, and employee bonus structure. In what is possibly Century's most perplexing request of all, Century requests "A copy of the contents of the intake system(s) [Reciprocity] used to log, track, update and otherwise process Claim Forms…" It is difficult to grasp how all of this information is needed to simply "determine who is permitted to vote" in the Delaware bankruptcy proceedings and Century has failed to provide any convincing explanation.

In any event, it would take Reciprocity months to comply with the Subpoena and costs tens of thousands of dollars. Just deciphering the overly broad requests and trying to comply with all of the definitions, instructions, and manner of production would require outside legal and technical support. Once a procedure for accessing and producing all of this information was put together, it would then take an exorbitant amount of time and resources to review the materials for over 15,000

claims and parse out responsive and, as discussed more fully below, attorney client privileged or work product materials.

Ultimately, Century can obtain the information it seeks from the actual parties to its litigation, Century did not take reasonable steps to avoid imposing and undue burden and expense on non-party Reciprocity, and Reciprocity would be subjected to an extreme burden which vastly outweighs the benefit to Century. Therefore, the Subpoena should be quashed under Rule 45(d)(1).

## II. THE SUBPOENA DOES NOT ALLOW A REASONABLE AMOUNT OF TIME TO COMPLY.

The Court should also quash the Subpoena because it does not provide a reasonable amount of time for Reciprocity to comply with Century's expansive requests. Fed. R. Civ. P. 45(d)(3)(A)(i) states that upon motion the Court must quash a subpoena that does not allow a reasonable time to comply.

Century's Subpoena provided a mere fourteen days to comply with its overly broad requests and burdensome instructions demanding, among other things, all documents on over 15,000 claims. After Reciprocity objected, Century responded by demanding the documents in seven days. As explained above, this simply does not allow enough time for Reciprocity to review, consolidate, and provide for production of the documents and information. Therefore, the Subpoena should be quashed.

## III. THE SUBPOENA SEEKS PRIVILEGED ATTORNEY CLIENT COMMUNICATIONS AND ATTORNEY WORK PRODUCT

Fed. R. Civ. P. 45(d)(3)(A)(iii) provides that, upon a timely motion, the court "must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies." In this case, Reciprocity facilitated communications between abuse claimants and their lawyers and supports software which allows the clients and lawyers to store information related to their proof of claim forms. These materials are protected by the attorney-client privilege and work-product doctrine.

### A. The Subpoena Requests Information Protected By The Attorney Client Privilege

The purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Dion V. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294 (D. Mont. 1998). Under § 26-1-803(1), MCA, "An attorney cannot, without the consent of the client, be examined as to any communication made by the client to the attorney or the advice given to the client in the course of professional employment." A court may not determine the privilege was waived based merely on a finding that the information would be helpful or relevant to a party's case. *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. at 295.

Nevertheless, Century seeks to acquire all documents and correspondence Reciprocity maintains concerning the abuse claimants' correspondence with their lawyers and the lawyers' preparation of the proof of claim forms. The Subpoena specifically requests information concerning communications attorneys had with claimants, as well as all records Reciprocity possesses related to that representation. (*See e.g.* Exhibit 1, Request for Productions No. 5, 7.)

### B. The Subpoena Requests Information Protected By The Work Product Doctrine

The purpose of the work product doctrine is to "prevent exploitation of a party's efforts in preparing for litigation." *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 292 (D. Mont. 1998). The work product doctrine protects materials prepared in anticipation of litigation by an attorney, provided "by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." The rule for determining whether a particular document is protected by the Work Product Doctrine was stated in the *Draggin' y Cattle Co. v. Addink, & JCCS:* Considering the nature of the documents and factual situation in a particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. 2013 MT 319,312 P.3d 451.

Here, Century wishes to compel productions of all documents maintained by Reciprocity relating to the lawyers' preparation of the claim forms on behalf of their

clients. (*See e.g.* Exhibit 1, Request for Productions No. 7, 10-11.) The Work Product Doctrine protects the disclosure of this information.

Despite being presented with this objection, Century took no efforts to limit its Subpoena to non-privileged materials in compliance with Rule 45. (*See* Exhibits 2-3.) Therefore, this presents yet another reason to quash the subpoena.

**IV.   THE SUBPOENA SEEKS PROPRIETARY INFORMATION**

Federal Rule of Civil Procedure 45(d)(3)(B)(i) requires that a Court must quash or modify a subpoena which requests documents or information "disclosing a trade secret or other confidential research, development, or commercial information." In order to compel disclosure of trade secrets, the party seeking disclosure must establish the relevance and necessity of the trade secrets to the prosecution or defense of the particular case. *Rodriguez Barcenas v. Ford Motor Co.*, No. C 03-04644 RMW (EAI), 2005 WL 8162028, at *2 (N.D. Cal. Feb. 28, 2005).

Century's Subpoena seeks proprietary information which would require the disclosure of a "trade secret or other confidential research, development, or commercial information" in violation of Fed. R. Civ. P. 45(d)(3)(B)(i). Specifically, the Subpoena requires production of "[a]ll Documents and Communications Concerning [Reciprocity's] website, caseopp.com." and "a copy of the contents of the intake system(s) that [Reciprocity] used to log, track, update and otherwise

process Claim Forms." This information is proprietary and confidential.

Further, production of all documents and communications concerning Reciprocity's website, reciprocity's bonus structure, the names of all of Reciprocity's employees, Reciprocity's advertisements, and a copy of the contents of Reciprocity's intake system would require Reciprocity to produce propriety business information which is wholly irrelevant to Century's dispute.

Reciprocity ignored the objections on this basis and refused to provide any protections or compensation structure for the production of such sweeping materials. Therefore, this presents yet another reason to quash the subpoena.

### V.   SANCTIONS AND ATTORNEY'S FEES

"A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed. R. Civ. P. 45(c)(1).

Here, Century is well aware of the hardship this Subpoena would impose on Reciprocity. Reciprocity made a good faith effort to clearly outline its objections to the Subpoena within its letter to Century, providing specific context as to why Century's request was so burdensome.

Century responded with a single justification, that the requested information is relevant to determine who may vote in the bankruptcy case. Further, Century threatened to force Reciprocity, a Montana Company, to appear before the Delaware Bankruptcy Court to resolve this matter, in direct contravention of the Federal Rules of Civil Procedure.

Reciprocity is not a party to the underlying Delaware action. The burden imposed by Century is unreasonable and Century should have known their subpoena was an unreasonable burden or at least worked with Reciprocity to revise the Subpoena to fit within the confines of Rule 45. As such Reciprocity is entitled to attorney's fees for having to file this Motion to Quash.

## CONCLUSION

Century's Subpoena should be quashed because it is unduly burdensome, provides no time or compensation to comply, seeks privileged attorney work product and attorney client communications, and seeks proprietary information. For these reasons, this Court should grant Reciprocity's Motion to Quash.

**DATED** this 8th day of October 2021.

                MOULTON BELLINGHAM PC

By:   */s/ Adam J. Tunning*
      ADAM J. TUNNING
      KATHERINE E. ANTONSON
      *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was duly served upon the following via CM/ECF on this 8th day of October, 2021.

Stamatios Stamoulis
Stamoulis & Weinblatt LLC
800 N. West Street -Third Floor
Wilmington, DE 19801
stamoulis@swdelaw.com

Tancred Schiavoni Daniel Shamah
O'Melveny & Myers LLP Times Square Tower
7 Times Square
New York, NY 10036-6537
tschiavoni@omm.com
dshamah@omm.com

                                                        */s/ Adam J. Tunning*
                                                        Adam J. Tunning

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2)(e), I certify that this document is printed text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word is 2,640 excluding the Caption, Signature Line, and Certificate of Compliance.

By: __/s/ *Adam J. Tunning*____
Adam J. Tunning

4825-6603-4942, v. 1