**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MONTANA, BILLINGS DIVISION**

Reciprocity Industries, LLC,

Plaintiff,

-vs-                                                    Case No. 21-00011

Century Indemnity Company,

Defendant.

**CENTURY'S MEMORANDUM OF LAW IN OPPOSITION TO
RECIPROCITY INDUSTRIES, LLC'S
<u>MOTION TO QUASH CENTURY'S SUBPOENA</u>**

MATTHEW M. HIBBS
ROBERT C. GRIFFIN
Crowley Fleck PLLP
1915 South 19th Avenue
Bozeman, MT 59718
Main: 406.556.1430
Fax: 406.556.1433
mhibbs@crowleyfleck.com
rgriffin@crowleyfleck.com

*Counsel for Century Indemnity
Company, as successor to CCI
Insurance Company, as successor to
Insurance Company of North America*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........ **ERROR! BOOKMARK NOT DEFINED.**

ARGUMENT ................................................................................................1

    I      IF THE COURT DECIDES TO RULE ON THE MOTION, IT SHOULD
DENY IT AND ORDER COMPLIANCE WITH THE REQUESTS. .......................1

        A.    Century seeks information that is  plainly relevant to plan
confirmation. ..............................................................................1

        B.    The subpoena is not unduly burdensome..................................8

        C.    The information Century seeks is not privileged....................10

        D.    Reciprocity Failed to Provide a Privilege Log. .......................15

        E.    If any privilege applies, then the disclosure  to
Reciprocity waived privilege. ..................................................16

        F.    The work product doctrine does not apply here. .....................20

        G.    Reciprocity fails to show that the subpoena  seeks
proprietary information............................................................22

        H.    Reciprocity's request for attorney's fees is baseless. .............23

CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

Page

**Cases**

11 U.S.C. § 1126(a) ............................................................................................... 3, 4

18 U.S.C. §§ 152(4), 157 ............................................................................................. 5

*Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989) 14

*Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) ......................... 22

*Asarco LLC v. Atlantic Richfield Co.*, CV 12-53-H-DLC, 2013 WL 12448555, at *3 (D. Mont. Sept. 20, 2013) ..................................................................................................... 15

*Barr Marine Prods., Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979) ............... 17

*Beckam Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ..................... 23

*Cash Today v. Greenberg*, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) .......................... 22

*Cash Today v. Greenberg*, No. Civ.A. 02-MC-77-GMS, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) ................................................................................................................ 23

*Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003) ............................... 5

*Clady v. Los Angeles Cty.*, 770 F.2d 1421, 1433 (9th Cir. 1985) ................................ 17

*Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982) ..................... 21

Fed. R. Bank. P. 9014 ................................................................................................. 1

Fed. R. Bankr. P. 7026 ............................................................................................... 1

Fed. R. Bankr. P. 9011(b) .......................................................................................... 5

Fed. R. Civ. P. 45(e)(2) ............................................................................................ 15

Fed. R. Civ. P. 45(e)(A) ........................................................................................... 15

*Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009) ......................................................................................................................... 5

*HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2001) ............................. 12

*In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004) ........................... 2

*In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ....................................................... 3

*In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 294 (2013) ................ 5

*In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 252 (E.D. Pa. 2014) .................. 10

*In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011) ............................... 3

*In re Grand Jury Subpoenas*, 803 F.2d 493, 498 (9th Cir. 1986) ................................. 14

*In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012) .................................................. 11

*In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975) ................................................. 14

# TABLE OF AUTHORITIES

**Page**

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) ................................................................................................................ 11

*In re Rogatory*, 144 F.R.D. 272, 276 (E.D. Pa. 1992) ................................................................ 23

*In re Taylor*, 407 B.R. 618, 647 (Bankr. E.D. Pa. 2009) ............................................................. 6

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ........................................ 17

*In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) ......................................................... 5

*In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006) ......................................................... 5

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012). 11

*Kephart v. Nat'l Union Fire Ins. Co.*, 2007 WL 2253608, at *2 (D. Mont. Apr. 2, 2007) .......... 16

*Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999)........ 5

*Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) ................................................................................... 18

*Lechowski-Mercado v. Seely Swan High School*, 2021 WL 2802662, at *2–3 (D. Mont. July 6, 2021) .......................................................................................................................................... 9

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.,* 206 F.R.D. 525, 528 (D. Del. 2002)... 22

*Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) .................................. 22

*Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005) ............................................... 10

*Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) ....................................... 24

*Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010) ............................................................. 14

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999) .......................................................................................................................................... 18

*Obasi* 2011 WL 6336153, at *3, 4, 8; 655 F.3d 274, 284 (3d Cir. 2011)...................................... 6

*Parrick v. FedEx Grounds Package Sys.*, No. CV 09-95-M-DWM-JCL, 2010 WL 2854314, at *6 (D. Mont. July 19, 2010)............................................................................................................ 22

*Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) .... 22

*Ross v. Brigade Leveraged Cap. Structures Fund, Ltd.*, 2014 WL 3854949, at *4 (D. Mont. Aug. 5, 2014) ....................................................................................................................................... 9

*U.S. ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. CV 15-80-BU-SHE, 2018 WL 1610959, at *2 (D. Mont. Apr. 3, 2018) ................................................................................... 14

*U.S. v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996) ............................ 16

*U.S. v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989) ........................................................................ 11

*U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) .................................................................... 11

*U.S. v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973)................................................................... 18

*U.S. v. Int'l Bus. Machines Corp.*, 81 F.R.D. 628, 630 (S.D.N.Y. 1979).................................... 23

## TABLE OF AUTHORITIES

**Page**

*U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).......................................................................... 18

*U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)........................................................................ 11

*U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)........................................................................ 11

*U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009)........................................................................ 11

*U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020)........................................................ 20

*United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)............................................................ 19

*United States v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) ......................................................... 5

*Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 141 (N.D. Tex. 1989) ......................................... 12

*Voelker v. BNSF Railway Co.*, CV 18-172-M-DLC, 2020 WL 6742865, at *2 (D. Mont. Nov. 17, 2020) ................................................................................................................................................ 20

*Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.,* 314 F.R.D. 138, 141 (D Del. 2016) ................................................................................................................................................ 15

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America, ("Century") responds to Reciprocity Industries, LLC's ("Reciprocity") motion to quash Century's subpoena ("Subpoena") as follows. For avoidance of redundancy, Century incorporates by reference the preliminary statement and background contained in its memorandum of law in support of its motion to transfer, filed concurrently with this response.

## ARGUMENT

**I    IF THE COURT DECIDES TO RULE ON THE MOTION, IT SHOULD DENY IT AND ORDER COMPLIANCE WITH THE REQUESTS.**

### A.    Century seeks information that is plainly relevant to plan confirmation.

Under Rule 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[1] The material Century seeks is relevant to investigating the claims explosion that overwhelmed Boy Scouts post-petition. In permitting discovery against aggregators, this Court observed:

> I think the *evidence that was submitted raises concerns about how some of these claims were generated* and the recent declaration where Mr. Kosnoff adds to that concern. So, at this time, I'm going to permit that discovery. I think that the

---

[1] The Fed. R. Civ. P. apply to these bankruptcy proceedings. Fed. R. Bankr. P. 7026; Fed. R. Bank. P. 9014.

> discovery could be relevant to voting and I think we need to get
> that underway, regardless of the plan that's in front of me.[2]

These "concerns" apply especially to Reciprocity, because it is involved in

thousands of POCs, and purports to represent some 15,000 claimants.[3]

Involvement on this scale implicates the plan and is necessary to develop several of

Century's Plan objections.

*First*, the claims explosion that overwhelmed Boy Scouts post-petition—and

in which Reciprocity was intimately involved—raises questions about

manipulation of the voting process. Under Section 1129(a)(10), the Court has a

"monitoring function" that requires confirming that at least one class of impaired

claims accepts the plan.[4] In *Combustion Engineering*, the Third Circuit was

concerned that "stub" claimants, who were not impaired (or "only slightly

impaired"), would get to vote on the plan. That is analogous to ginned up

claimants voting on a plan here, who are similarly unimpaired (and perhaps even

nonexistent). Such manipulation of the voting process is precisely what concerned

the Third Circuit.[5] Here, investigating illegitimate or non-existent claims—

controlled by attorneys through master ballots—is necessary to ensure the integrity

---

[2] November 15, 2021 Declaration of Salvatore J. Cocchiaro, Ex. 2 at 46:11–21 (emphasis added).

[3] Reciprocity's Motion at 2.

[4] *See In re Combustion Engineering*, 391 F.3d 190, 244–47 (3d Cir. 2004).

[5] *Id*.

of the voting process, and the Plan's compliance with Section 1129(a)(10).  Absent this discovery, it will be impossible to determine if the plan vote is legitimate and if all votes should count.[6]  And the discovery will also likely shed light on the conduct of other law firms, given the evidence that Reciprocity worked for at least a dozen other firms.[7]

    ***Second***, that the proposed plan offers a $3,500 expedited distribution to any claimant, without any "additional information to the Settlement Trust" runs afoul of the good faith requirement in Bankruptcy Code Section 1129.[8]  On its face, vote buying reflects a lack of good faith, as does paying invalid (or non-existent) claims.  This particularly concerns insurers because the avalanche of post-petition claims increases the "quantum of liability that the insurers would be called to absorb" while impairing insurers' contractual rights.[9]  Among the ways that the Plan impairs insurers' rights is by supposedly empowering the Trustee to abrogate

---

[6]  *See* 11 U.S.C. § 1126(a) (holders of claims may vote to accept or reject a plan).

[7]  See Cocchiaro Decl., Ex. 8, ¶ 21-22.

[8]  See Cocchiaro Decl., Ex. 21 (Del. Bankr. 20-10343, Sept. 30, 2021 Fifth Amended Plan, Art. III.B.10, D.I. 6443); See Cocchiaro Decl., Ex. 22 (Del. Bankr. 20-10343, Sept. 30, 2021 Disclosure Statement for the Fifth Amended Plan, Art. VII, Sec. B.5.a, D.I. 6445).

[9]  *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 212 (3d Cir. 2011); *see also In re SPM Mfg. Corp.*, 984 F.2d 1305, 1311 (1st Cir. 1993) (bankruptcy courts lack authority to enter orders that "expand the contractual obligations of parties"); *In re Crippin*, 877 F.2d 594, 598 (7th Cir. 1989) ("[B]ankruptcy courts do not have the power to rewrite contracts to allow debtors to continue to perform on more favorable terms.").

coverage defenses, including the statute of limitations, while shielding Abuse Claims from any form of judicial scrutiny prior to allowance and payment.[10] Investigating how many claims have been improperly submitted goes to this Plan objection.  Moreover, discovering later that POCs were improperly generated and submitted will undermine the vote and lead to an eleventh-hour disruption of any confirmation.[11]

**Third,** attorneys who signed POCs had a legal responsibility to vet them, making discovery even more appropriate.  When the coalition of firms to which Reciprocity's principal belongs asked the Delaware Court to allow attorneys—rather than claimants—to sign the POCs, its counsel stated that "[a]ll claims . . . will be thoroughly vetted."[12]  But the sheer number of attorneys participating in mass signings casts doubt on whether these lawyers kept their promise, let alone (i) complied with the oath they affirmed by signing the POCs or (ii) their obligations under Rule 9011(b), which states that by signing "a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the

---

[10]   *See* Cocchiaro Decl., Ex. 21 at Ex. A (Trust Distribution Procedures) Art. VIII.E.

[11]   *See* 11 U.S.C. § 1126(a); *see also* Cocchiaro Decl., Ex. 12, ¶ 7 (exempting voting issues from discovery deadlines).

[12]   *See* Cocchiaro Decl., Ex. 23 (Del. Bankr. 20-10343, Oct. 13, 2020 Omnibus Reply of the Coalition of Abused Scouts for Justice, D.I. 1496), ¶ 41.

circumstances . . . the allegations and other factual contentions have evidentiary support."[13]

An attorney undertakes a legal responsibility by affirming the oath above the signature line in a POC. Disregarding that oath exposes the attorney signing the POC to sanctions, disciplinary action, and even criminal penalties.[14] In addition, as the court stated in *In re Obasi,* "Bankruptcy Rule 9011 has specifically been held to apply to proofs of claim," which mandates a pre-filing "inquiry."[15] That court further observed that "[c]ompliance with Bankruptcy Rule 9011 is ***particularly important for proofs of claim*** because a properly filed proof of claim constitutes *prima facie* evidence of the validity and amount of the claim," and "[t]he Court must therefore be able to rely on the integrity of the proofs of claim before it."[16]

---

[13] Fed. R. Bankr. P. 9011(b); *see also* Model R. Prof. Conduct 3.3, cmt. 3 (ABA 2011) ("[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry.")

[14] *See e.g.*, *In re Disciplinary Proceeding Against McGrath*, 178 Wash. 2d 280, 294 (2013) (disbarring attorney who filed false proofs of claim); *see also* 18 U.S.C. §§ 152(4), 157; *United States v. Connery*, 867 F.2d 929, 932 (6th Cir. 1989) (same); *In re Thomas*, 337 B.R. 879, 886 (Bankr. S.D. Tex. 2006) (referring similar conduct to the U.S. Attorney).

[15] No. 10-10494 (SHL), 2011 WL 6336153, at *7 (Bankr. S.D.N.Y. Dec. 19, 2011); *see also Hannon v. Countrywide Home Loans, Inc. (In re Hannon)*, 421 B.R. 728, 731 (Bankr. M.D. Pa. 2009); *In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006), *aff'd*, 223 Fed. Appx. 310 (5th Cir.2007); *Cash-N-Advance v. Dansereau*, 64 Fed. Appx. 417 (5th Cir. 2003); *Knox v. Sunstar Acceptance Corp. (In re Knox)*, 237 B.R. 687, 699 (Bankr. N.D. Ill. 1999).

[16] *Id.* (emphasis added, internal quotations and citations omitted).

Nor is this duty to investigate delegable—not even to the signing attorney's associate, and certainly not to a claim aggregation shop churning out claims by the thousand.  In *Obasi*, the signing attorney relied on a litigation support firm to "prepare[] proofs of claim, which were then submitted to the firm for review by an attorney at or near the time of filing."[17]  The associate, working "under the general supervision of" the signing attorney, would review the proofs of claim using an internal checklist and file them using the singing attorney's electronic signature.[18]  The court "found that the conduct [at issue] runs afoul of Bankruptcy Rule 9011"ᵂ because "[t]he person signing, filing, submitting, or advocating a document has a ***nondelegable*** responsibility to the court" and "is ***personally*** responsible for reviewing the document."[19]  As the Third Circuit has explained, this duty "requires more than a rubber-stamping of the results of an automated process by a person who happens to be a lawyer." [20]

***Fourth***, the Delaware Court has held that it would allow discovery into diligence behind attorney-signed POCs, finding that an attorney who signs a claim

---

[17]  2011 WL 6336153 at *2.

[18]  *Id.*

[19]  *Obasi* 2011 WL 6336153, at *3, 4, 8; 655 F.3d 274, 284 (3d Cir. 2011) (internal quotations and citations omitted); *see also In re Taylor*, 407 B.R. 618, 647 (Bankr. E.D. Pa. 2009) ("[I]n signing and presenting a document without any knowledge of its factual basis . . . [lawyer] failed to discharge her duty."), *rev'd*, No. 09-CV-2479-JF, 2010 WL 624909 (E.D. Pa. Feb. 18, 2010), *aff'd in part, vacated in part, rev'd in part*, 655 F.3d 274 (3d Cir. 2011).

[20]  655 F.3d 274, 288 (3d Cir. 2011).

"might be[come] … a fact witness" and "may be subject to a deposition."[21]

Moreover, the Delaware Court cautioned that it is "ill-advised" for attorneys to

sign POCs and explained that it would be "concern[ed]" if "a thousand claims [are]

signed by a particular lawyer."[22]  The Delaware Court's holding is consistent with

*In re Rodriguez*,[23] where the court held that "signing a proof of claim is an

assertion of personal knowledge of the facts alleged in the proof of claim," which

subjects the attorney to "bec[oming] a fact witness as to the allegations contained

in the proof of claim."[24]  Just as a fact witness cannot invoke the attorney-client

privilege to block cross-examination, an attorney signing a proof of claim "results

in waiver of otherwise applicable privileges."[25]  Other courts in similar contexts

are in accord.  *See Swanson v. Trasino Park-Hudsons, LLC* (*In re Vission , Inc.*),

No. 07-21957, 2008 WL 2230741, at *4 n.3 (Bankr. E.D. Wis. 2008) ("By signing

the affidavit, counsel runs the risk of becoming a fact witness, and any future hope

of asserting privilege may disappear."); *In re Powerhouse Licensing, LLC*, 441

F.3d 467, 473-74, 2006 (6th Cir. 2006) ("[C]ounsel for petitioners elected to

interject [the attorney] into these proceedings and thereby waived the attorney-

---

[21]  *See* Cocchiaro Decl., Ex. 24, (Oct. 14, 2020 Hr'g Tr.) at 183:19–22; 170:2–12.

[22]  *See* Cocchiaro Decl., Ex. 24, (Oct. 14, 2020 Hr'g Tr.) at 190:12–17; 183:19–22; 170:2–12.

[23]  No. 10-70606, 2013 WL 2450925 (Bankr. S.D. Tex. June 5, 2013).

[24]  *Id.* at *3–4.

[25]  *Id.* at *4.

client privilege.  In so doing, the work product privilege was waived as well."); *In re Gawker Media LLC*, No. 16-11700 (SMB), 2017 WL 2804870, at *2, 4 (Bankr. S.D.N.Y. June 28, 2017) (Rule 2004 attorney discovery should not be denied "merely because it may touch on privileged matters," especially where attorney would be examined about factual matters); *Cf. Friction Div. Prod., Inc. v. E.I. Du Pont De Nemours & Co.*, 117 F.R.D. 535, 538 (D. Del. 1987) (factual representations "create[] the opening for [opposing party] to investigate the foundations for those representations").  If the signing attorneys waived privilege by placing their diligence process at issue, then that extends to the third-party vendor those lawyers used to affix signatures to the questionable POCs.  It cannot be that attorneys like Mr. Van Arsdale can delegate their non-delegable duties under Rule 9011(b) while not also transferring the waiver about inquiring into the underlying diligence.

B.    **The subpoena is not unduly burdensome.**

Reciprocity's claim that the subpoena is too burdensome for a non-party ignores that Mr. Van Arsdale owns, operates, and closely supervises Reciprocity. That statement also disregards that he submitted thousands of POCs and jointly represents 15,000 claimants.[26]  Mr. Van Arsdale will collect his share of a 40% contingency fee from some 15,000 claims under a plan of reorganization that he

---

[26]  *See* Cocchiaro Decl., Ex. 1 at 6.

hopes the Delaware Court will approve. He and Reciprocity should be cooperating with—rather than obstructing—discovery.

Even if Reciprocity were an uninvolved third party, that would not excuse it from complying with the subpoena,[27] which Reciprocity's authority proffered confirms.[28] Reciprocity cannot simply point Century to "actual parties" without identifying which parties. In any event, Century seeks information about the processes ***Reciprocity*** followed in preparing POCs. Not only will going after the claimants invite accusations that Century is invading the privacy of 15,000 claimants, but it would be largely beside the point because Century's inquiry is directed at Reciprocity's conduct in filing POCs. In fact, Reciprocity itself concedes that the information related to the claims it submitted "is now contained in Reciprocity's" case management system.[29] Moreover, Requiring that Century seek information from each individual claimant—rather than from Reciprocity— would be far more burdensome and cumbersome.

---

[27] *See, e.g.*, *Lechowski-Mercado v. Seely Swan High School*, 2021 WL 2802662, at *2–3 (D. Mont. July 6, 2021) (denying in part nonparty's motion to quash subpoena); *see also Ross v. Brigade Leveraged Cap. Structures Fund, Ltd.*, 2014 WL 3854949, at *4 (D. Mont. Aug. 5, 2014) (explaining, "[t]he party moving to quash a subpoena bears the burden of persuasion," and requiring compliance by nonparty).

[28] *See Ross*, 2014 WL 3854949, at *4 (cited by Reciprocity at 5) (denying nonparty's motion to quash and holding that subpoena was not unduly burdensome, notwithstanding movant's nonparty status).

[29] Reciprocity's Motion at 2.

9

To determine whether a subpoena imposes an undue burden, courts "weigh the burden to the subpoenaed party against the value of the information to the serving party," considering "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[30] The Delaware Court observed that discovery here is relevant, stating that "the evidence raises concerns about how some of these claims were generated," and that discovery "could be relevant to voting."[31]  Nowhere does Reciprocity explain why it cannot simply extract responsive documents from its case management system. In any event, Reciprocity complains of the breadth of the requests, but, as Reciprocity acknowledges, Century merely seeks documents "concerning Reciprocity's work on *this*" case, *i.e.*, work relating to a single project spanning less than two years.[32]  Nor does Reciprocity offer any evidence for its claim that it would take "months to comply" and would cost be overly expensive.[33]

### C.     The information Century seeks is not privileged.

As the "party asserting attorney-client privilege," Reciprocity "has the burden of establishing the existence of an attorney-client relationship *and* the

---

[30]  *Moon v. SCP Pool Corp.,* 232 F.R.D. 633, 637 (C.D. Cal. 2005); *accord In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 252 (E.D. Pa. 2014).

[31]  *See* Cocchiaro Decl., Ex. 2 at 46:11–21.

[32]  Reciprocity's Motion at 3.

[33]  Reciprocity's Motion at 7.

privileged nature of the communication."[34]  "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed."[35]  The Ninth Circuit applies an eight-part test to determine whether information is covered by the attorney-client privilege, and "[t]he party asserting the privilege bears the burden of proving each essential element:"[36]

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.[37]

*First*, Reciprocity fails to proffer facts establishing the second element—that Reciprocity served as a "professional legal advisor."[38]  According to its motion, Reciprocity provided "administrative services"—***not*** legal advice.  Moreover, this is merely an attorney assertion; Reciprocity does not proffer any evidence via

---

[34]  *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010); *accord In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012); *accord U.S. v. Furst*, 886 F.2d 558, 576 (3d Cir. 1989); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (same); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153 (D.D.C. 2012).

[35]  *Graf*, 610 F.3d at 1156 (quoting *U.S. v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)).

[36]  *Graf*, 610 F.3d at 1156 (quoting *U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009)).

[37]  *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

[38]  *U.S. v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 n.2 (9th Cir. 1992)).

affidavit to establish privilege.[39]  And Reciprocity does not proffer any facts

showing that attorneys had even been retained when Reciprocity performed its

"client intake and data entry," leaving open the possibility that Reciprocity

interviewed clients *before* any lawyers were even involved.

     *HPD Labs., Inc. v. Chlorox Co.*, is instructive.[40]  There, Clorox tried to

claim privilege over documents containing statements between Clorox employees

and an in-house paralegal in the legal department.[41]  The court held that the

documents were not privileged because of the paralegal's independence from any

involved attorneys.[42]  The court found compelling several indicia of independence,

including (i) the paralegal "not consult[ing] with any lawyers before answering

questions," (ii) no evidence that the paralegal was "merely conveying the advice

that she received from" the lawyers, and (iii) no claim that the paralegal acted at

the in-house counsel's direction, responded to questions in accordance with

express instructions from lawyers, or ever reported her activities to her attorney

supervisor.[43]

     So too here.  Reciprocity, which concedes that it provided "administrative

---

[39] *See, e.g.*, *Varo, Inc. v. Litton Sys., Inc.*, 129 F.R.D. 139, 141 (N.D. Tex. 1989) ("A party claiming the privilege must make a proper showing, usually by affidavit, that all factors have been satisfied").

[40] *HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2001).

[41] *HPD Labs., Inc.*, 202 F.R.D. at 415.

[42] *Id.*

[43] *Id.* at 418.

support," such as "client intake and data entry," makes no claim that it consulted with its client law firms prior to communicating with clients.  Nor does Reciprocity claim that, in speaking with clients and conducting its services, it was "merely conveying the advice" it received from lawyers, or that it acted at the direction of its client law firms more generally.  Accordingly, Reciprocity's privilege argument fails because Reciprocity's work was not necessary to obtain "legal advice *from an attorney* or to assist *an attorney* to formulate and render legal advice to a client."[44]

***Second***, Reciprocity fails to prove the third element—that Century's requests seek communications relating to the provision of legal advice. Reciprocity specifically cites RFPs 5 and 7, arguing that they seek attorney-client communications, but that is incorrect.  RFP 5 seeks documents concerning processes and procedures followed by Reciprocity—plainly not communications, and not relating to obtaining legal advice—and RFP 7 seeks documents or communications concerning POCs, which could include communications having nothing to do with obtaining legal advice.[45]

The remaining RFPs—which Reciprocity ignores—seek information that could not possibly be privileged.  RFPs 1, 2, and 15 seek claim files and copies of intake logs—***not*** communications.  Such information is manifestly not protected,

---

[44]  *HPD Labs., Inc.*, 202 F.R.D. at 415.

[45]  *See* Cocchiaro Decl., Ex. 25 (Del. Bankr. 20-10343, Sept. 14, 2021 Subpoena to Reciprocity Industries, LLC, D.I. 6211-10) at 9-10.

because "[t]he privilege only protects disclosure of the communications

themselves; it does not protect disclosure of the underlying facts."[46]  Likewise,

RFP 3 seeks names and email addresses associated with accounts Reciprocity used

to submit POCs to Omni, which are plainly not communications.[47]  Century's other

RFPs similarly seek "disclosure of the underlying facts," not communications:[48]

- ***RFP 4*** seeks agreements with law firms about Boy Scouts-related services.  These are not communications between privileged persons in confidence for the purpose of obtaining legal advice, and the Ninth Circuit has repeatedly found that "fee arrangement[s]" are not "protected by the attorney-client privilege."[49]

- ***RFP 5*** seeks documents about the processes and procedures followed in providing services in connection with the Boy Scouts, such as the protocols used for executing signatures for the POCs.[50]  This RFP too seeks factual information.

- ***RFP 6*** seeks documents concerning communications about obtaining attorney signatures for POCs submitted in this case.  This RFP thus seeks information about processes, not any privileged legal analysis.

- ***RFP 8*** seeks the names of employees or members of other organizations who worked on this matter, which too is plainly factual

---

[46]  *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010); *accord U.S. ex rel. Rembert v. Bozeman Health Deaconess Hosp.*, No. CV 15-80-BU-SHE, 2018 WL 1610959, at *2 (D. Mont. Apr. 3, 2018).

[47]  *See In re Grand Jury Subpoenas*, 803 F.2d 493, 498 (9th Cir. 1986) (rejecting the "unsupported conclusion that [a] fee-payer's identity represents a confidential communication").

[48]  *Admiral Ins. Co. v. U.S. Dist. Court for Dist. Of Arizona*, 881 F.2d 1486, 1493 (9th Cir. 1989) ("the privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

[49]  *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975).

[50]  *See* Cocchiaro Decl., Ex. 25 at 9–10.

information.

- ***RFP 13*** seeks documents and communications concerning advertisements.

- ***RFP 14*** seeks documents concerning incentive bonuses and/or payments made to non-attorneys based on volume of claimants recruited in this case.

By their plain terms, all of these RFPs seek purely factual information about matters that have nothing to do with legal advice—matters to which no privilege could apply.

### D.    Reciprocity Failed to Provide a Privilege Log.

Reciprocity cannot just assert privilege and then not produce any documents. If Reciprocity claims privilege, it bears the burden "to describe the withheld documents in a privilege log as required by [the Federal Rules]."[51]  That log must "describe the nature of the withheld documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim."[52]  This Court has observed that

> The requisite detail for inclusion in a privilege log consists of a description of the responsive material withheld, the identity and position of its author, the date it was written, the identity and position of all addresses and recipients, the material's present location, and

---

[51]  *Asarco LLC v. Atlantic Richfield Co.*, CV 12-53-H-DLC, 2013 WL 12448555, at *3 (D. Mont. Sept. 20, 2013); *see* Fed. R. Civ. P. 45(e)(A).

[52]  Fed. R. Civ. P. 45(e)(2); Fed. R. Bankr. Proc. 9016; *see also Wal-Mart Stores, Inc. v. City of Pontiac Gen. Emps.' Ret. Sys.,* 314 F.R.D. 138, 141 (D Del. 2016) (Party "failed to assert a valid claim of privilege with respect to the documents requested" by simply claiming that documents are privileged).

specific reasons for its being withheld, including the privilege invoked and grounds thereof.[53]

Beyond these basic requirements:

> Other required information, such as the relationship between ... individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.[54]

But Reciprocity mentions nothing at all about a privilege log, let alone supplies an affidavit "provid[ing] sufficient detail" about "the relationship between" "individuals not normally within the privileged relationship," such as a third party providing "administrative services."[55]  The Court should reject Reciprocity's Motion to Quash on this basis alone.

### E.    If any privilege applies, then the disclosure to Reciprocity waived privilege.

Even if privilege applies, Reciprocity fails to establish that no waiver occurred—an element that Reciprocity "must affirmatively demonstrate."[56]

---

[53] *Kephart v. Nat'l Union Fire Ins. Co.*, 2007 WL 2253608, at *2 (D. Mont. Apr. 2, 2007).

[54] *Kephart*, 2007 WL 2253608, at *3 (quoting *U.S. v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).

[55] Reciprocity's Motion at 2.

[56] *U.S. v. Zolin*, 809 F.2d 1411, 1415 (9th Cir. 1987).

"Voluntary disclosure of privileged communications constitutes waiver."[57]

Communications from Reciprocity—a third party that by its own admission

provides administrative services without special analysis (such as an accountant)—

are not privileged.  Nor is what a lawyer says to such a party shielded.[58]  And

Reciprocity does not claim that any of its client law firms asserts privilege over

any communications directly with a client.  Therefore, material in Reciprocity's

possession is by definition something for which privilege—if it ever existed—was

waived.[59]

A narrow exception applies only where the third party "ha[s] been engaged

to assist the attorney in providing legal advice."[60]  As with the attorney-client

privilege generally, "[w]hat is vital to the privilege is that the communication must

be made in confidence for the purpose of obtaining *legal* advice *from the*

---

[57] *U.S. v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (disclosures to third party consultants not privileged where consultants were not necessary to improve the comprehension of counsel to enable counsel to provide legal advice).

[58] *Clady v. Los Angeles Cty.*, 770 F.2d 1421, 1433 (9th Cir. 1985).

[59] *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), as amended (Oct. 12, 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *Barr Marine Prods., Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979) (Communications between attorney and client are not privileged if made in the presence of or communicated to third parties.").

[60] *Richey*, 632 F.3d at 566.

*lawyer*."[61]  "Courts must narrowly construe the exception," because it applies only where "the third party [is] 'nearly indispensable or serve[s] some specialized purpose in facilitating the attorney-client communication.'"[62]  For example, communications to an accountant that the client's tax lawyer hires do not waive the privilege because "[a]ccounting concepts are a foreign language" to some attorneys, and the accountant's ability to translate can enable the attorneys to render sound legal advice.[63]  Thus, the privilege extends to communications disclosed to a third party "only if the purpose of the third party's participation is to *improve* the comprehension of communications between attorney and client."[64]

*Ravenell v. Avis Budget Grp., Inc.*, is instructive.[65]  There, defendants claimed attorney-client privilege over communications with a third-party that conducted audits on defendants' behalf.  The court held that vendor communications were not privileged because they were unnecessary for effective attorney-client communication.[66]  The vendor's work involved creating "an online platform for the dissemination and collection of questionnaires," then

---

[61]  *U.S. v. Gurtner*, 474 F.2d 297, 299 (9th Cir. 1973) (emphasis in original) (quoting *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

[62]  *In re Restasis*, 352 F. Supp. 3d at 211 (quoting *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999)).

[63]  *See Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

[64]  *In re Restasis*, 352 F. Supp. 3d at 211.

[65]  No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012).

[66]  *Id*. at *3.

"summariz[ing] the collected data in a chart, and, based on criteria provided by defendants' counsel," "ma[king] a preliminary assessment of whether the individuals who completed the questionnaires met [certain] requirements."[67]  The court held that defendants failed to show why the auditing firm needed "to review the contents of the responses," rather than simply provide the platform, and the auditing firm's "preliminary assessments neither improved the comprehension of the communications between attorney and client, nor provided advice outside the general expertise of attorneys."[68]  Thus, defendants "waived the attorney-client privilege."[69]

Reciprocity's work is similar to that of the vendor in *Ravenell*.  None of the law firms with which Reciprocity worked—including AVA—has shown that disclosing anything at all to Reciprocity was "necessary" for them to render legal advice.[70]  Reciprocity even acknowledges that its work was "administrative,"[71] and thus did not improve "the comprehension of the communications between attorney and client."[72]  To the contrary, Reciprocity merely "facilitated communications" between claimants and their lawyers and provided "support software" for storing

---

[67]  *Id.*
[68]  *Id.* (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).
[69]  *Id.* at *3.
[70]  *Id.* at *2.
[71]  Reciprocity's Motion at 2.
[72]  *Id.* at *3 (quoting *Ackert*, 169 F.3d at 139).

data.[73]  These administrative functions are the type of work that "neither improved

the comprehension of the communications between attorney and client, nor

provided advice outside" of the law firms' "general expertise."[74]  Such services are

at most similar to creating "an online platform for the dissemination and collection

of questionnaires," "summariz[ing] the collected data in a chart," and then "making

a preliminary assessment of whether the individuals who completed the

questionnaires met [certain] requirements."[75]  Thus, any privilege that may have

existed has been waived.

### F.    The work product doctrine does not apply here.

The work-product doctrine "shelters the mental processes of the attorney,

providing a privileged area within which" he or she can "analyze and prepare [a]

client's case."[76]  It protects discovery of "documents and tangible things that are

prepared in anticipation of litigation."[77]  To qualify for work product protection,

documents (1) "must be prepared in anticipation of litigation," and (2) "must be

prepared by or for another party or by or for that other party's representative."[78]

The "work product doctrine does not apply to information collected or

---

[73]  Reciprocity's Motion at 9.

[74]  *Ravenell*, 2012 WL 1150450 at *3.

[75]  *Id.* at *3.

[76]  *U.S. v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020).

[77]  *Voelker v. BNSF Railway Co.*, CV 18-172-M-DLC, 2020 WL 6742865, at *2 (D. Mont. Nov. 17, 2020).

[78]  *In re Grand Jury Subpoena*, 357 F.3d 900, 907 (9th Cir. 2004).

communications made in the normal course of business," and instead applies "*only to … material that would not have been generated but for the pendency or imminence of litigation.*"[79]

As with the attorney-client privilege, Reciprocity makes only a bare assertion that the work product doctrine applies, offering no clue about how documents that it created are protected by a privilege designed to shield "mental processes *of the attorney*."[80]  But "the burden of demonstrating that a document is protected as work-product rests with the party asserting" the privilege.[81]  The work product doctrine does not apply to RFPs that seek documents about **Reciprocity's** work in preparing and submission facially questionable POCs.

As discussed, many of the RFPs seek factual information such as Reciprocity's contracts and procedures, or the identity of relevant parties, and cannot possibly reflect an attorney's "mental processes:"  **RFPs 1** and **2** seek original information related to the Reciprocity-submitted POCs.  **RFPs 3**, **5**, and **6** seek factual information about how Reciprocity submitted the POCs, including its processes.  **RFPs 4** and **9** seek Reciprocity's financial arrangements relating to its

---

[79]  *Voelker*, 2020 WL 6742865, at *2.
[80]  *Sanmina Corp.*, 968 F.3d at 1119.
[81]  *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982) (holding that document was not privileged where the proponent "failed to establish that the document was prepared by or at the direction of an attorney," or "that it was prepared in anticipation of litigation").

work processing the POCs. And **RFP 8** seeks the identity of relevant parties or witnesses. Purely factual material of this nature from a non-attorney vendor is not subject to work product protections.[82]

### G. Reciprocity fails to show that the subpoena seeks proprietary information.

"In general," "the fruits of pre-trial discovery are presumptively public," and "there is no absolute privilege for trade secrets and similar confidential information."[83] A party may overcome this presumption by proving that "specific prejudice or harm will result if no protective order is granted."[84] This burden requires that "the party moving to quash must show, with specificity, that disclosure will work a clearly defined and serious injury to the moving party."[85] "Broad allegations of harm, unsubstantiated by specific examples or articulated

---

[82] *Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999) (holding that fee arrangements "do[] not come within the ambit of the work-product privilege"); *see also Cottillion v. United Ref. Co.*, 279 F.R.D. 290, 302 (W.D. Pa. 2011) (work-product doctrine "does not protect documents prepared in the ordinary course of businesses," "or for other nonlitigation purposes").

[83] *Parrick v. FedEx Grounds Package Sys.*, No. CV 09-95-M-DWM-JCL, 2010 WL 2854314, at *6 (D. Mont. July 19, 2010).

[84] *Id.* (quoting *Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)); *Cash Today v. Greenberg*, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002); *accord Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 528 (D. Del. 2002); *accord Am. Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987).

[85] *Parrick*, 2010 WL 2854314, at *6 (quoting *Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002)).

reasons, do not satisfy" this burden.[86]

Reciprocity fails to carry its burden. It asserts that information concerning its website "is proprietary and confidential,"[87] but nowhere does Reciprocity provide "articulated reasons" why "specific prejudice or harm" would result.[88] Reciprocity mentions perfunctorily that the Subpoena seeks documents concerning Reciprocity's website and intake system, but Reciprocity omits any explanation why disclosure of this information would cause specific prejudice or harm. It is "not the court's role to fathom arguments on [Reciprocity]'s behalf," and "blanket and generalized assertions of confidentiality, absent allegations regarding specific harm, are not sufficient to sustain a motion to quash."[89]

## H.    Reciprocity's request for attorney's fees is baseless.

Reciprocity requests sanctions under Rule 45, contending that the Subpoena is unduly burdensome and that Century failed to engage meaningfully with Reciprocity about its concerns.[90] Reciprocity is wrong on the law and facts.

---

[86] *Phillips ex. Rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002) (quoting *Beckam Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)).

[87] Reciprocity's Motion at 11–12.

[88] *Phillips ex. Rel. Estates of Byrd*, 307 F.3d at 1210.

[89] *Cash Today v. Greenberg*, No. Civ.A. 02-MC-77-GMS, 2002 WL 31414138, at *3 (D. Del. Oct. 23, 2002) (citing *U.S. v. Int'l Bus. Machines Corp.*, 81 F.R.D. 628, 630 (S.D.N.Y. 1979) (assertions that information is "confidential and sensitive" and that disclosure would cause "severe and irreparable injury" not sufficient")); *see also In re Rogatory*, 144 F.R.D. 272, 276 (E.D. Pa. 1992).

[90] *See* Reciprocity's Motion at 12–13.

Under Rule 45(c)(1), sanctions are inappropriate "absent undue burden imposed by an oppressive subpoena," or "bad faith on the part of the requesting party."[91]  As explained, the Subpoena is not unduly burdensome.[92]  "[T]he burdens of complying with the subpoena are the ones that count" for sanctions purposes, and Reciprocity proffers no evidence whatsoever that compliance would be onerous.  Nor does it proffer any evidence that complying with the Subpoena—which seeks information concerning a *single project*—would be costly.  Instead, Reciprocity laments that it is not a party to the Boy Scouts Bankruptcy, seemingly suggesting that the burden threshold is lower for non-parties.  But, as explained, both Reciprocity and its principal have been engaged with the Boy Scouts Bankruptcy, undermining any suggestion that Reciprocity is merely an uninvolved third party.  And, in any event, the Ninth Circuit has repeatedly affirmed that it "will not read 'undue burden' differently just because a non-party is subpoenaed."[93]  Thus, Reciprocity fails to show that the Subpoena imposes an undue burden or expense.

To the extent Reciprocity argues Century acted in bad faith by offering a "single justification" in response to Reciprocity's objection letter, that is simply incorrect.  Century explained that the information Reciprocity's possesses is highly

---

[91]  *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012).
[92]  *See supra* at 17–18.
[93]  *Mount Hope Church*, 705 F.3d at 429.

relevant to the core issue of voting in the Boy Scouts Bankruptcy, and it also disagreed with Reciprocity's position that the information was privileged, explaining that the subpoena seeks factual information to which the privilege does not apply.[94]  What's more, Century explained its well-grounded position that, to the extent any privilege applies, privilege was clearly waived under the circumstances.[95]  Finally, Century *offered to meet and confer* about the requests,[96] but instead of accepting Century's offer, Reciprocity rushed to court and filed this motion.  At bottom, Reciprocity seems to take issue with its obligation to comply with the Subpoena in light of Century's good-faith positions that the Subpoena seeks relevant, non-privilege information.  But, as the Ninth Circuit has explained, "the mere need to respond to an opponent's advocacy in our civil justice system should [not] be viewed as unduly burdensome when legal arguments are advanced in good faith."[97]  The Court should reject Reciprocity's baseless sanctions request.

## CONCLUSION

For the foregoing reasons, should the Court decide to rule on the Motion to Quash, it should deny it and order compliance with Century's Subpoena.

---

[94]  Century's Oct. 4, 2021 Letter at 1, D.I. 2-3.
[95]  *See id.*
[96]  Century's Oct. 4, 2021 Letter at 1.
[97]  *Mount Hope Church*, 705 F.3d at 429.

Dated: November 15, 2021               Respectfully Submitted By:

                                       */s/ Robert C. Griffin*

                                       MATTHEW M. HIBBS
                                       ROBERT C. GRIFFIN
                                       Crowley Fleck PLLP
                                       1915 South 19th Avenue
                                       Bozeman, MT 59718
                                       Main: 406.556.1430
                                       Fax: 406.556.1433
                                       mhibbs@crowleyfleck.com
                                       rgriffin@crowleyfleck.com

                                       *Counsel for Century Indemnity
                                       Company, as successor to CCI
                                       Insurance Company, as successor to
                                       Insurance Company of North America*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that Century's Memorandum of Law in Opposition to Reciprocity Industries, LLC's Motion to Quash Century's Subpoena is printed with proportionately spaced Times New Roman text typeface 14 points; is double-spaced; and the word count, calculated by Microsoft Word, is 6,211 words long, excluding the Caption, Table of Contents, Table of Authorities, Exhibit Index (see Cocchiaro Declaration), and this Certificate of Compliance.

DATED this 15th day of November, 2021.

CROWLEY FLECK PLLP

By /s/ Robert C. Griffin
    Matthew Hibbs
    Robert C. Griffin