# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA, BILLINGS DIVISION

| | |
|---|---|
| Reciprocity Industries, LLC, <br><br>                  Plaintiff, <br><br>     -vs- <br><br> Century Indemnity Company, <br><br>                  Defendant. | Case No. 21-00011 |

## CENTURY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO TRANSFER RECIPROCITY INDUSTRIES, LLC'S MOTION TO QUASH CENTURY'S SUBPOENA TO THE <u>BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE</u>

MATTHEW M. HIBBS
ROBERT C. GRIFFIN
Crowley Fleck PLLP
1915 South 19th Avenue
Bozeman, MT 59718
Main: 406.556.1430
Fax: 406.556.1433
mhibbs@crowleyfleck.com
rgriffin@crowleyfleck.com

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………ii

PRELIMINARY STATEMENT .................................................................1

BACKGROUND ....................................................................................6

      A.    The Boy Scouts Bankruptcy has been pending for a year a half and has a confirmation hearing scheduled for January 2022. ..................................................................6

      B.    In the Boy Scouts Bankruptcy, unrebutted evidence shows that claims aggregators, such as Reciprocity, facilitated a nationwide campaign to generate facially questionable POCs. ...................................................6

      C.    AVA Law Group is part of AIS and owns Reciprocity.............7

      D.    The Court authorized Rule 2004 discovery of certain third-party aggregators and then permitted even broader discovery in connection with confirmation. ...........................9

      E.    Mr. Van Arsdale has opposed the subpoenas Century served on him. ........................................................10

ARGUMENT .......................................................................................11

  I    THE COURT SHOULD TRANSFER THE  MOTION TO THE DELAWARE COURT. ..............................................................................11

      A.    Principles of judicial economy support transfer. ....................14

      B.    Transfer will avoid inconsistent outcomes. .............................15

      C.    Transfer will promote better case management of the underlying Boy Scouts Bankruptcy. .......................................17

      D.    Transfer will not impose any burden on Reciprocity. .............17

CONCLUSION.....................................................................................19

# TABLE OF AUTHORITIES

**Cases**

; *Lopez v. CIT Bank, N.A.*, 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) ...................... 19

*Adderley v. Three Angels Broadcasting Networks, Inc.*, 2019 WL 4204327, at *1–2 (S.D. Ill. Sept. 5, 2019) ............................................................................................................ 16

*AmTrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, MC 16-1-BLG-CSO, MC 16-2-BLG-CSO, 2016 WL 1446136, at *3 (D. Mont. Apr. 12, 2016) ............................................. 12, 14, 16, 17

*AmTrust N. Am., Inc.*, 2016 WL 1446136, at *4 .......................................................................... 15

*Chase-Morris v. Tubby*, No. 65927/2019, 2020 WL 4516920, at *4 (N.Y. Sup. Ct. Aug. 3, 2020) ................................................................................................................................................ 19

*Chem-Aqua, Inc. v. Nalco Co.*, 3:14–mc–71–D–BN, 2014 WL 26459999, at *3 (N.D. Tex. June 13, 2014) ................................................................................................................................ 18

*Swenson v. Geico Cas. Co.*, 336 F.R.D. 206, 210 (D. Nev. 2020) ................................................ 19

*U.S. v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 487 (D. Md. 2002) .......................................... 17

*United States v. 3M Co.*, No. 20-MC-00320-LG-RPM, 2020 WL 6587052, at *1 (S.D. Miss. Nov. 10, 2020) ........................................................................................................... 11, 12

*Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45–46 (D.D.C. 2014) ........................................... 16

*XY, LLC v. Trans Ova Genetics, L.C.*, 307 F.R.D. 10, 12–13 (D.D.C. 2014) ............................. 11

**Rules**

Fed. R. Civ. P. 45(f) ........................................................................................................... 11, 17

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century"), submits this memorandum of law in connection with its motion under Rule 45(f) of the Federal Rules of Civil Procedure to transfer Reciprocity Industries, LLC's ("Reciprocity") motion to quash Century's subpoena ("Subpoena") to the United States Bankruptcy Court for the District of Delaware ("Delaware Court"), where the Boy Scouts of America bankruptcy ("Boy Scouts Bankruptcy") is pending (the "Motion to Transfer").

## PRELIMINARY STATEMENT

The Subpoena that is the subject of the Motion to Transfer arises out of the massive Boy Scouts Bankruptcy pending in the United States Bankruptcy Court for the District of Delaware.  The Honorable Laurie Silverstein, the Chief Judge of that Court, has been presiding over that complex and hotly litigated reorganization for 18 months.  It would be unreasonable to expect—and unfair to ask—that a judge who is unfamiliar with that bankruptcy take on resolving an issue that is intimately connected to a dispute that has defined that proceeding.  Nor is there any reason that this Court should do so.

The Subpoena seeks information about the fact that when Boy Scouts filed for bankruptcy it was a defendant in 275 cases with about 1,400 more possible claims on the horizon.  That was after years in the tort system.  Yet only a few

months after the Delaware Court set a bar date for asserting claims against the Debtors, Boy Scouts was suddenly inundated with over 95,000 claims. This explosion was not random. A group of claims aggregators—including Reciprocity at the forefront—engineered an aggressive, nationwide campaign to generate claims by channeling people responding to internet advertisements to websites with all the information necessary to submit seemingly plausible claims. The stated objective of those behind this effort was to generate a supermajority of claims and thus control the bankruptcy, as the record in the bankruptcy shows.

The unrebutted evidence demonstrates that a handful of lawyers signed thousands of proofs of claim ("POCs") in the days just before the bar date, and a dozen lawyers each signed hundreds in one day. Astonishingly, members of a group called Abused in Scouting or AIS—a fictitious entity created by three separate firms, two of which are one-man shops and the other a nine-lawyer outfit—filed almost 19,000 POCs alone. Andrew Van Arsdale, who is the owner and principal of Reciprocity, is one of AIS's founders. Mr. Van Arsdale is also the principal at AVA Law Group and "co-own[s], operate[s], and closely supervise[s]"

Reciprocity, which his co-counsel nebulously describes as a "software development and business solutions company."[1]

A forensic document expert's analysis shows that in many instances someone photocopied a lawyer's signature page and attached it *en masse* to the POCs. Some firms had a third-party vendor or aggregator submit hundreds of POCs by adding an electronic signature in rapid-fire succession—sometimes only seconds apart—to batches of POCs. These and other irregularities suggest that plaintiffs' lawyers bought claims from aggregators—such as Reciprocity—and sent signature pages to them to attach to POCs for filing without the signing lawyer (or any lawyer) ever having seen them. Reciprocity is among the handful of claims-aggregating businesses that the evidence shows collectively generated tens of thousands of claims. When Century presented this evidence to the Delaware Court, neither Reciprocity nor any other party offered contradictory evidence.

The material Century now seeks is relevant to plan solicitation, voting, and confirmation. It is also relevant to assessing the Section 1129(a)(3)'s good-faith requirement. Discovering later that POCs were improperly generated and

---

[1] November 15, 2021 Declaration of Salvatore J. Cocchiaro, Ex. 1 (Del. Bankr. 20-10343, Feb. 16, 2021 Timothy D. Kosnoff's Sur-Reply in Support of His Objection to Insurers' Motion for an Order Authorizing Rule 2004 Discovery of Certain Proofs of Claim, Ex. A, D.I. 2204-1), ¶ 12.

submitted will undermine the vote and lead to an eleventh-hour disruption of any

confirmation.

In granting authority to conduct discovery against certain aggregators, Judge

Silverstein has already recognized the relevance of this information:

> I think the evidence that was submitted raises concerns about how
> some of these claims were generated and the recent declaration where
> Mr. Kosnoff adds to that concern. So, at this time, I'm going to
> permit that discovery. I think that the discovery could be relevant to
> voting and I think we need to get that underway, regardless of the plan
> that's in front of me.[2]

But Reciprocity and Mr. Van Arsdale do not want any investigation into how the

POCs were manufactured. So instead of cooperating with the discovery requests

or addressing any objections with the Delaware Court—where it has already

sought relief—Reciprocity rushed into this Court, hoping to find a more

sympathetic audience.

This Court should transfer this Subpoena dispute to the Delaware Court

because Judge Silverstein is intimately familiar with the case and the contested

discovery, and: (i) transfer would serve principles of judicial economy, because the

Boy Scouts Bankruptcy has been pending for nearly two years and is on a

lightning-fast discovery schedule; (ii) transfer would provide for consistent

outcomes, especially given the Motion to Quash raises the same issues that are

---

[2]    *See* Cocchiaro Decl., Ex. 2 (Del. Bankr. 20-10343, Aug. 30, 2021 Hr'g Tr.) at
46:11–20.

before the Delaware Court in connection with other parties; (iii) the dispute raises questions about the scope of discovery, which are more properly resolved by the issuing court; and (iv) Reciprocity will suffer no burden, as Mr. Van Arsdale is engaged in the Boy Scouts Bankruptcy and his counsel recently filed a letter there on Reciprocity's behalf.  Indeed, the Court recently stated that similar subpoenas issued by Century to Timothy Kosnoff—co-counsel with Mr. Van Arsdale— should be transferred to the Delaware Court instead of resolved at the place of compliance due to the Court's intimate understanding of the issues, which are substantially the same here.

   The reason to transfer has become both more compelling and more urgent in recent days following the filing of the Debtors' *Emergency Motion for an Order Enforcing the Solicitation Procedures* to address allegations of solicitation violations involving another one of AIS' founders.[3]  If the Court were to decline to transfer the Motion to Quash, it should take this matter up on expedited basis and deny the Motion to Quash for the reasons set forth in Century's response filed concurrently with this motion.

---

[3]    *See* Cocchiaro Decl., Ex. 3 (Del. Bankr. 20-10343, D.I. 7118; 7119).

## BACKGROUND

A.    **The Boy Scouts Bankruptcy has been pending for a year and a half and has a confirmation hearing scheduled for January 2022.**

This is an enormous mass-tort bankruptcy that has been pending for 18 months.  There are more than seven thousand docket entries, and the court has held dozens of evidentiary and other types of hearings.  Among the contested issues is why Boy Scouts was overrun with an exponential increase in claims during the nine months between filing for bankruptcy and the bar date.  An important piece of that equation is the role of aggregators, such as Reciprocity, in generating these claims.  That issue alone has been subject to several motions and hearings.[4] Currently pending before the Delaware Court are discovery requests similar to what is at issue here, including hearings set for this Wednesday, November 17, 2021 with respect to other claims aggregators.

B.    **In the Boy Scouts Bankruptcy, unrebutted evidence shows that claims aggregators, such as Reciprocity, facilitated a nationwide campaign to generate facially questionable POCs.**

AIS—a fictitious entity created by three separate firms—filed 19,000 POCs alone.  This staggering number was made possible by Reciprocity's aggressive tactics.  After the Delaware Court issued its bar-date Order, AIS, with Reciprocity owner Mr. Van Arsdale as one of its three founding and operating members, embarked on a nationwide campaign, running advertisements that falsely

---

[4]    *See* Cocchiaro Decl., Ex. 2 at 46.

proclaimed that people could submit claims anonymously: "You're never going to appear in court, you're never going to have to take a deposition . . . You can remain anonymous. We handle everything."[5] AIS's website included a "Map of Scouting Abuse Locations" that detailed the "locations by state, troop number, city, and camp name where our clients reported they were abused by Boy Scouts leaders.[6] The website also included a "List of Confirmed Boy Scouts Abusers," allowing visitors to search a roster of allegedly "confirmed" sex abusers, again in all 50 states.[7] AIS also ran ads and produced longer, infomercial-style promotional videos—many of which could be found on the AIS website, social media accounts, and YouTube.[8] The ads directed viewers to contact AIS and provided the website and a phone number. The website thus supplied all the information anyone would need to manufacture a potentially passable claim.

### C.    AVA Law Group is part of AIS and owns Reciprocity.

AIS's legally required disclosure under Bankruptcy Rule 2019 reveal that the entity is comprised of two professional corporations each with a solo-lawyer

---

[5]    *See* Cocchiaro Decl., Ex. 4 (Del. Bankr. 20-10343, Aug. 25, 2020 Declaration of Evan Roberts ("Roberts Decl."), D.I. 1145-3) at Ex. A-1.

[6]    *See* Cocchiaro Decl., Ex. 5 (Del. Bankr. 20-10343, Aug. 26, 2020 Declaration of Janine Panchok-Berry ("Panchok-Berry Decl."), D.I. 1165), ¶ 29; Cocchiaro Decl., Ex. 6 (Del. Bankr. 20-10343, Aug. 26, 2020 Panchok-Berry Decl., Ex. 4, D.I. 1166) at Ex. 4 at 000003.

[7]    *See* Cocchiaro Decl., Ex. 5, ¶ 29.

[8]    *Id.* ¶¶ 26–28.

behind them,  AVA Law Group, Inc and Kosnoff Law, and a small 9 person firm

in Philadelphia.[9]  "Reciprocity "is a software development and business solutions

company co-owned, operated and closely supervised by . . . Andrew Van Arsdale

of AVA Law.  Through Reciprocity, certain allied law firms collect, synthesize and

maintain claims information."[10]  Indeed, the evidence shows that over a dozen law

firms names appear on POCs associated with Reciprocity, and that Reciprocity did

everything from caller intake to final submissions of POCs in the Boy Scouts

Bankruptcy for these firms.[11]

Both AVA Law Group and Reciprocity have appeared in the Delaware

Court.  AVA filed a verified disclosure statement under Bankruptcy Rule 2019,[12]

and the attorney representing AVA Law Group, Christopher Simon, wrote to Judge

Silverstein on behalf of Reciprocity, as recently as September 6, 2021, to object to

Reciprocity being specifically identified in the order granting discovery for the

insurers.[13]

---

[9]   *See* Cocchiaro Decl., Ex. 7 (Del. Bankr. 20-10343, Oct. 7, 2020 Second
      Amended Verified Statement of Coalition of Abused Scouts for Justice, Ex. A,
      D.I. 1429-1), at 62.
[10]  *See* Cocchiaro Decl., Ex. 1, ¶ 12.
[11]  *See* Cocchiaro Decl., Ex. 8 (Del. Bankr. 20-10343, Feb. 11, 2021 Declaration of
      Erich Speckin ("Speckin Decl."), D.I. 2211-3), ¶¶ 20–22.
[12]  *See* Cocchiaro Decl., Ex. 9 (Del. Bankr. 20-10343, Aug. 9, 2021 Verified
      Statement of Abused in Scouting, D.I. 5923).
[13]  *See* Cocchiaro Decl., Ex. 10 (Del. Bankr. 20-10343, Sept. 6, 2021 Letter, D.I.
      6166).

### D. The Court authorized Rule 2004 discovery of certain third-party aggregators and then permitted even broader discovery in connection with confirmation.

On August 30, 2021, the Delaware Court authorized discovery against certain aggregators.[14] The Delaware Court allowed Century (and later other parties) to issue subpoenas "seeking the production of documents and information" from various entities that assisted the law firms with submitting POCs.[15] The Delaware Court later expanded the discovery it would permit in connection with plan confirmation.[16] The Subpoena seeks documents relating to the POCs submitted by Reciprocity to the Delaware Court, the processes used for soliciting claimants, the processes used for obtaining attorney signatures on the POCs, the intake systems used to process and track such POCs, and other related information.

---

[14]  *See* Cocchiaro Decl., Ex. 2 at 46:10–21.

[15]  *See* Cocchiaro Decl., Ex. 11 (Del. Bankr. 20-10343, Sept. 9, 2021 Discovery Order, D.I. 6184).

[16]  *See* Cocchiaro Decl., Ex. 12 (Del. Bankr. 20-10343, Oct. 8, 2021 Scheduling Order, D.I. 6528), ¶ 9.

E.    **Mr. Van Arsdale has opposed the subpoenas Century served on him.**

Century has separately subpoenaed Mr. Van Arsdale to produce documents and testify.[17]  He has refused to comply.[18]  Mr. Van Arsdale contends that he is not a party in this case and that Century's subpoena is inappropriate, notwithstanding that his professional corporation, along with Kosnoff Law and a third entity, claim to represent around 15,000 claimants and have injected themselves into solicitation.[19]

Just this Friday, the Court held that Mr. Kosnoff is subject to jurisdiction in Delaware and suggested that Century request the transfer of its discovery disputes with Mr. Kosnoff to the Delaware Court:[20]

> I will say this, however, that I do view Mr. Kosnoff as a participant in the solicitation communication that went out from the committee and, as a participant in a solicitation, ***I think he's squarely in front of me for jurisdiction, so -- for jurisdiction purposes***. He has now injected himself into this case in a way he may not have done before .  But I haven't seen the subpoena that went out. If it went out from the court in California, then I think Mr. Wilks is right, under Rule 45, as I recall it, about how

---

[17]   *See* Cocchiaro Decl., Ex. 13 (Oct. 4, 2021 Deposition Subpoena of Andrew Van Arsdale); Cocchiaro Decl., Ex. 14 (Oct. 4, 2021 Document Subpoena of Andrew Van Arsdale); Ex. 13 (Proof of Service of Oct. 4, 2021 Deposition Subpoena of Andrew Van Arsdale); Cocchiaro Decl., Ex. 14 (Proof of Service of Oct. 4, 2021 Document Subpoena of Andrew Van Arsdale).

[18]   *See* Cocchiaro Decl., Ex. 15 (Oct. 18, 2021 Responses and Objections of Andrew Van Arsdale).

[19]   *See* Cocchiaro Decl., Ex. 16 (Oct. 15, 2021 Letter from AVA) at 1.

[20]   *See* Cocchiaro Decl., Ex. 17 (Del. Bankr. 20-10343, Nov. 12, 2021 Hr'g Tr.) at 60:10-21.

one enforces it, and you can get the court in California to refer
it to me. They may not want to get mixed up in this mess.

Mr. Van Arsdale has no plausible basis to contend that he is not also subject

to the jurisdiction of the Delaware Court.  And while Mr. Van Arsdale has been

subpoenaed to sit for a deposition, he has indicated that he does not plan to

comply.[21]

## ARGUMENT

### I   THE COURT SHOULD TRANSFER THE MOTION TO THE DELAWARE COURT.

Under Rule 45(f), the Court may transfer a motion to quash to the issuing

court if there are "exceptional circumstances" present.[22]  The rule "was added to

'explicitly permit the transfer of subpoena-related motions from the court where

compliance is required to the issuing court,'"[23] and the reviewing court "may

consider a Rule 45(f) motion to transfer *before* a motion to quash, even if that

motion to quash was filed first."[24]  While the touchstone is "exceptional

---

[21]  *See* Cocchiaro Decl., Ex. 15.

[22]  Fed. R. Civ. P. 45(f).

[23]  *United States v. 3M Co.*, No. 20-MC-00320-LG-RPM, 2020 WL 6587052, at *1
(S.D. Miss. Nov. 10, 2020) (quoting *E4 Strategic Solutions, Inc. v. Pebble
Limited Partnership*, SA MC 15-00022-DOC (DFMx), 2015 WL 12746706, at
*2 (C.D. Cal. Oct. 23, 2015)).

[24]  *3M Co.*, 2020 WL 6587052, at *1; *see also XY, LLC v. Trans Ova Genetics,
L.C.*, 307 F.R.D. 10, 12–13 (D.D.C. 2014) (transferring because the subpoena-
recipient's "interest in obtaining local resolution of the motion to quash [was]
outweighed by the interests of the [issuing] Court in maintaining oversight of
all aspects of this complex litigation, especially since the court has already

circumstances," "the Advisory Committee notes and most courts have recognized that 'exceptional circumstances' has a slightly different meaning in the context of a Rule 45(f) motion to transfer than may otherwise be ascribed to it."[25]  Indeed, this Court has explained that while "avoiding burdens on local nonparties subject to subpoenas" is a concern, "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts."[26]  Thus, "the Court must balance the interest of local resolution against factors such as judicial economy and risk of inconsistent rulings."[27]

    *Amtrust N. Am., Inc.*—decided by this Court—is particularly instructive.[28] There, a party moved to compel compliance with a subpoena issued by the United States District Court for the Southern District of New York.  The subpoena

---

supervised substantial discovery and begun preparations for trial.").

[25]  *3M Co.*, 2020 WL 6587052, at *2 (citing *Wultz v. Bank of China*, 304 F.R.D. 38, 46-47 (D.D.C. 2014)); *see also AmTrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, MC 16-1-BLG-CSO, MC 16-2-BLG-CSO, 2016 WL 1446136, at *3 (D. Mont. Apr. 12, 2016).

[26]  *AmTrust N. Am., Inc. v. Safebuilt Ins. Servs., Inc.*, MC 16-1-BLG-CSO, MC 16-2-BLG-CSO, 2016 WL 1446136, at *3 (D. Mont. Apr. 12, 2016) (quoting Fed. R. Civ. P. 45(f) Advisory Committee Note (2013).

[27]  *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *3 (quoting *Venus Med. Inc. v. Skin Cancer & Cosmetic Dermatology Ctr. PC*, 2016 WL 159952, at *2 (D. Ariz. Jan. 14, 2016)).

[28]  *AmTrust N. Am., Inc.*, 2016 WL 1446136.

recipient requested that the dispute be transferred to SDNY, and this Court agreed that transfer was appropriate, because any interest in local resolution was outweighed by factors that were "better resolved in the SDNY litigation."[29]

First, "principles of judicial economy support[ed]" transfer, because "[t]he underlying action ha[d] been pending for more than a year and a half, and discovery appears to have been extensive and to have raised many disputes that have been resolved [in the SDNY]."[30]  Moreover, [s]ome of the issues briefed by the parties" "overlap[ped] with those already decided in the SDNY Litigation," making that court "much more familiar with the history of the litigation among these parties, and with the claims and defenses currently outstanding."[31]  Second, "the risk of issuing an inconsistent ruling [was] high, and weigh[ed] strongly in favor of transferring the actions to the issuing court," especially because the parties disagreed over "the scope of prior orders issued in the SDNY Litigation," and attempting "to interpret or apply these prior orders" "could lead to inconsistent rulings."[32]  Third, "issues regarding the scope of discovery are more properly resolved by the issuing court which is responsible for case management of the underlying litigation."  Indeed, deciding the dispute would "involve interpreting

---

[29]  *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *4.
[30]  *Id.*
[31]  *Id.*
[32]  *Id.*

the proper scope of discovery"—determinations "that should be made in the SDNY litigation."[33]

The same reasons warrant transfer here.  Specifically, transfer is appropriate because (i) it would serve principles of judicial economy, given that the Boy Scouts Bankruptcy has been pending for nearly two years and has adopted a highly accelerated discovery schedule; (ii) it would provide for consistent outcomes, especially because several other disputes concerning similar subpoenas issued by Century have arisen, both before the Delaware Court and in other jurisdictions; (iii) this dispute involves issues concerning the scope of discovery, which are more properly resolved by the issuing court; and (iv) Reciprocity will suffer no undue burden, having already sought relief there.

## A.     Principles of judicial economy support transfer.

*First*, principles of judicial economy support transferring, because the Boy Scouts Bankruptcy is a hotly contested case that has been pending for nearly two years, involves myriad parties, and is on an accelerated discovery schedule that required all document production to be substantially completed by November 5, 2021, with all depositions to be completed by December 1, 2021.  Moreover, proponents of the proposed Chapter 11 plan of reorganization—which Mr. Van Arsdale and his Coalition cohorts support—pushed for this accelerated

---

[33] *Id.* at *5.

14

confirmation schedule.  Reciprocity's owner, Mr. Van Arsdale, is well aware of that schedule, having participated in the proceedings and filed a statement under Bankruptcy Rule 2019.  Yet now Reciprocity and AVA Law Group seek to avoid their discovery obligation—while hoping to recover from a trust that the Delaware Court may establish.  Omitting any mention of the Boy Scouts Bankruptcy's schedule, Reciprocity rushed to this Court—which has nothing to do with the Boy Scouts Bankruptcy—in an attempt to obstruct Century's discovery, which, as Judge Silverstein already held, seeks relevant information.  Further, as in *AmTrust*, discovery in the Boy Scouts Bankruptcy "ha[s] been extensive and [has] raised many disputes that" the Delaware Court has resolved.[34]  Judge Silverstein is thus "more familiar with the history of the litigation," and "is in the best position to rule on the motions."[35]

## B.    Transfer will avoid inconsistent outcomes.

*Second*, transfer will provide for consistent outcomes, because the arguments Reciprocity raises—privilege, relevance, burden, and confidentiality—are currently before Judge Silverstein.  Specifically, Judge Silverstein is set to rule on other related disputes: in the first, a law firm moved to quash a subpoena that Century served on a claims-aggregator similar to Reciprocity,[36] and Century

---

[34]  *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *4.
[35]  *Id.*
[36]  *See* Cocchiaro Decl., Ex. 18 (Del. Bankr. 20-10343, Sept. 27, 2021 Motion of

opposed;[37] in the second, Century moved to compel another aggregator to comply with Century's subpoena.[38]  Accordingly, "the risk of issuing an inconsistent ruling is high," which "weighs *strongly* in favor of transfer" to the Delaware Court, which has already "presided over various discovery disputes."[39]  Further, Judge Silverstein is well-positioned to understand the implications the "resolution of the motion will have on the underlying litigation," and to account for the additional intricacies stemming from the fact that the Chapter 11 case is pending and other interests, including those of the estate, must be considered.[40]  And she can do so without protracted briefing, having established an expedited discovery resolution protocol.[41]

---

Marc J. Bern & Partners LLC to Quash Subpoena to Produce Documents issued to KLS Legal Solutions, LLC, D.I. 6380).

[37] *See* Cocchiaro Decl., Ex. 19 (Del. Bankr. 20-10343, Oct. 12, 2021 Century's Objection to Marc J. Bern & Partners' Motion to Quash Subpoena to Produce Documents Issued to KLS Legal Solutions, LLC, D.I. 6598).

[38] *See* Cocchiaro Decl., Ex. 20 (Del. Bankr. 20-10343, Oct. 27, 2021 Century's Letter Motion to Compel Verus, LLC to Comply with Subpoena, D.I. 6813).

[39] *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *5 (emphasis added).

[40] *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 45–46 (D.D.C. 2014) (transferring motion to quash given the "complex" issues and the "intricacies" of the underlying litigation).

[41] *See Adderley v. Three Angels Broadcasting Networks, Inc.*, 2019 WL 4204327, at *1–2 (S.D. Ill. Sept. 5, 2019) (transferring motion to quash asserting claims of privilege because issuing court was already familiar with those privilege issues and had ruled on discovery disputes involving them); *Wultz*, 304 F.R.D. at 46–47 (D.D.C. 2014).

## C.    Transfer will promote better case management of the underlying Boy Scouts Bankruptcy.

*Third*, this dispute raises issues concerning the scope of discovery, which are "more properly resolved by the issuing court which is responsible for case management of the underlying litigation."[42]  Reciprocity's first argument is that the subpoena is unduly burdensome, which includes Reciprocity's suggestion that Century is better off seeking the requested information from the parties in the Boy Scouts Bankruptcy.[43]  These arguments, which necessarily require familiarity with the history of discovery in the Boy Scouts Bankruptcy, "should be made in the [Delaware Court]."[44]

## D.    Transfer will not impose any burden on Reciprocity.

*Fourth*, transferring the Motion to Quash will not impose any burden on Reciprocity.[45]  Mr. Van Arsdale owns, operates, and runs Reciprocity.  Not only has Mr. Van Arsdale filed a Rule 2019 disclosure statement in the Boy Scouts

---

[42]  *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *5.

[43]  Reciprocity Industries, LLC's Br. in Supp. of Motion to Quash Subpoena ("Reciprocity's Motion") at 5, D.I. 2 (Oct. 8, 2021).

[44]  *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *5; *see also U.S. v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 487 (D. Md. 2002) (transferring because, *inter alia¸* the issuing court was in a better position to evaluate the claims given the complexity and scope of the underlying litigation, and where the judge from the issuing court had already expressed a willingness to the discovery issues in question).

[45]  *Cf.* F.R.C.P. 45(f) Advisory Committee's note (2013) (a primary concern under Rule 45 is "avoiding burdens on local nonparties").

Bankruptcy, but he is one of the founding members of AIS, which has made itself heard in the Boy Scouts Bankruptcy. And Reciprocity—to the extent it should be treated as distinct from Mr. Van Arsdale—has already shown its willingness and ability to make its voice heard through the attorney representing AVA Law Group, Christopher Simon.[46] Thus, any "burdens on local nonparties"—to the extent Reciprocity and Mr. Van Arsdale can even be considered nonparties—is minimal.[47] Moreover, all of the Boy Scouts Bankruptcy proceedings are virtual, which the Advisory Committee encourages to "minimalize the burden a transfer imposes on nonparties."[48] This makes travel to Delaware unnecessary. Only a simple internet connection is needed to argue the Motion to Quash in Delaware.

---

[46] *See* Cocchiaro Decl., Ex. 10.

[47] *AmTrust N. Am., Inc.*, 2016 WL 1446136, at *3 (quoting Fed. R. Civ. P. 45(f) Advisory Committee Note (2013).

[48] *Chem-Aqua, Inc. v. Nalco Co.*, 3:14–mc–71–D–BN, 2014 WL 26459999, at *3 (N.D. Tex. June 13, 2014) (citing Fed. R. Civ. P. 45(f) Advisory Committee's note (2013)).

This fact undermines any claim of burden.[49]

## CONCLUSION

For the foregoing reasons, the Court should transfer Reciprocity's Motion to Quash to the Delaware Court.

Dated: November 15, 2021          Respectfully Submitted By:

*/s/ Robert C. Griffin*

MATTHEW M. HIBBS
ROBERT C. GRIFFIN
Crowley Fleck PLLP
1915 South 19th Avenue
Bozeman, MT 59718
Main: 406.556.1430
Fax: 406.556.1433
mhibbs@crowleyfleck.com
rgriffin@crowleyfleck.com

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America*

---

[49] *See*, *e.g.*, *Swenson v. Geico Cas. Co.*, 336 F.R.D. 206, 210 (D. Nev. 2020) (explaining that "attorneys and litigants are adapting to new ways to practice law, including preparing for an conducting depositions remotely," and "courts within the Ninth Circuit routinely highlight remote depositions as an effective and appropriate means to keep cases moving forward"); *Lopez v. CIT Bank, N.A.*, 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) (explaining that remote proceedings are not "burdensome," because "[m]odem videoconference software permits participants to quickly and conveniently share documents and images with each other"); *Chase-Morris v. Tubby*, No. 65927/2019, 2020 WL 4516920, at *4 (N.Y. Sup. Ct. Aug. 3, 2020) ("New York's trial level courts are in accord . . . [and] conclude that virtual [proceedings] do not cause undue hardship in light of the technology currently available and the serious health risks posed by the COVID-19 virus.").

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(d)(2)(E), I certify that *Century's Memorandum of Law in Support of Its Motion To Transfer Reciprocity Industries, LLC's Motion To Quash Century's Subpoena To The Bankruptcy Court For The District Of Delaware* is printed with proportionately spaced Times New Roman text typeface 14 points; is double-spaced; and the word count, calculated by Microsoft Word, is 4352 words long, excluding the Caption, Table of Contents, Table of Authorities, Exhibit Index (*see* Cocchiaro Declaration), and this Certificate of Compliance.

DATED this 15th day of November, 2021.

CROWLEY FLECK PLLP
By */s/ Robert C. Griffin*
    Matthew M. Hibbs
    Robert C. Griffin