# EXHIBIT 7

**EXHIBIT A**

# EXHIBIT A-1

**Sexual Abuse Survivor Personally Identifiable Information**

**(Filed Under Seal)**

# EXHIBIT A-2

## Coalition Counsel Engagement Letters

# brownrudnick

SUNNI P. BEVILLE

direct dial: 617.856.8475

fax: 617.289.0457

sbeville@brownrudnick.com

July 21, 2020

Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
Attn:   Stewart J. Eisenberg, Esq.
Email:  stewart@erlegal.com

Kosnoff Law PLLC
1321 Upland Drive
PMB 4685
Houston, TX 77043
Attn:   Timothy D. Kosnoff, Esq.
Email:  Tim@kosnoff.com

AVA Law Group, Inc.
3667 Voltaire Street
San Diego, CA 92106
Attn:   Andrew Van Arnsdale, Esq.
Email:  andrew.vanarsdale@gmail.com

Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Attn:   Anne Andrews, Esq.
Email:  aa@andrewsthornton.com

Slater Slater Schulman, LLP
488 Madison Avenue
20th Floor
New York, NY 10022
Attn:   Jonathan E. Schulman, Esq.
Email:  jschulman@sssfirm.com

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
Attn:   Edward E. Neiger, Esq.
Email:  eneiger@askllp.com

RE:  **Confirmation of Engagement**

Dear Stewart, Timothy, Andrew, Anne, Jonathan and Edward:

We are very pleased that the Ad Hoc Committee of Boy Scouts of America Sexual Abuse Survivors (the "**Ad Hoc Committee**" or "**Client**"), comprised of certain clients (each a "**Law Firm Client**" and, collectively, the "**Law Firm Clients**") represented by Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, Slater Slater Schulman, LLP, and ASK LLP (collectively, the "**Law Firms**"), has engaged Brown Rudnick LLP ("**Brown Rudnick**," "**us**," "**we**," "**our**," or the "**Firm**").  The members of the Ad Hoc Committee are identified on Exhibit A attached hereto.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 2

The Law Firms each represent and warrant that they have the authority to sign this Engagement Letter on behalf of their respective Law Firm Clients and bind the Law Firm Clients to the terms hereof.

Enclosed please find the Client Engagement Terms (the "**Terms**"), which supplement this letter and include additional information setting forth the terms on which the Firm will provide legal services, the scope of such services, billing and payment arrangements, the Firm's relationship with its clients, and other matters (this letter, together with the Terms, is the "**Engagement Agreement**").  Please carefully review the Engagement Agreement.  I am of course available to answer any questions you may have regarding our engagement by the Ad Hoc Committee.

### *Scope of Engagement*

Subject to the acceptance of this Engagement Agreement by the Law Firms on behalf of their Law Firm Client members of the Ad Hoc Committee, as described herein, we have agreed to represent the Ad Hoc Committee as bankruptcy counsel as of July 18, 2020 in connection with *In re Boy Scouts of America and Delaware BSA, LLC* (the "**Debtors**" or the "**Company**"), Case No. 20-10343 (LSS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Case**").

It is understood that our engagement is with the Ad Hoc Committee as a whole, and not any individual member thereof.  As such, this Engagement Agreement and our engagement by the Ad Hoc Committee do not create an attorney-client relationship between Brown Rudnick and any individual member of the Ad Hoc Committee.  Any such relationships in other matters are governed by separate retention letters.

### *Staffing, Fees, and Expenses*

David Molton and I will have primary responsibility for the engagement.  To the extent necessary and appropriate, other lawyers and Firm personnel may work on this matter as well.

Fees for our services will be based on the time expended by each lawyer and other Firm personnel (including personnel we may temporarily engage) on the Ad Hoc Committee's matter, multiplied by that person's hourly rate (the "**Standard Hourly Fees**").  My standard hourly rate is currently $1,000 and David's standard hourly rate is $1,405.

In addition to the fees for services, you also shall pay, and reimburse the Firm for, all costs and expenses incurred by the Firm in connection with the engagement including, without limitation, those identified in the attached Schedule of Disbursement Charges.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 3

The Firm's statements of fees for professional services and related costs and expenses will generally be prepared and mailed to the Law Firms during the month following the month in which services are rendered or costs or expenses are incurred. Except as otherwise set forth in this Engagement Agreement, payments are due from the Law Firms – and not from the individual members of the Ad Hoc Committee – within thirty (30) days of the date of the statement.

Although the Law Firms are jointly and severally responsible for payment of our fees hereunder, they may allocate our fees in a mutually acceptable manner among themselves. As noted above, the Firm's fees and related costs and expenses shall be payable monthly, without regard to whether there are any recoveries on account of the tort claims held by the members of the Ad Hoc Committee.

*Replenishing Retainer*

You shall deliver to the Firm a retainer of $100,000 (the "**Retainer**"). The Retainer, as well as any future deposits, will be held in the Firm's client trust account. The Firm will use the Retainer to pay the fees and other charges you incur. The Firm will typically apply funds in the Retainer upon or following delivery of monthly statements to you, but reserves the right to apply funds in the Retainer to pay any fees or other charges at any time and in such cases will deliver a statement to you following the application of such funds. The Retainer will be a "**replenishing retainer**" such that your funds on deposit with the Firm will remain at no less than $30,000. Within fifteen (15) days after notice from the Firm to you that all or a portion of the Retainer has been used to pay professional fees and/or costs, you shall deposit funds with the Firm sufficient to replenish the Retainer to an amount equal to at least $100,000. If the billing in any monthly cycle exceeds $100,000, you shall pay within fifteen (15) days after such billing the full amount of such charges so that the Retainer is completely restored to an amount no less than $100,000 and no receivable balance remains owing from you to the Firm.

*Direction*

The Firm is being retained by the Ad Hoc Committee, and not by any individual member of the Ad Hoc Committee. The Firm shall not act on behalf of the Ad Hoc Committee in a manner that is contrary to any direction we receive from the Law Firms.

*The Ad Hoc Committee*

We understand, and each member of the Ad Hoc Committee so acknowledges, that each such member has agreed to come together to form the Ad Hoc Committee because you are similarly situated tort claimants of the Debtors and you expect that you may have similar views as to



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 4

matters relating to the Debtors and the tort claims.  Notwithstanding this arrangement and the execution of this Engagement Agreement: (i) each member of the Ad Hoc Committee acknowledges that no member has agreed to take on, and no member shall owe, a fiduciary duty to any of the other members; and (ii) no member has agreed to take on, nothing herein shall imply, and each member disclaims any fiduciary duty to any other holder of tort claims.  Furthermore, each member acknowledges that it in no way intends or agrees to be deemed a member of a "**group**" within the meaning of Rule 13d-5 under the Securities Exchange Act of 1934, as amended, for any purpose other than the resolution of the matters specifically identified herein, or to be acting in concert in any other manner with any holder which would be in violation of, or trigger reporting or similar obligations under, applicable law.  Furthermore, neither this arrangement nor any provision of this Engagement Agreement shall (a) prevent any member of the Ad Hoc Committee from exercising or seeking to enforce or protect its rights with respect to the Debtors as it may deem appropriate, or (b) otherwise affect any member's ability to act or forbear from taking any action as it may deem appropriate, including effectuating any settlement with the Debtors with respect to its tort claim.

As set forth in the Terms, each member's confidential information shall remain confidential and will not be shared with any other member, except with respect to the specific subject matter of the engagement of the Firm by the Ad Hoc Committee.  Each member waives any obligation of the Firm to disclose to it any information of another member that is to remain confidential as provided in the foregoing sentence.

<u>*Conflicts of Interest*</u>

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients.  Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof.  Each member of the Ad Hoc Committee also understands and agrees that the Firm therefore will not be prevented due to legal conflicts or Rules of Professional Conduct of any kind from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors).  The Terms include an Existing and Future Conflicts Waiver section in which the Ad Hoc Committee agrees to certain waivers of conflicts of interest, including a limited, future waiver of any potential or actual conflicts of interest (other than in certain matters in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors).  This means that,



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 5

subject to the limits described in the Terms, the Firm may represent another client in certain matters in which its interests are, will be, or have been adverse to the Ad Hoc Committee's interests.

### *Communication*

We will keep the Ad Hoc Committee apprised of significant developments in the course of the engagement and will obtain the Ad Hoc Committee's direction on critical issues. While we will endeavor to consult with the Ad Hoc Committee about the Firm's work on an ongoing basis, if at any point any member of the Ad Hoc Committee wishes to discuss any issues or to clarify the legal advice we have provided the Ad Hoc Committee, please call upon us.

### *Governing Law*

The Engagement Agreement shall be governed by and construed in accordance with the laws of the State of New York, (the "**Specified State**") without giving effect to its choice of law provisions that would result in the application of the laws of a different jurisdiction, provided that our obligations to the Ad Hoc Committee shall also be subject to any applicable professional rules or codes of conduct applicable to the provision of our services to the Ad Hoc Committee, except to the extent the applicability of such provisions is permitted to be waived thereby and is waived by the Ad Hoc Committee.

### *Acknowledgement*

If you have any questions regarding the Engagement Agreement or any aspects of the Firm's representation of the Ad Hoc Committee, please do not hesitate to contact me. We look forward to representing the Ad Hoc Committee and are pleased that the Ad Hoc Committee has chosen us to do so.

Sincerely,

BROWN RUDNICK LLP

Sunni P. Beville



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: 204258700

By: _____
Name: Stewart Eisenberg
Title: President
Date: 7/22/20

*The Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law*
*Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____91-1525117_____

By: _Timothy D. Kosnoff_
Name: _Timothy D. Kosnoff for Kosnoff Law, PLLC_
Title: _Owner_
Date: _July 22, 2020_

*The Kosnoff Law PLLC on behalf of itself and*
*its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself*
*and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself*
*and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of*
*itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law*
*Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: 37-1923464

By: _____
Name: ANDREW VAN ARSDALE
Title: MEMBER
Date: 7/22/20

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg*
*& Jeck, P.C. on behalf of itself and its Law*
*Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and*
*its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself*
*and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _Anne Andrews_____
Title: _managing partner_____
Date: _7/22/2020_____

*The Andrews & Thornton on behalf of itself*
*and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of*
*itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law*
*Firm Clients*



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: 45-3913357

By: Adam P. Slater
Name: Adam P. Slater
Title: Partner
Date: 7/23/20

*The Slater Slater Schulman, LLP on behalf of itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The ASK LLP on behalf of itself and its Law Firm Clients*

**Brown Rudnick LLP** | brownrudnick.com | 7 Times Square, New York, NY, 10036 | 1.212.209.4800



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 6

Consented and Agreed to:

**EISENBERG, ROTHWEILER, WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler, Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself and
its Law Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: ___ Joseph L. Steinfeld, Jr. ___
Title: ___ Co-Managing Partner ___
Date: ___ July 27, 2020 ___

*The ASK LLP on behalf of itself and its Law
Firm Clients*

**BROWN RUDNICK LLP**

<u>**Client Engagement Terms**</u>

We are very pleased that the Ad Hoc Committee has engaged the Firm.  These Client Engagement Terms (the "**Terms**"), supplement the letter to which they are attached (the "**Engagement Letter**").  Terms defined in the Engagement Letter shall have the same meanings when used in these Terms.  The Engagement Letter, together with these Terms, is a contract for our engagement and comprises the ("**Engagement Agreement**").

We are of course available to answer any questions you may have regarding the engagement or the Engagement Agreement.

<u>**Welcome to Brown Rudnick**</u>

Brown Rudnick is a limited liability partnership organized under the laws of the Commonwealth of Massachusetts, which may, when necessary to provide services to the Ad Hoc Committee under this Engagement Agreement, collaborate and share resources and information with its subsidiaries or affiliates (the "**Brown Rudnick Affiliates**").  You understand and agree that such information may include your confidential or proprietary information and that the partners and employees of Brown Rudnick Affiliates may render services to the Ad Hoc Committee, whether or not they are identified as such on the Firm's invoices, all of which shall be governed by the Engagement Agreement.  For purposes of the conflicts of interests and professional ethics rules described herein, each of the Firm and the Brown Rudnick Affiliates, in their sole discretion, may elect to treat the other's clients as its own clients.

<u>**The Engagement**</u>

The Firm's engagement to represent the Ad Hoc Committee is limited to the matter(s) described in our Engagement Letter and to any additional matters for which the Firm expressly agrees to provide legal

representation.  In the event we provide services beyond the original scope or for a separate matter(s), this Engagement Agreement and our then prevailing standard terms and conditions, hourly rates, and policies shall automatically govern unless otherwise agreed.

Each member of the Ad Hoc Committee acknowledges that the Firm has not provided any member of the Ad Hoc Committee with legal advice concerning the terms and conditions of our Engagement Agreement.

<u>**Charges for Legal Services**</u>

**A.    Legal Fees and Disbursements**

Fees for our services and charges for our costs and expenses will be incurred and be payable by you in accordance with these Terms and the "**Staffing, Fees, and Expenses**" provisions of the Engagement Letter.

Currently, our hourly rates for partners/counsel vary from $675 to $1,700, for associates from $510 to $940, and for paralegals from $375 to $465.  Other staff hourly rates range from $280 to $400.  My hourly rate is currently $1,000.  These hourly rates are subject to change on a periodic basis.

We may provide the Law Firms and Law Firm Clients with an estimate of our fees and disbursements that members of the Ad Hoc Committee may incur, based on our best judgment.  Such estimates, however, are by their nature inexact and are not intended to be binding upon the Firm.

**B.    Payment/Questions**

The Law Firms are jointly and severally responsible for the fees incurred by the Firm on behalf of the Ad Hoc Committee.  Accordingly, payment will be made by the Law Firms in the full amount of our statement.  If you have any questions about any statement that we submit, you should promptly contact the lawyer responsible for our engagement by the Ad Hoc Committee so that we may understand and address your concerns promptly.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 8

### C.    Third Party Payment Responsibility

As noted above, the Law Firms are undertaking to pay the Firm's bills.  Each member of the Ad Hoc Committee hereby consents to (a) the application of those funds to the outstanding balance of such member's account with the Firm and waive any right such member might otherwise have to direct us to pay or apply those funds in any other fashion, and (b) to the extent any Law Firm makes payment to us on a member's behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, each member hereby consents to us adhering to those directions and waives any right such member might otherwise have to direct us to pay or apply those funds in any other fashion.  Such payment shall not create an attorney-client relationship between the Firm and the payer.  All funds remaining on retainer with the Firm at the conclusion of our engagement will be returned to the Law Firms.

If any other third party (including, without limitation, an insurer or affiliate, Trustee, or the Debtors) undertakes to pay any portion of the Firm's bills, 1) each member of the Ad Hoc Committee will remain responsible for payment of any amounts billed by the Firm and not paid by that third party, 2) each member of the Ad Hoc Committee hereby consents to the application of those funds to the outstanding balance of such member's account with the Firm and waive any right such member might otherwise have to direct us to pay or apply those funds in any other fashion, and 3) to the extent any such third party makes payment to us on a member's behalf accompanied by directions as to what portion of outstanding fees and expenses are to be covered by such payment, each member hereby consents to us adhering to those directions and waives any right such member might otherwise have to direct us to pay or apply those funds in any other fashion.  Such payment shall not create an attorney-client relationship between the Firm and the payer.  If any member of the Ad Hoc Committee is awarded legal fees or costs by a court or other party, such member will remain responsible for payment of its pro rata share of the Firm's billed fees and other charges, even if the award to such member is less than the amounts we have billed such member

or such member cannot collect all or part of the award for any reason.

<u>Insurance Coverage</u>

It is possible that members of the Ad Hoc Committee may have insurance policies relating to the matter that is the subject of our engagement by the Ad Hoc Committee.  Each member of the Ad Hoc Committee should carefully check the insurance policies it has purchased and, if coverage may be available, such member should provide notice to all insurers that may provide such coverage as soon as possible.  Our engagement by the Ad Hoc Committee will not include advising members of the Ad Hoc Committee with respect to the existence or availability of insurance coverage for matters within the scope of our engagement.

<u>Termination</u>

The Law Firms, on behalf of the Ad Hoc Committee may, of course, terminate our services at any time.  The Ad Hoc Committee's termination of our services will not affect the Law Firms' responsibility, on behalf of the members of the Ad Hoc Committee, to pay for billed and unbilled legal services rendered or other charges incurred as of the date of termination and, where appropriate, for such expenses as we may incur in effecting an orderly transition to successor lawyers chosen by the members of the Ad Hoc Committee.  In addition, any member of the Ad Hoc Committee may withdraw from the Ad Hoc Committee at any time, subject to the terms set forth in the Engagement Letter.

Subject to ethical rules by which we are bound, we also reserve the right to suspend our services or withdraw from the engagement described in this Engagement Agreement at any time, but barring unusual circumstances we will discuss such suspension or withdrawal with the Law Firms, on behalf of the members of the Ad Hoc Committee, before doing so and expect to do so only if there are good reasons for such withdrawal, including, without limitation, non-payment of our statements on a timely basis, significant differences between our professional judgment and the



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 9

judgment of the Ad Hoc Committee, the existence of any facts or circumstances that would render the Firm's continuing representation of the Ad Hoc Committee unlawful or unethical, or any other concerns that may arise under the ethical rules by which we are bound. The obligations of the Firm under this Engagement Agreement are and will be subject to court orders, statutes, laws, rules, and regulations governing the Ad Hoc Committee's legal rights and each member of the Ad Hoc Committee authorizes the Firm to take whatever action is necessary to comply with the requirements of such authorities.

Unless it is previously terminated, our representation of the Ad Hoc Committee, and our lawyer-client relationship with the Ad Hoc Committee, will be deemed to have been terminated upon the conclusion of our services.

We may ask that the Ad Hoc Committee, through the Law Firms, provide additional confirmation of such termination by signing a substitution or withdrawal of counsel and/or such other documents as may be reasonably necessary to evidence or effect the Firm's termination of our lawyer-client relationship with the Ad Hoc Committee, including the Firm's withdrawal of its prior appearance in any court or other litigated proceeding. You agree to sign such a substitution or withdrawal of counsel and/or such other documents.

After the conclusion or termination of our representation of the Ad Hoc Committee as described in the Engagement Agreement, changes in relevant laws, regulations, or decisional authorities may affect the Ad Hoc Committee's rights and obligations. Unless the Ad Hoc Committee engages the Firm to provide future services and to advise the Ad Hoc Committee with respect to any issues that may arise in the future as a result of such changes, we will have no continuing obligation to advise the Ad Hoc Committee or any of its members with respect to future legal developments.

### Communication

We expect that the Ad Hoc Committee, through the Law Firms, will cooperate with us and will fully and accurately disclose to us all facts and documents that may be relevant to our representation of the Ad Hoc Committee or that we may otherwise request. For instance, each member of the Ad Hoc Committee should be reasonably available to attend meetings, discovery proceedings, conferences, and other proceedings.

Each member of the Ad Hoc Committee authorizes and directs the Law Firms to authorize and direct us to take all actions which we deem advisable on behalf of the Ad Hoc Committee in our representation of the Ad Hoc Committee. Subject to any limitations set forth in the Engagement Letter, we will notify the Ad Hoc Committee, through the Law Firms, of significant developments and consult with the Law Firms, on behalf of the Ad Hoc Committee, in advance of any significant decisions.

We will use our professional judgment and efforts in representing the Ad Hoc Committee; however, we have given no assurance to the Ad Hoc Committee regarding the outcome. Any statements concerning our representation of the Ad Hoc Committee or the results that might be anticipated made by us are merely expressions of our opinion as attorneys, limited by the information known to us at the time and are not to be construed as promises or guaranties of any particular results.

The Firm can provide communications in various modes, depending upon the Ad Hoc Committee's requirements. These may be accessed from mail accounts on the Internet and other electronic networks. These communication services are used with the Ad Hoc Committee's understanding that while the Firm will use appropriate measures to protect client confidentiality, they may be subject to security risks. Absent special arrangements, we do not employ encryption technologies in our electronic communications. Should the Ad Hoc Committee not wish the Firm to use one or more of the communication methods described above, please advise us of such in writing. We will use reasonable efforts to use the communication services the Ad Hoc Committee specifies.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 10

## Confidentiality

**A.     Confidentiality and Disclosure**

We owe a duty of confidentiality to all our clients and we will protect the Ad Hoc Committee's confidential information accordingly.  Similarly, we are not required to disclose to the Ad Hoc Committee, or use on the Ad Hoc Committee's behalf, any confidential documents or information in our possession.

**B.     Disclosure to Certain Third Parties**

Each member of the Ad Hoc Committee agrees that we may, when required by our insurers, auditors, or other advisers, provide details to them of any matter or matters on which we have represented the Ad Hoc Committee.

**C.     Data Protection**

This paragraph, and Annex 1, are added pursuant to our obligations under EU data privacy law.  If you are a non-EU citizen or resident based outside of the EU, EU data privacy law will apply to the extent that Brown Rudnick processes any personal data provided by you or on your behalf in the context of its EU establishment.

In this paragraph, the terms "**data controller**", "**personal data**", "**data processor**", "**data subject**", and "**process(ing)**" will have the meanings ascribed to them in the EU General Data Protection Regulation ("**GDPR**") and/or with any applicable national laws implementing or replacing the GDPR (together, "**Data Protection Law**").

Brown Rudnick, whether acting as a data controller of personal data relating to your partners, directors, officers or employees, or as a data processor in processing personal data on your behalf and in accordance with your instructions, will comply with the GDPR and/or with any applicable national laws implementing or replacing the GDPR.  Please see the Privacy Notice set out in Annex 1, which provides further information in respect of when Brown Rudnick is acting as a data controller, including what personal data we collect, why and where we process it, the legal

bases for our processing, and the rights of the data subjects to which the personal data relates.

You hereby confirm that you, acting as our agent in respect of data subjects who are your directors, officers, employees, agents or other contacts, have no reason to believe that you have not complied with all of your obligations under Data Protection Law (to the extent applicable) in respect of your collection and use of such subjects' data and your provision of it to us, in each case as necessary for us to provide you with our services.

To the extent we are acting as a data processor in processing personal data on your behalf we agree, whenever the GDPR applies, to:

(a)    act only on documented instructions from you in respect of any personal data processed by us;

(b)    have appropriate technical and organizational measures in place against unauthorized or unlawful processing of personal data and against accidental or unlawful loss or destruction of, alteration or unauthorized disclosure of or access or damage to, personal data held or processed by it, appropriate to the harm that might result from such accidental, unauthorized or unlawful processing or loss, destruction or damage to personal data and the nature of the personal data;

(c)    ensure the on-going confidentiality, integrity, availability and resilience of processing systems and services as well as the ability to restore the availability and access to personal data in a prompt manner in the event of a physical or technical incident as required under Data Protection Law;

(d)    not engage another processor without your prior written consent, and where another processor is engaged (a "**Sub-Processor**") we shall:

   (i)  ensure that the Sub-Processor complies with the obligations set out in this paragraph and Data Protection Law;



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 11

(ii) in the case of a general consent from you for use of Sub-Processors, inform you of any changes concerning the addition or replacement of Sub-Processors to which you have the right to object; and

(iii) remain liable for any act or omission of any Sub-Processor in respect of its obligations arising from its processing of the personal data;

(e) assist you to comply with your obligations under Data Protection Law, including in relation to the security of personal data;

(f) assist you, at your cost, to respond to requests by data subjects to exercise their rights under Data Protection Law in respect of our engagement, including taking any action required by you to comply with such requests and immediately notifying you of any such requests received by us or any Sub-Processor without responding to such requests or enquiries unless expressly otherwise instructed by you;

(g) take all necessary steps to ensure the reliability of any of our staff who have access to personal data processed under this agreement and ensure that they are subject to appropriate obligations of confidentiality;

(h) allow you to audit as and when necessary, in accordance with the Data Protection Law, the technical and organizational measures in place to ensure compliance with the Data Protection Law and to make available to you all information necessary to demonstrate such compliance;

(i) inform you where in our opinion any of your instructions will result in a breach of Data Protection Law;

(j) if required by you, delete or return all personal data in our possession or control to the extent technically feasible save as required by any applicable law; and

(k) notify you without undue delay if we become aware of any breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to, personal data relating to you, and provide all information regarding such breach that you specifically request or which may reasonably be expected to be required or appropriate in order for you to comply with your legal obligations under the Data Protection Law.

**Document Retention**

At the Ad Hoc Committee's request, we will return to the Law Firms, their original hard copy documents and property (the Ad Hoc Committee's "**client file**"), except as set forth herein.  Subject to applicable rules of ethics by which we are bound, we may condition delivery of the Ad Hoc Committee's client file upon our receipt of payment for outstanding fees and other charges, and such client file will be subject to any lien permissible under applicable rules of professional responsibility.  We may provide the Ad Hoc Committee's client file in original format or an electronic format on a CD, DVD, or other medium.  Should the Ad Hoc Committee decide not to request or accept any portion of the Ad Hoc Committee's client file at the conclusion or termination of our representation of the Ad Hoc Committee, each member of the Ad Hoc Committee authorizes us to destroy such portion of the Ad Hoc Committee's client file at our discretion and without further notice to any member of the Ad Hoc Committee, subject to any applicable ethics rules by which we are bound.

Each member of the Ad Hoc Committee agrees that our drafts of documents, notes, internal working papers, internal e-mail and electronic databases and other attorney work product shall be and remain the property of the Firm and shall not, except in our sole and absolute discretion or as otherwise required by the ethical rules by which we are bound, be considered part of the Ad Hoc Committee's client file.

The Firm retains the right to make copies of the Ad Hoc Committee's client file, at our expense, for our own information and retention purposes.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 12

### Anti-Money Laundering Laws

Numerous countries have enacted Anti-Money Laundering ("**AML**") laws. If the Firm's lawyers are engaged to assist the Ad Hoc Committee in matters within the scope of our engagement that become subject to AML requirements, it will be necessary to comply with the applicable AML laws. In connection therewith, we or our lawyers may be required to obtain additional, specific evidence of identity from each member of the Ad Hoc Committee.

### Dispute Resolution

#### A.    Resolving Problems and Disputes

If the Ad Hoc Committee has any complaints or concerns about our work for the Ad Hoc Committee, please raise these in the first instance with the lawyer responsible for the Ad Hoc Committee's engagement or with the Firm's Chief Executive Officer (William R. Baldiga: 617-856-8568) or Chief Legal Officer (Joel S. Miliband: 949-440-0227). We will investigate the Ad Hoc Committee's complaint promptly and carefully and do what we reasonably can to resolve the difficulties to the Ad Hoc Committee's satisfaction.

#### B.    General

Except as provided herein, should any dispute arise in connection with our representation of the Ad Hoc Committee or in connection with any other matter arising under this Engagement Agreement, the Ad Hoc Committee and we both agree to seek to resolve the dispute amicably, including, if appropriate, utilization of mediation or other methods of alternative dispute resolution. If the dispute cannot be resolved amicably, the Ad Hoc Committee and we both agree that any action or proceeding relating to or arising out of the dispute will be exclusively brought in a state or federal court located in the Specified State and the Ad Hoc Committee and we each agree that any such court has, and may exercise, personal jurisdiction over each member of the Ad Hoc Committee and us in any such action. You agree that in any proceeding in which an order or judgment is entered in our favor, you are responsible for payment of our reasonable attorneys'

fees relating to such matter, including, without limitation, the reasonable fees of attorneys employed at the Firm as well as any outside counsel.

#### C.    New York Fee Dispute Process

If any of our New York licensed lawyers work on this matter and if a material portion of the legal services we provide to the Ad Hoc Committee takes place in New York, the Ad Hoc Committee may have an option to invoke arbitration should a fee dispute arise between the Ad Hoc Committee and us during or at the conclusion of this engagement. Specifically, in any civil matter where the fee dispute involves a sum of up to $50,000, the Ad Hoc Committee may have a right to compel resolution by binding arbitration. In addition, whether or not binding arbitration is available, both the Ad Hoc Committee and we are encouraged to seek resolution of lawyer-client disputes, including fee disputes, through mediation, and the New York Courts and Bar have established a program for mediation of such disputes by an impartial mediator. In the event that any fee dispute should arise in this engagement which is not promptly and satisfactorily resolved between the Ad Hoc Committee and us, we shall furnish the Ad Hoc Committee with further details concerning the procedures and effects of arbitration and mediation, so that the Ad Hoc Committee can make an informed decision as to how to proceed in the circumstances.

#### D.    California Dispute Process

If any of our California licensed lawyers work on this matter, or if any member of the Ad Hoc Committee is a California resident, such member of the Ad Hoc Committee may have a right to invoke arbitration should a fee dispute arise between such member of the Ad Hoc Committee and us during or at the conclusion of this engagement, under the California Mandatory Fee Arbitration Program (Business & Professions Code §§ 6200 et seq.).



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 13

### Limitation of Representation; Client Responsibilities

The Firm has no obligation to provide legal services until the Firm is satisfied that each member of the Ad Hoc Committee has accepted the Engagement Agreement and paid any initial retainer called for in the Engagement Letter.

Except as expressly agreed to in the Engagement Letter, our representation of the Ad Hoc Committee in any litigation matter will be limited to the final disposition of the matter described therein, whether by trial, judgment, settlement, or other final disposition, by the court, agency, or other administrative body where it is initially pending and shall not include any appeals therefrom to any other court, agency, or administrative body.   Should we agree to represent the Ad Hoc Committee in an appeal, the terms and conditions of that representation shall be set forth in a separate Engagement Agreement.

Our services will not include advice on tax related issues or the tax implications of any transaction or course of action unless (and then only to the extent that) this is expressly agreed at the commencement, or during the course, of a matter.

### Publicity

We are often asked to provide examples of our relevant experience in certain fields of work, for use, for example, in the Firm's publicity material.  Unless the Ad Hoc Committee advises us to the contrary, we will assume that we can refer to the fact that we act for the Ad Hoc Committee, and may describe in general terms the nature of the work.  In the event that we wish to publicize any further details, we would first seek the Ad Hoc Committee's express authority to do so.

### Severance of Terms

If all or any part of the Engagement Agreement is or becomes illegal, invalid, or unenforceable in any respect, the remainder will remain valid and enforceable.

### No Third Party Rights

No provision of the Engagement Agreement is intended to be enforceable by any third party.  Accordingly, no third party shall have any right to enforce or rely on any provision of the Engagement Agreement.

### Integration Clause; Inconsistencies

This Engagement Agreement supersedes any earlier terms of business we may have agreed with the Ad Hoc Committee or any of its members regarding the services to be provided in this matter and, in the absence of express agreement to the contrary, will apply to the services referred to in any Engagement Letter accompanying these Terms and all subsequent legal services we provide to the Ad Hoc Committee.  In the event of any inconsistency between these Terms and the Engagement Letter, the Engagement Letter shall prevail.

Each member of the Ad Hoc Committee acknowledges that the terms of this Engagement Agreement govern the relationship between the Firm and the Ad Hoc Committee, and the responsibilities of the members of the Ad Hoc Committee in respect thereof, notwithstanding any terms of any outside counsel guidelines or the like that any member of the Ad Hoc Committee may have sent or send to us from time to time, except to the extent that we may otherwise expressly agree in writing.  To the extent that we agree to the applicability of any such guidelines, and the terms of such guidelines and the Engagement Agreement materially conflict, the Engagement Agreement shall control, except to the extent that we may otherwise expressly agree in writing.

### Existing and Future Conflicts Waiver

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between multiple clients of an attorney or law firm and their existing and former clients (collectively, "**the Conflicts Rules**").



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 14

Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof.  You also understand and agree that the Firm therefore will not be prevented due to any Conflicts Rules from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Company).

The Ad Hoc Committee's acceptance of the Engagement Agreement indicates to us that the Ad Hoc Committee and its members find the consents, waivers, and conditions described below to be acceptable and agree that our representing the Ad Hoc Committee in these matters will not prevent or disqualify us from representing clients adverse to the Ad Hoc Committee in other matters and that the Ad Hoc Committee consents in advance to our undertaking such adverse representations.

With respect to the Ad Hoc Committee as a whole (as contrasted with any individual member of the Ad Hoc Committee, individually, as to which the paragraph immediately above shall govern), the Firm agrees that it will not represent another client in a matter that is entirely factually and legally related to the matters on which we represent the Ad Hoc Committee in connection with the Company (the "**Matters**") and that the Firm will not at any time, disclose or use adversely to the Ad Hoc Committee any confidential Client information we obtain in the course of representing the Ad Hoc Committee in the Matters.

Outside of these limitations, the Firm hereby seeks a waiver that will allow it to remain free to represent other clients adverse to the Ad Hoc Committee.  In other words, we may represent other clients in negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation (unless the Ad Hoc Committee as a whole is named as a party in a litigation in which we represent another client that

is suing the Ad Hoc Committee as a whole in such litigation), alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, and discovery and discovery disputes, including, without limitation, subpoenas, document requests, and depositions, class actions (unless the Ad Hoc Committee as a whole is named as a party in a class action in which we represent another client that is suing the Ad Hoc Committee as a whole ), or other legal matters even if those matters are adverse to the Ad Hoc Committee as a whole or if those clients are competitors, including, without limitation, with respect to advice relating to intellectual property strategy, due diligence, licensing and development agreements, joint ventures, and intellectual property protection matters, including, without limitation, trademarks, patents, and copyrights.  Further, if the Ad Hoc Committee is or becomes adverse to another client of the Firm in any matter, whether or not we represent the Ad Hoc Committee in such matter, the Firm will also remain free to represent the Firm's other client in other matters, without regard to whether the matter in which the Ad Hoc Committee is adverse to the Firm's other client involves negotiations, business transactions, trading claims, trading debt, trading equity interests, trading securities and trading other types of rights and obligations, litigation, alternative dispute resolution, administrative proceedings, interpleader proceedings, bankruptcy and other insolvency proceedings, discovery and discovery disputes, subpoenas, document requests, depositions, class actions, or other legal matters.

The Firm represents other clients to whom the Firm does not provide legal services, such as its government relations clients, and the Conflicts Rules do not apply to such services.  The Ad Hoc Committee understands and agree that the Firm may provide non-legal services to such other clients in matters that might be directly adverse to the Ad Hoc Committee's interests.

Although unlikely, it may be necessary in the course of our representation of the Ad Hoc Committee for our lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's general counsel or other lawyers in



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 15

doing so.  To the extent we are addressing our duties, obligations or responsibilities to the Ad Hoc Committee in those consultations, it is possible that a conflict of interest might be deemed to exist as between our lawyers or the Firm and the Ad Hoc Committee.  As a condition of this engagement, the Ad Hoc Committee consents to any conflict of interest that might be deemed to arise out of any such consultations.  The Ad Hoc Committee further agrees that these consultations are protected from disclosure by the Firm's attorney-client privilege and that the Ad Hoc Committee will not seek to discover or inquire into them.  Of course, nothing in the foregoing shall diminish or otherwise affect our obligation to keep the Ad Hoc Committee informed of material developments in our representation of the Ad Hoc Committee, including any conclusions arising out of such consultations to the extent that they affect the Ad Hoc Committee's interests.

We have conducted a search of our Firm's conflicts database.  We have disclosed to the Ad Hoc Committee any ethical conflicts of interest that existed at such time, as defined by the applicable rules of professional conduct, other than those to which the Ad Hoc Committee has consented herein.  The Ad Hoc Committee agrees that such disclosed conflicts, if any, have been resolved to its satisfaction.

Subject to any applicable Conflicts Rules, the terms of this waiver and consent shall last indefinitely.

As the members of the Ad Hoc Committee know, you have had the opportunity to discuss this conflicts waiver and its potential implications with us by phone or in person, and we strongly urge the members of the Ad Hoc Committee not to accept this Engagement Agreement if any of them have any unanswered or unaddressed reservations or concerns.  Any time a client makes a decision to waive future conflicts of interest, there are questions it should address, including:

- Is there a material risk of adverse disclosure or use of confidential client information?

- Is there a material risk that the law firm will be less zealous or eager when representing the client in the applicable matter because of other adverse representation?

- Is the client ready, willing, and able to live by its commitments in the future?

As to the first two questions, we believe that any risk to the Ad Hoc Committee is minimal to nonexistent in light of the protections and limitations contained in this Engagement Agreement.  As to the final question, that is necessarily the Ad Hoc Committee's choice and not ours.

Each member of the Ad Hoc Committee has advised us that this waiver will be treated as an express exception to any of such member's general policies against granting waivers of conflicts of interest, provided that it is limited to the terms described in this Engagement Agreement for our representation of the Ad Hoc Committee in connection with the Matters, and that such member has obtained any requisite internal approvals for this exception.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 16

| BROWN RUDNICK LLP | |
|---|---|
| *Schedule of Disbursement Charges* | |
| **TYPE** | **RATE** |
| Photocopying or Laser Printing or Scanned Copies<br>Oversized/Color Copies or Color Laser Printing | 30¢ per page<br>$1.80 per page |
| Telecopy | $2.00 per page |
| Binding | $3.00<br>11¢ per tab<br>20¢ per pocket |
| Courier Services | $30.00 minimum |
| Legal Analyst Services | $90.00 per hour |
| Electronic Discovery and Document Maintenance<br>Database Charges | $30 per user per month for Viewpoint license and<br>$7 per GB per month for storage of data. |
| Imaging Costs | Electronic Binder:<br>Document Indexing $1.75 per bookmark<br>Oversized Documents $1.80 per document<br>Master CD $60.00<br>Additional Copies $30.00 each<br><br>Summation:<br>Single TIF imaging 11¢ each<br>Single TIF OCR 3¢ each<br>TIF to PDF conversion 5¢ each |
| Mileage Allowances | 58¢ per mile |
| Outgoing Long Distance Telephone | 34¢ per minute |
| Lexis/Westlaw or other document retrieval | Usage Charge as assessed by Service Provider[1] |
| Messenger Services | $20 minimum |
| Postage | Actual Cost |
| Taxi Services | Actual Cost |
| Supplies | Actual Cost |
| Food Services | Actual Cost |
| Travel Expenses | Actual Cost |
| News Watch Services | News Watch email alerts:<br>Weekly @ $50 per week; Daily @ $45 per day |
| Accuroute Scan | 30¢ per page |
| Docketing System Charges | Actual Cost |
| Third-Party Electronic Document Maintenance<br>Charges | $75 per user per month for Case Notebook license and $30 per<br>GB per month for storage of data.<br>$75 per user per month for CaseLogistix license and $30 per GB<br>per month for storage of data. |

---

[1] Brown Rudnick may benefit from a different, bulk pricing formula.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 17

**ANNEX 1**

**ENGAGEMENT LETTER PRIVACY NOTICE**

In this privacy notice, the terms "**personal data**", "**data subject**", "**data controller**" and "**processing**" shall have the meanings ascribed to them in the General Data Protection Regulation (EU/2016/679) ("**GDPR**") and in any applicable national legislation implementing or replacing the GDPR (together "**Data Protection Law**").

This privacy notice applies to:

- Brown Rudnick LLP, a limited liability partnership organized in the Commonwealth of Massachusetts, USA and with its principal office at One Financial Center, Boston, MA 02111, and
- Brown Rudnick LLP, a limited liability partnership registered in England and Wales with company number OC300611 and its registered office at 8 Clifford Street, London W1S 2LQ,

together, referred to in this privacy notice as "**Brown Rudnick**", the "**Firm**", "**we**", "**us**" and "**our**". Our UK entity is registered with the UK Information Commissioner's Office ("**ICO**") with number ZA073920.

This privacy notice applies to the extent that Brown Rudnick collects and/or processes personal data in the capacity of a data controller. Any updates to this privacy notice will be notified to you. This engagement letter privacy notice is in addition to our website privacy notice at www.brownrudnick.com/privacy-policy, which applies to the extent that you interact with our website at www.brownrudnick.com.

## 1.    What personal information we collect

In the course of entering into the arrangements documented in this letter and in supplying legal services to you, Brown Rudnick will collect and process personal data. The following personal data may be collected in respect of you, your partners, directors, officers and employees (as applicable if you are an incorporated entity), and also your agents and other data subjects connected with you:

- Identity information, such as name, title, place and date of birth, gender, nationality, organization name and position, and information from photographic identity documents such as driving license or passport information.
- Contact data, such as address and email and personal and business telephone details.



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 18

- Financial and/or employment information including business activities and source of funds.  If you ask us to provide you with specific legal services, we may also ask you for further information relating to your employment.
- Details in respect of political exposure or any actual or alleged criminal convictions.
- Expressions of opinion, including in relation to the performance and other attributes of a data subject.
- Marketing and communications data, including preferences in receiving marketing and other communications from us.

We will process this data in accordance with this privacy notice, and with Data Protection Law. Other than as listed above, we do not usually collect 'special categories' of personal data from our clients, although we may do so if necessary to provide legal services to you, or if otherwise required by law.  ('Special categories' of data include details about race or ethnicity, religious or philosophical beliefs, sex life, sexual orientation, political opinions, trade union membership, and health information.)

**2.    How we collect personal data**

You may provide us with personal data including identity and contact information, marketing and communications preferences, and financial data when you:

- join us as a client and undergo our 'know your client' and anti-money laundering process;
- correspond with us;
- provide us with access to your (or your organization's) corporate and financial records; or
- subscribe to our newsletters and updates.
- We may also obtain or verify information from public sources (such as Companies House) and/or third party search agencies for anti-money laundering and audit purposes. Information obtained from third parties may include your name (and other family names), address, any directorships you hold, political exposure, and any alleged or actual criminal offences.

**3.    How we use personal data**

We process personal data:

- where it is necessary to provide our services to you in accordance with the terms of engagement to which this privacy notice is annexed;
- in order to comply with our legal obligations (for example, to comply with anti-money laundering legislation and regulatory investigations);
- where the data subject has given his or her consent to the processing; and/or



- for our legitimate interests or those of any third party recipient of the personal data (for example, to enable to administer and manage our operations).

We will only retain this data for as long as is necessary to fulfill the purposes for which it was collected or to comply with legal, regulatory or internal policy requirements.

## 4.    How we share your personal data

We will only disclose your personal data where we are required to do so to comply with our legal or regulatory obligations; where we need to do so for business management or administration purposes; or because you have asked us to.  This is likely to include:

- within the Firm;
- to third parties who process your personal data on our behalf (such as IT systems providers and other service providers);
- to third parties who process your personal data on their own behalf but in connection with a service provided to us or you on our behalf (such as accountants, consultants, barristers and other providers of professional services, and in the case of disputes, with the Court or alternative dispute resolution providers);
- to companies providing services for money laundering checks and other fraud and crime prevention services;
- in the case of a business reorganization or restructuring, or our assignment or novation of our obligations; and/or
- to any government, regulatory agency, enforcement or exchange body or court where we are required to do so by applicable law or regulation.

## 5.    International transfers of personal data

Brown Rudnick is an international law firm.  Our provision of legal services to you will entail our transferring personal data outside of the European Economic Area.

When we transfer your data outside of the EEA to a country which the European Commission does not deem to have adequate data privacy laws, we will ensure that such transfer(s) are in accordance with applicable data privacy laws.  In respect of transfers within the Firm, we have executed a data transfer agreement giving effect to the Model Clauses pursuant to Commission decision 2004/915/EC.

In respect of transfers outside of the firm, we either implement the Model Clauses pursuant to Commission decision 2004/915/EC or 2010/87/EU (as appropriate) with the recipient of your



personal data; and/or ensure that the recipient of your data is registered with the EU-US Privacy Shield.

You can obtain further information in this respect (including a copy of the Model Clauses) by contacting us.

## 6.      How we protect your personal data

We are committed to safeguarding and protecting personal data and maintain appropriate technical and organizational measures to protect any personal data provided to us from accidental or unlawful destruction, loss, alteration, or unauthorized disclosure.  We also have in place safeguards including data encryption in motion and at rest, data access and security monitoring, and 24/7 network security monitoring for breaches or anomalous behavior to ensure the security of your data.

## 7.      Data subject rights

Under Data Protection Law, data subjects have a number of rights with regard to their personal data.  They have the right to request from us access to and rectification or erasure of their personal data, the right to restrict or object to processing, as well as in certain circumstances the right to data portability.

If a data subject has provided consent for the processing of their data, he or she has the right (in certain circumstances) to withdraw that consent at any time.

Any data subject wishing to exercise any of the above rights should email us at: gdprcommunications@brownrudnick.com.

We endeavor to respond to such requests within a month or less, although we reserve the right to extend this period for complex requests.  We also reserve the right to charge you a reasonable administrative fee for any manifestly unfounded or excessive requests concerning access to personal data, and for any additional copies of the personal data requested from us.

## 8.      Lodging a complaint with the regulator

Any data subject may lodge a complaint with our data protection regulator if they consider that we have breached their data protection rights.  Our data protection regulator is the Information Commissioner's Office, which can be contacted at:



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 21

Wycliffe House, Water Lane, Wilmslow, Cheshire, SK9 5AF, United Kingdom.

Telephone: 0303 123 1113 (local rate) or (+44) 1625 545 745 (national rate)

Fax: 01625 524 510

Email: enquiries@ico.org.uk

We would, however, be grateful if you would contact us in the first instance so we can endeavor to deal with your concerns direct.

9.      **Contacting us**

If you have any queries about this privacy notice, or about how your personal data (or personal data provided by you) is processed, please contact us using the details set out below:

Data Protection Officer at gdprcommunications@brownrudnick.com or you can write to these individuals at the addresses set out below:

James Darsigny
Brown Rudnick LLP
One Financial Center
Boston, MA 02111

Tamara Quailey-Tulloch
Brown Rudnick LLP
8 Clifford Street
London W1S 2LQ



Stewart, Timothy, Andrew, Anne, Jonathan & Edward
July 21, 2020
Page 22

## EXHIBIT A

Members of Ad Hoc Committee

| Name of Member of Ad Hoc Committee | Address of member of Ad Hoc Committee | Name of corresponding Law Firm |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

# MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

### ATTORNEYS AT LAW
### 1201 NORTH ORANGE STREET
### SUITE 400
### WILMINGTON, DE  19801-1155

———

### (302) 656-8162
FACSIMILE: **(302) 656-2769**

### WWW.MONLAW.COM

**MELVYN I. MONZACK**
**RACHEL B. MERSKY**
**MARY ELIZABETH M. BROWDER**
**MICHAEL C. HOCHMAN**

September 13, 2020

Eisenberg, Rothweiler, Winkler,
Eisenberg & Jeck, P.C.
1634 Spruce Street
Philadelphia, PA 19103
Attn:   Stewart J. Eisenberg, Esq.
Email: stewart@erlegal.com

Kosnoff Law PLLC
1321 Upland Drive
PMB 4685
Houston, TX 77043
Attn:   Timothy D. Kosnoff, Esq.
Email: Tim@kosnoff.com

AVA Law Group, Inc.
3667 Voltaire Street
San Diego, CA 92106
Attn:   Andrew Van Arnsdale, Esq.
Email: andrew.vanarsdale@gmail.com

Andrews & Thornton
4701 Von Karman Ave., Suite 300
Newport Beach, CA 92660
Attn:   Anne Andrews, Esq.
Email: aa@andrewsthornton.com

Slater Slater Schulman, LLP
488 Madison Avenue
20th Floor
New York, NY 10022
Attn:   Jonathan E. Schulman, Esq.
Email: jschulman@sssfirm.com

ASK LLP
151 West 46th Street
4th Floor
New York, NY 10036
Attn:   Edward E. Neiger, Esq.
Email: eneiger@askllp.com

### RE: Engagement Agreement

Dear Stewart, Timothy, Andrew, Anne, Jonathan and Edward:

We are very pleased that the Ad Hoc Committee of Boy Scouts of America Sexual

Abuse Survivors (the "**Ad Hoc Committee**, **"Coalition of Abused Scouts for Justice"** or

"**Client**"), comprised of certain clients (each a "**Law Firm Client**" and, collectively, the "**Law**

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 2

**Firm Clients**”) represented by Eisenberg, Rothweiler, Winkler, Eisenberg & Jeck, P.C., Kosnoff Law PLLC, AVA Law Group, Inc., Andrews & Thornton, Slater Slater Schulman, LLP, and ASK LLP (collectively, the “**Law Firms**”), has engaged Monzack Mersky Browder and Hochman, PA (“**Monzack Mersky**”) “**us**,” “**we**,” “**our**,” or the “**Firm**”).  The members of the Ad Hoc Committee are identified on Exhibit A attached hereto.

The Law Firms each represent and warrant that they have the authority to sign this Engagement Letter on behalf of their respective Law Firm Clients and bind the Law Firm Clients to the terms hereof.

I.      **Scope of Engagement**

Subject to the acceptance of this Engagement Agreement by the Law Firms on behalf of their Law Firm Client members of the Ad Hoc Committee, as described herein, we have agreed to represent the Ad Hoc Committee as bankruptcy counsel as of September 4, 2020 in connection with *In re Boy Scouts of America and Delaware BSA, LLC* (the “**Debtors**” or the “**Company**”), Case No. 20-10343 (LSS) (Jointly Administered), pending in the United States Bankruptcy Court for the District of Delaware (the “**Bankruptcy Case**”).

It is understood that our engagement is with the Ad Hoc Committee as a whole, and not any individual member thereof.  As such, this Engagement Agreement and our engagement by the Ad Hoc Committee do not create an attorney-client relationship between Monzack Mersky Browder and Hochman, PA and any individual member of the Ad Hoc Committee.  Any such relationships in other matters are governed by separate retention letters.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 3

## 2.    Staffing, Fees, and Expenses

Our fee structure is generally on the normal hourly rates for the lawyers and paralegals who will be working on this matter.  It is understood and agreed that the services to be rendered in this matter will be compensated at the following hourly rates:

| | |
|---|---|
| Rachel B. Mersky | $495.00 |
| Paralegal Support | $200.00 |

Other professionals within the firm may perform legal services in this matter; their hourly rates are comparable to those listed above.  The hourly rates for this firm may be adjusted in the future.  Hourly office charges shall include all legal research, drafts of pleadings, conferences, telephone conversations with you or other persons, and any other tasks necessary to handle your matter.

We will send you detailed, itemized monthly bills reflecting our services. Although the Law Firms are jointly and severally responsible for payment of our fees hereunder, they may allocate our fees in a mutually acceptable manner among themselves. As noted above, the Firm's fees and related costs and expenses shall be payable monthly, without regard to whether there are any recoveries on account of the tort claims held by the members of the Ad Hoc Committee.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 4

### 3.       Replenishing Retainer

You shall deliver to the Firm a retainer of $25,000 (the "**Retainer**").  The Retainer, as well as any future deposits, will be held in the Firm's client trust account.  The Firm will use the Retainer to pay the fees and other charges you incur.  The Firm will typically apply funds in the Retainer upon or following delivery of monthly statements to you, but reserves the right to apply funds in the Retainer to pay any fees or other charges at any time after they are incurred and in such cases will deliver a statement to you following the application of such funds.  The Retainer will be a "**replenishing retainer**" such that your funds on deposit with the Firm will remain at no less than $25,000.  Within fifteen (15) days after notice from the Firm to you that all or a portion of the Retainer has been used to pay professional fees and/or costs, you shall deposit funds with the Firm sufficient to replenish the Retainer to an amount equal to at least $25,000.  If the billing in any monthly cycle exceeds $25,000, you shall pay within fifteen (15) days after such billing the full amount of such charges so that the  Retainer is completely restored to an amount no less than $25,000 and no receivable balance remains owing from you to the Firm. In the event that the hours expended are less than the total retainer, the firm will refund any unearned portion of the retainer.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 5

**4.      Direction**

The Firm is being retained by the Ad Hoc Committee, and not by any individual member

of the Ad Hoc Committee.  The Firm shall not act on behalf of the Ad Hoc Committee in a

manner that is contrary to any direction we receive from the Law Firms.

**5.      The Ad Hoc Committee**

We understand, and each member of the Ad Hoc Committee so acknowledges, that each

such member has agreed to come together to form the Ad Hoc Committee because you are

similarly situated tort claimants of the Debtors and you expect that you may have similar views

as to matters relating to the Debtors and the tort claims.  Notwithstanding this arrangement and

the execution of this Engagement Agreement: (i) each member of the Ad Hoc Committee

acknowledges that no member has agreed to take on, and no member shall owe, a fiduciary duty

to any of the other members; and (ii) no member has agreed to take on, nothing herein shall

imply, and each member disclaims any fiduciary duty to any other holder of tort claims.

Furthermore, each member acknowledges that it in no way intends or agrees to be deemed a

member of a "**group**" within the meaning of Rule 13d-5 under the Securities Exchange Act of

1934, as amended, for any purpose other than the resolution of the matters specifically identified

herein, or to be acting in concert in any other manner with any holder which would be in

violation of, or trigger reporting or similar obligations under, applicable law.  Furthermore,

neither this arrangement nor any provision of this Engagement Agreement shall (a) prevent any

member of the Ad Hoc Committee from exercising or seeking to enforce or protect its rights

with respect to the Debtors as it may deem appropriate, or (b) otherwise affect any member's

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 6

ability to act or forbear from taking any action as it may deem appropriate, including effectuating any settlement with the Debtors with respect to its tort claim.

A list of each member of the Ad Hoc Committee as of the date of this letter is attached hereto as Exhibit "A". It is expressly understood and agreed that additional members may join the Ad Hoc Committee. Each member's confidential information shall remain confidential and will not be shared with any other member, except with respect to the specific subject matter of the engagement of the Firm by the Ad Hoc Committee. Each member waives any obligation of the Firm to disclose to it any information of another member that is to remain confidential as provided in the foregoing sentence.

## 6.    Conflicts of Interest

Our ability to represent any and all of our clients is governed by what are commonly called Rules of Professional Conduct, which include but are not limited to rules regarding conflicts of interest between any client of an attorney or law firm and their existing and former clients. Each member of the Ad Hoc Committee agrees that the Firm has been engaged in this matter as legal counsel to the Ad Hoc Committee as a whole, and not individually by you or any other individual member thereof. Each member of the Ad Hoc Committee also understands and agrees that the Firm therefore will not be prevented due to legal conflicts or Rules of Professional Conduct of any kind from providing legal or non-legal services to such other clients in matters that might be directly adverse to you or any other member of the Ad Hoc Committee or your respective interests (other than in connection with the interests of the Ad Hoc Committee as a whole as they relate to the Debtors). This means that, subject to the limits

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 7

described in the Terms, the Firm may represent another client in certain matters in which its

interests are, will be, or have been adverse to the Ad Hoc Committee's interests.

**7.    Communication**

We will work BrownRudnick to keep the Ad Hoc Committee apprised of significant

developments in the course of the engagement and will obtain the Ad Hoc Committee's

direction on critical issues.

**8.    Records**

We will maintain your file and any documents or ancillary materials during the

pendency of the transaction or litigation for which we were retained.  Upon conclusion of the

matter, we will give you the opportunity to remove any materials we received from you or on

your behalf.  Any materials which are not removed by you will be retained for a period of five

(5) years from the date of conclusion of your matter.  At the conclusion of five years, your file,

and all documents and items within it, will be sent for destruction without further notice to you.

**9.    Withdrawal**

We reserve the right to withdraw from representing you at any time if you do not honor

your financial commitments to us or, of course, in the event we perceive any conflict of interest

or other ethical consideration.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 8

**10.    Discharge**

You have the absolute right to discharge us for any reason at any time.  We will promptly turn your file over to you or your new attorney on request.  You will remain responsible for all fees and costs incurred through the date of discharge, but payment of our final statement is not a precondition to the release of your file.

In representing you in this matter, we cannot, and do not, warrant or predict results or final developments.  Be assured that it is our desire to afford you conscientious, faithful, and diligent service, seeking at all times to achieve solutions that are just and reasonable to you.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 9


      If the foregoing meets with your approval, kindly signify your consent and approval by

signing your name in the space provided below, insert the date, and return a copy of this letter to

me.




                Very truly yours,


                */s/ Rachel Mersky*


                Rachel B. Mersky

                For Monzack Mersky Browder and Hochman, P.A.

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.:  45-3913357

By: *Jonathan Schulman*
Name: Jonathan E. Schulman
Title:  Partner
Date:  9/14/2020
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: John C Thornton
Name: ALC Thl
Title: President
Date: Sept 18, 2020

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: 20-4258700

By: _____
Name: Stewart, Eisenberg
Title: President
Date: 9/15/2020

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: 91-1525117

By: Timothy D. Kosnoff
Name: Timothy D. Kosnoff for Kosnoff Law PLLC
Title: President/Owner
Date: September 13, 2020

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

{00218649-2}

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: __37-1923464_____

By: _____
Name:  Andrew Van Arsdale
Title:  Managing Partner
Date:  9/17/2020

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: __45-3913357_____

By: *Jonathan Schulman*
Name: Jonathan E. Schulman
Title:  Partner
Date:  9/14/2020
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

MONZACK MERSKY BROWDER AND HOCHMAN
PROFESSIONAL ASSOCIATION

September 13, 2020
Page 10

Consented and Agreed to:

**EISENBERG, ROTHWEILER,
WINKLER, EISENBERG & JECK, P.C.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Eisenberg, Rothweiler, Winkler,
Eisenberg
& Jeck, P.C. on behalf of itself and its Law
Firm Clients*

Consented and Agreed to:

**AVA LAW GROUP, INC.**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The AVA Law Group, Inc. on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**SLATER SLATER SCHULMAN, LLP**

Tax ID No.: _45-3913357_____

By: *Jonathan Schulman*_____
Name: _Jonathan E. Schulman_____
Title: _Partner_____
Date: _9/14/2020_____
*The Slater Slater Schulman, LLP on behalf of
itself and its Law Firm Clients*

Consented and Agreed to:

**KOSNOFF LAW PLLC**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Kosnoff Law PLLC on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ANDREWS & THORNTON**

Tax ID No.: _____

By: _____
Name: _____
Title: _____
Date: _____

*The Andrews & Thornton on behalf of itself
and its Law Firm Clients*

Consented and Agreed to:

**ASK LLP**

Tax ID No.: _____

By: _____
Name: ___Joseph L. Steinfeld, Jr._____
Title: ____Managing Partner_____
Date: ____September 16, 2020_____
*The ASK LLP on behalf of itself and its Law
Firm Clients*

**EXHIBIT A**

Members of Ad Hoc Committee

| Name of Member of Ad Hoc Committee | Address of member of Ad Hoc Committee | Name of corresponding Law Firm |
| --- | --- | --- |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**EXHIBIT E**

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of September 24, 2020  by and between (a) Marc J. Bern & Partners, LLP  (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 24, 2020.

By:  Marc J. Bern & Partners, LLP

By: _____
Name:  Joseph J. Cappelli
Title: Partner

BROWN RUDNICK LLP

By: _____
Name:  Sunni P. Beville

MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: _____
Name:  Rachel B. Mersky

**EXHIBIT E**

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      <u>Definitions</u>.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      <u>Joinder</u>.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29th, 2020.

                    By:
                    Junell & Associates, PLLC

                    By:_____
                        Name: Harris Junell
                        Title:  Managing Partner


                    BROWN RUDNICK LLP


                    By:_____
                        Name:  Sunni P. Beville



                    MONZACK MERSKY BROWDER AND
                    HOCHMAN, P.A.


                    By:_____
                        Name:  Rachel B. Mersky

3.     _Amendment_.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.     _Effect_.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.     _Counterparts_.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29th, 2020.

By:
Junell & Associates, PLLC

By:_____
     Name:  Harris Junell
     Title:  Managing Partner


BROWN RUDNICK LLP



By:_____
     Name:  Sunni P. Beville



MONZACK MERSKY BROWDER AND
HOCHMAN, P.A.

By: _Rachel B. Mersky_____
     Name:  Rachel B. Mersky

**EXHIBIT E**

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    Definitions.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of 9/23/2020.

                            By:  Adam Krause

                            By: _____
                                Name: Adam Krause
                                Title: Partner


                            BROWN RUDNICK LLP


                            By: _____
                                Name:  Sunni P. Beville


                            MONZACK MERSKY BROWDER AND
                            HOCHMAN, P.A.


                            By: _____
                                Name:  Rachel B. Mersky

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of 9/23/2020.

                            By:  Adam Krause


                            By: _____
                                Name: Adam Krause
                                Title: Partner



                            BROWN RUDNICK LLP



                            By: _____
                                Name:  Sunni P. Beville



                            MONZACK MERSKY BROWDER AND
                            HOCHMAN, P.A.


                            By: _____
                                Name:  Rachel B. Mersky

**EXHIBIT E**

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of October 6, 2020 by and between (a) Motley Rice LLC (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Definitions.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of [DATE].

                        MOTLEY RICE LLC


                        By:_____
                            Name:  Daniel Lapinski
                            Title:  Member


                        BROWN RUDNICK LLP


                        By:_____
                            Name:  Sunni P. Beville



                        MONZACK MERSKY BROWDER AND
                        HOCHMAN, P.A.


                        By:_____
                            Name:  Rachel B. Mersky

3.      Amendment.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      Effect.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      Counterparts.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of [DATE].

                                MOTLEY RICE LLC


                                By:_____
                                    Name:  Daniel Lapinski
                                    Title:  Member


                                BROWN RUDNICK LLP



                                By:_____
                                    Name:  Sunni P. Beville



                                MONZACK MERSKY BROWDER AND
                                HOCHMAN, P.A.


                                By: *Rachel B. Mersky*
                                    Name:  Rachel B. Mersky

*Privileged and Confidential/Subject to Common Interest*

### EXHIBIT E

**Engagement Letter Joinder Form**

AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of [DATE] by and between (a) [FIRM] (the "New Voting Representative") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "Counsel"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "Coalition") (this document, the "Amendment and Joinder Agreement").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "Bylaws");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("BR Engagement Letter");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "MMBH Engagement Letter");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "CASJ Engagement Letters"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.      Definitions.  Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.      Joinder.  New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

*Privileged and Confidential/Subject to Common Interest*

3.    <u>Amendment</u>.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 29, 2020.

                        By:
                        NAPOLI SHKOLNIK PLLC

                        By:_____
                            Name: Hunter J. Shkolnik
                            Title: Senior Partner


                        BROWN RUDNICK LLP


                        By:_____
                            Name:  Sunni P. Beville


                        MONZACK MERSKY BROWDER AND
                        HOCHMAN, P.A.

                        By: *Rachel B. Mersky*
                            Name:  Rachel B. Mersky

**Engagement Letter Joinder Form**

<u>AMENDMENT AND JOINDER TO ENGAGEMENT LETTERS</u>

This AMENDMENT AND JOINDER TO ENGAGEMENT LETTER dated as of September 25, 2020 by and between (a) Reich and Binstock, LLP (the "<u>New Voting Representative</u>") (b) Brown Rudnick LLP and Monzack Mersky Browder and Hochman, P.A. (together, "<u>Counsel</u>"), both on their own behalf and as Counsel to the Coalition of Abused Scouts for Justice (the "<u>Coalition</u>") (this document, the "<u>Amendment and Joinder Agreement</u>").

WHEREAS, the Coalition is governed by those Bylaws effective as of September 14, 2020 (the "<u>Bylaws</u>");

WHEREAS, Brown Rudnick and the Coalition have entered into that certain Engagement Letter dated as of July 21, 2020 ("<u>BR Engagement Letter</u>");

WHEREAS, Monzack Mersky Browder and Hochman, P.A. Rudnick and the Coalition have entered into that certain Engagement Letter dated as of September 13, 2020 (the "<u>MMBH Engagement Letter</u>");

WHEREAS, the Bylaws of the Coalition provide that it may retain additional professionals upon appropriate documentation (such documentation, if any, which shall be disclosed with particularity as of the date hereof to the extent existing, together with the BR Engagement Letter and MMBH Engagement Letter, the "<u>CASJ Engagement Letters</u>"); and

WHEREAS, Counsel and New Voting Representative have agreed to amend the CASJ Engagement Letters pursuant to the terms and conditions hereof and to allow New Voting Representative to join the Coalition as a Voting Representative for all purposes under the Bylaws and the CASJ Engagement Letters.

NOW, THEREFORE, in consideration of the foregoing, the mutual agreements herein contained and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

1.    <u>Definitions</u>.    Capitalized terms not otherwise defined herein have the same respective meanings given to them in the Bylaws as of the date hereof.

2.    <u>Joinder</u>.    New Voting Representative agrees to join the CASJ Engagement Letters as a "Law Firm" for all purposes thereunder.  Counsel agrees to the New Voting Representative joining the CASJ Engagement Letters as a Law Firm.

3.    <u>Amendment</u>.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.    <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.    <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 25, 2020.

                        By: REICH AND BINSTOCK, LLP

                        By: _____
                            Name: Dennis Reich


                        BROWN RUDNICK LLP

                        By: _____
                            Name:  Sunni P. Beville


                        MONZACK MERSKY BROWDER AND
                        HOCHMAN, P.A.

                        By: _____
                            Name:  Rachel B. Mersky

3.      <u>Amendment</u>.  Counsel and New Voting Representative agree that, notwithstanding any provisions in the Engagement Letter to the contrary, including the Sections of the Engagement Letter titled "Staffing, Fees, and Expenses", the New Voting Representative shall be required to pay its ratable proportion of the costs of the Coalition in accordance with Article 1.7 of the Bylaws.

4.      <u>Effect</u>.  Except as expressly set forth herein, (i) the execution, delivery, and performance of this Amendment and Joinder Agreement shall not operate as a modification or amendment to the CASJ Engagement Letters and (ii) the CASJ Engagement Letters shall be and remain in full force and effect in accordance with their terms and are ratified and confirmed in all respects.

5.      <u>Counterparts</u>.  This Amendment and Joinder Agreement may be executed in counterparts, each of which shall be considered an original, and together shall be considered one and the same document.


        IN WITNESS WHEREOF, each of the undersigned has hereunto set his/her hand effective as of September 25, 2020.

By: REICH AND BINSTOCK, LLP

By: _____
      Name: Dennis Reich


BROWN RUDNICK LLP

By: _____
      Name:  Sunni P. Beville


MONZACK MERSKY BROWDER AND HOCHMAN, P.A.

By: _Rachel B. Mersky_____
      Name:  Rachel B. Mersky

# EXHIBIT A-3

**State Court Counsel Exemplar Engagement Letters**



## AIS

### ABUSED IN SCOUTING

EISENBERG ROTHWEILER          KOSNOFF LAW          AVA LAW GROUP
PHILADELPHIA, PA              SAN JUAN, PR          SAN DIEGO, CA

### PROFESSIONAL EMPLOYMENT AGREEMENT

**I.       Purpose of Representation:** The undersigned hereby agree(s) to employ Eisenberg Rothweiler, Kosnoff Law, and AVA Law Group as attorneys-at-law to represent the undersigned in claims against the Boy Scouts of America. The undersigned agrees that said attorneys are granted the right to associate with other law firms in the prosecution of the claim, if they feel that such is in the client(s) best interests.

**II.      Scope of Representation:** By signing this Engagement Agreement, you understand and agree that AIS Counsel is committing to represent you **only** in connection with the February 18, 2020 bankruptcy filing, or a related global resolution of sex abuse claims against BSA. You have the right to terminate the representation at any time, subject to our right to recoup fees and expenses as provided by law.

**III.     Attorney's Fee:** In consideration for services rendered, it is agreed that the undersigned will pay to said attorneys a sum equal to ▉ of any amount recovered, whether by compromise before suit is filed, or compromise or judgment after suit is filed. The ▉ attorney's fee shall be split: ▉ to Eisenberg Rothweiler, ▉ to Kosnoff Law, and ▉ to AVA Law Group. It is agreed that the undersigned will owe no fees to said attorneys if nothing is received or recovered on behalf of the undersigned.

**IV.      Expenses**: After deduction of said attorney's fees from any recovery, it is agreed that the undersigned will reimburse said attorneys for any court costs, medical records retrieval costs, cost of carry, and other expenses incurred or advanced by said attorneys in handling such claims on behalf of the undersigned. It is agreed that the undersigned will owe no expenses to said attorneys if nothing is received or recovered on behalf of the undersigned.

SIGNED AND AGREED on this_____day of_____20___.

**AGREED and APPROVED:**

Client's Printed Name:  _____

Client's Signature: _____

Client's SSN: _____

Client's DOB:_____

Andrews & Thornton | ASK LLP
Attorney-Client Contingency Fee Retainer Agreement

**Boy Scouts of America – Attorney-Client Agreement**

**ANDREWS & THORNTON, AAL, ALC** and **ASK LLP** (the "Firms") and
_____ ("Client") hereby agree that Firms will provide legal services to Client to recover a monetary claim in bankruptcy court against Boy Scouts of America and any related co-Debtors (jointly, "BSA") in BSA's Chapter 11 bankruptcy action, as explained in more detail below.

1. **LIMITED REPRESENTATION**. Client hereby retains the Firms to represent Client for the limited purpose of filing of bankruptcy claims against BSA. This limited representation includes the following:

   a. **Firms are <u>not</u> bringing any claims outside of bankruptcy proceedings.** Firms are only handling the processing of Client's claims against BSA. This means that Firms will <u>not</u> be filing any lawsuits or bringing any claims against any party outside of the bankruptcy process, including but not limited to any parents, volunteers, outside organizations, or other individuals. <u>If Client wishes to pursue any claims against any entity outside of the bankruptcy court process, Client will need to immediately hire separate counsel</u>.

   b. **Firms are <u>not</u> taking action to preserve claims or protect the statute of limitations.** A statute of limitations is the legal deadline within which you must file a civil claim. If Client does not file a claim within the applicable statute of limitations, Client's claim may be lost forever. Client understands that Firms are <u>not</u> taking any action to file claims against any parties within the applicable statute of limitations. If the statute of limitations expires after you have signed this agreement but before another responsible entity declares bankruptcy, your bankruptcy claim may be lost forever. <u>If Client wishes to preserve claims and not have them lost forever because the statute of limitation has expired, Client will need to immediately hire separate counsel</u>.

2. **ASSOCIATION OF COUNSEL.** Client understands and agrees that the two separate law firms of ANDREWS & THORNTON AAL, ALC and ASK LLP will be associating on this matter. Client authorizes the Firms to associate co-counsel as the Firms may deem necessary and to share any fees contemplated in this contract with such co-counsel with the express understanding that associating with co-counsel will NOT increase the fees set forth below.

3. **WITHDRAWAL AFTER INVESTIGATION.** Even after Client signs this Attorney-Client Agreement, Client acknowledges that it has been advised that the Firms still must investigate Client's claim relating to any potential future bankruptcy proceeding, and that Firms may terminate this agreement and/or not pursue certain entities after such investigation. Client has been further advised that the Firms' decision to terminate this agreement and/or not pursue certain entities may be based on any number of factors, including but not limited to a failure to establish a causal connection between the facts reported and the Client's injuries, failure to comply with any state or other applicable statute of limitation failure to include an indispensable or other required party.

4. **PROSECUTION OF CLAIM.** Client hereby fully empowers, authorizes and directs the Firms to manage and handle, as they deem necessary, best and proper, said claim relating to any potential future bankruptcy proceeding, and to prosecute said claim in any manner they deem advisable. The Firms are hereby authorized and empowered to deliver in Client's name any and all notices, receipts, authorizations, releases, pleadings and any other documents and instruments proper in the handling of said claim.

CASJ Verified Statement Exhibit A Page 63

Andrews & Thornton | ASK LLP
Attorney-Client Contingency Fee Retainer Agreement

**5.  CLIENT'S RESPONSIBILITIES.** The Client agrees to cooperate fully with the Firms, disclose all relevant facts at all times during the claim and to promptly advise the Firms of any change in address, email address or telephone number. Client authorizes the Firms to use their professional judgment and any relevant documents, records or other information that the Firms deem necessary to the proper representation of the Client. The Client agrees to promptly and fully comply with all reasonable requests of the Firms on all matters included in this contract. The Client understands that failure to fully cooperate may be a basis for termination of this contract. Client further agrees that the Firms may withdraw from representing the Client if the Firms deem withdrawal is warranted.

The Client agrees not to attempt on his part to unilaterally settle all or any portion of the claims made the subject of this contract. The Client will rely exclusively upon the representation of the Firms during any settlement negotiations. No settlement will be made without the Client's consent.

**6.   CONTINGENT FEE ARRANGEMENT.** The Firms, and co-counsel if any, will assume joint responsibility for representation of the Client. Attorneys' fees due Firms will be a percentage of the recovery. In consideration of the services rendered, and to be rendered, to the Client by the Firms, the Client agrees to grant to the Firms for the Firms' compensation in handling the Client's bankruptcy claim the following present undivided interest and assignment in the claims: ▮▮▮▮▮▮▮▮▮▮▮ The fee percentage calculation will be made based on the gross recovery before deduction of any expenses. In the event there is no recovery, Client owes Firms nothing.

ANDREWS & THORNTON, AAL, ALC, and ASK LLP will associate on this matter and have agreed to split any fee collected under the terms of this agreement in the following manner: ▮▮▮ to ANDREWS & THORNTON and ▮▮▮ to ASK LLP.

If contingent attorney's fees are limited by law in the state where Client resides or the bankruptcy court, the percentage of the recovery Client owes will be the maximum allowed in Client's state of residence but, the percentages set forth above will be the maximum Client owes.

Client hereby grants the Firms a lien on any and all recovery from the claims which is subject of Firms' representation under this agreement. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.

**7.  NEGOTIABILITY OF FEES.**  The rates set forth above are not set by law, but are negotiable between the Firms and Client.

**8.  EXPENSES.** The Firms agree to advance for any and all reasonable expenses associated with the prosecution of client's claim. In the event of a recovery, the Client understands and agrees that Firms will be paid all reasonable costs, charges or expenses made or incurred by the Firms in the Firms' handling of the Client's claim and causes of action, including but not limited to expenses or charges for obtaining medical records, court costs, filing fees, depositions, expert witnesses, expert consultants, copying and review of voluminous documents, postage, research, computerized document management, conference calls, jury consultants, travel, and costs relating to the depositions of defendants' representatives, witnesses, and agents. If a matter requires experience or expertise uncommon to the Firms, outside counsel may be obtained. Client understands that Attorneys may represent numerous other similarly injured clients and Client agrees that the term "expenses" includes general expenses incurred for the benefit of all such similarly injured clients,

Andrews & Thornton | ASK LLP
Attorney-Client Contingency Fee Retainer Agreement

including but not limited to retaining and compensating experts, copying and review of voluminous documents, postage, research, computerized document management, conference calls, jury consultants, travel, and costs relating to the depositions of Debtors' representatives, witnesses, and agents. Such general expenses will be allocated equitably among all benefited claimants (usually in proportion with the client's recovery).

Costs advanced will be payable out of the Client's share of any recovery and will not affect the contingency rate or fees due to the Firms. Client hereby assigns and grants to the Firms as a lien that portion of the gross proceeds recovered that is equal to the total amount of costs and expenses advanced.

Additionally, Client understands that if Client's case proceeds to court action or arbitration, and if Client loses the case, that the court may award the winning party certain fees and/or costs against the Client. Client understands that there may be opportunities to settle such an award without payment.

**9.  RECEIPT AND DISBURSEMENT OF CASE RECOVERY.**   All proceeds of Client's case shall be deposited into one of the Firms' trust accounts for disbursement in accordance with the provisions of this Agreement. Client grants to Firms a power of attorney to execute financial instruments for deposits into Client's trust account. Client will receive an accounting for approval before disbursement.

**10.  POWER OF ATTORNEY TO SIGN FOR CLIENT**. There may be times when it is necessary to submit the Client's signature on documents. Generally, an attempt will be made to obtain Client's signature.  However, in those situations where it is necessary to protect the Client's rights from a deadline, Client authorizes the Firms to sign documents on his or her behalf.

**11.  CONFLICT OF INTEREST: REPRESENTATION OF OTHER INDIVIDUAL CLAIMANTS** Firms represent other individuals whose claims may be pursued in bankruptcy. By its nature, the funds available to claimants in a bankruptcy will be limited, and because the Firms could be representing multiple parties with respect to multiple claims in that bankruptcy, there is a conflict of interest.  By signing this agreement, Client waives any conflict of interest.

**12.    NO GUARANTEES.**  No guarantees have been made as to what amounts, if any, Client may be entitled to recover in this case.

**13.    TERMINATION OF REPRESENTATION.** Either party may terminate the representation at any time, subject to Firms' obligations under the Rules of Professional Conduct and the approval of the court if the matter is in litigation.  In the event the Client recovers nothing or, after investigation, Firms or Client decides not to pursue the claims, Client will not be responsible for any fees, costs or expenses. If, however, Client terminates attorney and pursues a recovery, with or without another attorney, Client agrees to pay attorney the fair rate for time expended on the matters as well as reimbursement of costs and expenses.  If there is any disagreement concerning the fee charged hereunder, the parties agree to submit that disagreement to binding arbitration with the Fee Arbitration Committee of the state bar for a jurisdiction in which the principal attorney(s) handling the matter is licensed.

**14.  REVIEW AND UNDERSTANDING OF AGREEMENT**.   Client acknowledges review and understanding of this agreement, having read its contents in its entirety, and Client understands and

CASJ Verified Statement Exhibit A Page 65

Andrews & Thornton | ASK LLP
Attorney-Client Contingency Fee Retainer Agreement

agrees with all of its provisions.  Client acknowledges that Firms, their employees or agents, has made no guarantee regarding the successful determination of client's claim or causes of action, nor any guarantees regarding the amount of recovery or the type of relief, if any, which Client may obtain there from.

This Agreement must be signed by both attorneys and client to be valid.

**ACCEPTED:**

This _____day of _____, **2020**, at _____.
      [Day]                [Month]                      [City, State]

_____
**CLIENT:**

**ACCEPTED:**

By:_____
**ANDREWS & THORNTON, AAL, ALC**
ANNE ANDREWS
JOHN C. THORNTON
Attorneys at Law

**ASK LLP**
ED NEIGER
Attorney at Law

You are entitled to receive a copy of this agreement with signatures by both the Attorney and Client for your records.  If you do not receive a copy of the signed agreement within 30 days of returning it to Attorney, please call and we will send another copy.

PCF: MG

4



**JUNELL & ASSOCIATES, PLLC**
**3737 BUFFALO SPEEDWAY, SUITE 1850**
**HOUSTON, TEXAS 77098**
(713) 351-0350
www.junell-law.com
EMAIL: bsa@junell-law.com

# POWER OF ATTORNEY AND EMPLOYMENT AGREEMENT
## <u>BOY SCOUTS LITIGATION</u>

This Employment Agreement ("Agreement") between _____ ("Client"), and **Junell & Associates, PLLC** ("Attorneys" or "J&A"), is for legal representation in prosecuting the Client's causes of action. Client authorizes Attorneys to investigate, institute and prosecute a lawsuit for Client's causes of action against **The Boy Scouts Of America** ("Defendant") arising from injuries relating to Client's sexual abuse as a minor.

**CONTINGENT FEE.** The fee to be paid will be a percentage of the "gross recovery". The term "gross recovery" means the total of all amounts received by settlement, arbitration award or judgment and shall include any amount received from the Extraordinary Injury Fund (EIF). The fee will be calculated before the deduction of any costs, liens and expenses as set forth below, which will remain the responsibility of Client to be paid from the portion of any amounts received by Client after deduction of the fee. The Attorneys' fee shall be calculated as ███████████████**of the gross recovery**. **If the Attorneys are not successful in obtaining a recovery for Client, the Client will not owe any fees or expenses to the Attorneys.**

**EXPENSES.** Client agrees that the Attorneys will advance all costs and expenses which, in the opinion of the Attorneys, are reasonably necessary for the development of the case, and that those expenses will be reimbursed from the net recovery after attorney fees are deducted. Such expenses include, but are not limited to, filing fees, expert fees, investigator fees, depositions, postage, couriers, medical records, nurse and medical review performed by a third-party medical review company, and/or other third-party vendors, reasonable travel expenses incurred on behalf of the Client, and common expenses that are properly chargeable for the investigation, preparation, trial and/or settlement of more than one client's cause of action. Common expenses are routinely shared by more than one claimant and shall be deducted from the client's recovery in an equitable and reasonably proportionate manner. Client understands that the expenses, which have been advanced, will be deducted from the net proceeds payable to the Client after deduction of attorneys' fees. **If Attorneys do not obtain a settlement or recovery for the Client, then the Client is not responsible for and will not pay any fees or expenses to the Attorneys.**

**ASSOCIATE COUNSEL.** Client understands and agrees that J&A may associate other lawyers to assist in representing Client, subject to Client's consent. The Client will pay no more in fees with the inclusion of associate counsel than the Client would pay pursuant to this contract if J&A solely represented Client. Any fee sharing among Associate Counsel, consented to by Client, shall be after deduction of any court imposed steering committee fees. However, Client agrees to pay costs incurred by associate counsel on Client's behalf in the same manner and to the same extent that Client has agreed to pay J&A's costs.

**SETTLEMENT NEGOTIATIONS / GROUP SETTLEMENT.** No settlement shall be made without Client's consent and approval. Client agrees to seriously consider any settlement offer Attorneys recommend before making a decision to accept or reject such offer. Client agrees not to make any settlement or compromise of any nature of any of Client's claims without prior notice to Attorneys. Client grants Attorneys the power of attorney to execute all documents connected with the claim for the prosecution of which the attorney is retained, including pleadings, contracts, checks or drafts, settlement agreements, compromises, releases, verifications, dismissals, and orders, as well as all other documents which the Client could properly execute. Client understands this suit may be handled as part of a larger number of cases which may be aggregated for settlement and/or trial preparation. Client understands that as a part of an aggregate settlement, Client may be subject to a multidistrict litigation fee assessment ordered by an MDL judge to reimburse court-appointed attorneys for the organization of nationwide litigation and that this fee may not be considered part of the ███contingent fee owed to J&A Attorneys. Client authorizes the Attorneys to enter into aggregate settlement negotiations and to disclose

1

the amount of the proposed settlement, the nature and extent of Client's injuries, and other factors relevant to the evaluation of settlement values to other clients whose cases are included in the aggregate of cases.

**CLIENT ACKNOWLEDGMENTS.** Client understands that the statute of limitations period for his/her case must be investigated and that this agreement is made subject to that investigation as well as the investigation of Client's entire case. Client agrees to cooperate with the Attorneys at all times, to comply with reasonable requests, and to ensure that Attorneys are regularly apprised of current contact information, including address, phone numbers and email. In the event that Client needs to report any changes, Client will call (713) 351-0350 or email the Attorneys at bsa@junell-law.com as soon as possible. Client agrees to immediately inform Attorneys of any and all liens and potential liens on Client's settlement, including healthcare liens and any loans Client may obtain using this cause of action as security. Client also authorizes Attorneys to disclose information necessary to the advancement of Client's case to third parties, including, but not limited to, lien resolution providers, trustees, and finance/bank vendors. Client understands and agrees that all communications with Defendant and/or Defendant's counsel shall be through Attorneys, and Client will not engage in communications with Defendant and/or Defendant's counsel. Client understands and agrees that information regarding Client's lawsuit is strictly confidential and shall not be discussed with anyone other than the Attorneys and staff representing Client. Therefore, Client will not share information relating to Client's claims on social media platforms. Client understands that Attorneys have made no guarantee or assurances regarding the likelihood of success of Client's claim.

**PRE-SETTLEMENT FUNDING.** Client represents he/she has not received pre-settlement funding from third party lenders related to this litigation or Client has informed Attorneys of any outstanding pre-settlement funding lien held by third party lenders related to this litigation. Client understands that J&A does not recommend that clients obtain pre-settlement funding based upon a contingent settlement due to the extremely high rate of interest incurred over time. Client understands that if Attorneys are successful in obtaining a settlement or recovery, the full loan amount, including any accrued interest, will be deducted from any amount of gross recovery. Client understands that Attorneys have no obligation to negotiate with third-party lenders on Client's behalf and that any dispute arising out of the third-party loan will not be handled by Attorneys.

**TERMINATION.** Attorneys may withdraw from representation of Client (a) with Client's consent (b) upon court approval, or (c) if no court action has been filed, for good cause and upon reasonable notice to Client. Good cause includes Client's breach of this contract, Client's refusal to cooperate with Attorneys or to follow Attorneys' advice on a material matter or any other fact or circumstance that would render Attorneys' continuing representation unlawful, unethical or unreasonably difficult. Attorneys will maintain Client's file in an electronic format for four (4) years after this matter is concluded. Client may request the file at any time during, upon conclusion of, or after conclusion of, this matter. Thereafter, the file may be destroyed without further notice to Client. Client's file consists of all documentation pertaining to Client's individual case, including medical records, settlement documents provided to Client, correspondence between Attorney and Client, Attorney notes and work product relating to Client's case, invoices and billing records related to expenses charged to Client, and communication between Attorneys related to Client's case specifically.

**BANKRUPTCY.** Client represents he/she is not involved in a current bankruptcy or Client has informed Attorneys of involvement in any past or current bankruptcies and Client has notified the bankruptcy trustee of potential recovery. Client understands that filing for bankruptcy in the past or at any point throughout this litigation may impact the Client's ability to retain some or all of any recovery in this matter. By law, the trustee of the bankruptcy estate must be put on notice of the settlement and may choose to re-open the bankruptcy and may claim a portion or all of the settlement money. Client understands that Attorneys are being retained for this litigation only and do not represent Client in any capacity related to re-opened or future bankruptcy filings. Additionally, the client agrees to pay any additional bankruptcy processing fees incurred by a third-party bankruptcy coordination team which are required to disburse settlement funds. Client understands that he or she is obligated to keep the Attorneys informed of any bankruptcy filing. Client further understands that failure to disclose this lawsuit in a bankruptcy proceeding may result in a dismissal of this lawsuit and possibly sanctions by the bankruptcy court.

**ESTATE, GUARDIANSHIP AND/OR PROBATE**. The employment for an estate, guardianship, or probate matter is based on hourly work and is not covered under this contingent fee agreement. In the event a recovery is made, Client understands that Attorneys do not specialize in complex guardianship and/or probate matters and that the guardian or estate representative will be responsible for obtaining local counsel to assist in probate or guardianship matters. The Client agrees that any additional probate processing fees, to include attorney and paralegal fees plus probate costs, will be deducted from the guardian or estate's net share of any fees recovered as an added expense. However, there remains no obligation to reimburse fees or costs incurred on the client's behalf if Attorneys make no recovery.

**GENERAL PROVISIONS**. This Agreement contains the entire Agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties. If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect. This Agreement may be modified by subsequent Agreement of the parties only by an instrument in writing signed by both of them or an oral agreement only to the extent that the parties carry it out.

**DISPUTE RESOLUTION BY ARBITRATION.**   THIS CONTRACT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS.  CLIENT AND ATTORNEY HEREBY AGREE THAT ALL DISPUTES, CONTROVERSIES, CLAIMS OR DEMANDS ARISING OUT OF OR RELATING TO INTERPRETATION, ENFORCEMENT OR ALLEGED BREACH OF THIS CONTRACT SHALL BE SUBMITTED TO BINDING ARBITRATION, WHICH SHALL ONLY BE BROUGHT IN HARRIS COUNTY, TEXAS, WHERE THIS CONTRACT IS TO BE PERFORMED.  ANY SUCH ARBITRATION SHALL PROCEED IN ACCORDANCE WITH THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION INCLUDING THE SELECTION OF ARBITRATORS.  THE ARBITRATION AWARD SHALL BE FINAL, BINDING AND NON-APPEALABLE.  ANY FEES AND EXPENSES REASONABLY INCURRED THROUGH SUCH ARBITRATION SHALL BE REIMBURSED BY THE LOSING PARTY TO THE PREVAILING PARTY.  CLIENT AGREES AND ACKNOWLEDGES THAT HE OR SHE WAIVES THE RIGHT TO LITIGATE IN COURT OR TO ARBITRATE ANY CLAIM OR DISPUTE ARISING UNDER THIS CONTRACT AS A CLASS ACTION, EITHER AS A MEMBER OF A CLASS OR AS A REPRESENTATIVE.   THE PROVISIONS OF THIS ARBITRATION AGREEMENT SHALL SURVIVE THE TERMINATION OF THIS CONTRACT FOR ANY REASON WHATSOEVER.

The Client acknowledges that he or she has read this Agreement in its entirety and that he or she fully understands the terms and conditions of this Agreement, and that he or she agrees to abide by its terms.

CLIENT: Signature: _____          Date: _____

Client: Printed Name: _____

Client's DOB: _____          Client's SSN: _____

Primary Mailing Address: _____          Phone Numbers

_____          Home:_____

_____          Mobile:_____

ATTORNEY Signature: _____

    Junell & Associates, PLLC
    3737 Buffalo Speedway, Suite 1850
    Houston, Texas 77098
    (713) 351-0350
    www.junell-law.com
    Email:  bsa@junell-law.com

MARC J. BERN & PAR1NERS
101 West Elm Street Suite
215
Conshohocken, PA 19428                                    (800) LAW-5432

## CONTINGENT FEE AGREEMENT

I, the undersigned client, do hereby retain and employ MARC J. BERN & PARTNERS as my attorneys to represent me in a claim for all damages relating to the sexual misconduct, abuse, assault and/or exploitation committed by the Boy Scouts of America or any person, firm or corporation affiliated with the Boy Scouts of America.

I further authorize MARC J. BERN & PARTNERS to employ any other additional legal assistance that they deem needed to fully represent my interests. Any fees for additional legal assistance will be determined by MARC J. BERN & PARTNERS and paid by them from their fee as prescribed by this agreement. I agree and endorse whatever agreement they make as being in my best interest.

It is agreed and understood that this employment is upon a contingent fee basis, and if no recovery is made, I will not be indebted to MARC J. BERN & PARTNERS for any attorney's fees.

If there is a recovery of money damages, whether by way of settlement, verdict, or judgment, I agree that MARC J. BERN & PARTNERS shall receive ███████ of said gross settlement, verdict or judgment as compensation for their professional services, plus all actual costs incurred to process my successful claim. These costs will include, but not limited to, investigative fees, filing costs, medical reports, discovery costs, photographic costs, transportation costs, and other sin1ilar expenses related to this case.

I also agree and understand that their employment is contingent upon whether future developed facts clearly indicate there is a cause of action against any defendant. In the event that such facts are not developed, I will be so advised by MARC J. BERN & PARTNERS and their representation will then terminate with no further financial obligations on my part.

I have read this agreement, and understand its contents, and acknowledge having received a copy of this agreement.


DATED THIS __＿＿＿＿    DAY OF_____, 2020


_____
SIGNATURE OF CLIENT

_____
PRINT NAME

_____
 STREET

_____
CITY                          STATE      ZIP

## ATTORNEY REPRESENTATION – CONTINGENCY AGREEMENT

Thank you for selecting BERGER MONTAGUE PC, MOTLEY RICE, LLC, and NYE, STIRLING, HALE & MILLER, LLP, who are collectively referred to in this Attorney-Client Retainer Agreement (the "Agreement") as the "Attorneys" to represent you, Judson Martin ("Client"), in connection with the alleged claims to be asserted on behalf of ███████ against Boy Scouts of America and any related entities (collectively "Defendants"), related to the abuse suffered while a member of ███████. Below, we have prepared an agreement ("Agreement") outlining the terms of our representation. As I explained to you, our firms will undertake your representation on a contingent basis with respect to both fees and expenses. You will not be responsible for any attorneys' fees or expenses that we incur in connection with this matter. We will advance the costs of suit and will receive neither attorneys' fees nor reimbursement of expenses if the litigation is unsuccessful. If successful, we will receive our fees and expense reimbursement as awarded by the Court or from any settlement funds, as set forth in more detail below.

In representing you, we may choose to associate with additional law firms. Associating firms as additional counsel of record can increase the legal resources available to prosecute the claims and contest what we expect to be a vigorous defense. Because the California Rules of Ethics require fee agreements be in writing and advise the Client of any fee split between the attorneys, we will provide an updated agreement if we associate additional law firms. If this letter accurately summarizes our agreement, please sign below and return it to me. When fully executed, this agreement will supersede and become the operative retention agreement for this case moving forward.

## 1.    CONDITIONS

This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until: (a) Client returns a signed copy of this Agreement to Attorney; and (b) Attorney acknowledges acceptance of representation by counter-signing this Agreement and returning a fully executed copy to Client.

## 2.    SCOPE OF SERVICES AND ATTORNEY'S DUTIES

Client hires Attorneys to provide legal services in connection with the claims of childhood sexual abuse to be asserted on behalf of Client against Defendants.

The Attorneys will analyze and investigate Client's claims against Defendants. Following analysis and investigation, the Attorneys will prepare and file a lawsuit and will devote their fullest professional ability to this matter for a fee which will depend upon the outcome of the litigation.

Attorneys will provide those legal services reasonably required to represent Client. Attorneys will take reasonable steps to keep Client informed of progress and to respond to Client's inquiries. Attorneys will represent Client through trial and post-trial motions. This Agreement does not cover representation on appeal or in bankruptcy or collection

proceedings after judgment or proceedings regarding renewal of a judgment. A separate written agreement for these services or services in any other matter not described above will be required.

Attorneys are representing Client only in the matter described above.

## 3.    LITIGATION TACTICS

Client understands that the Attorneys reserve the right to determine all litigation tactics on behalf of Client, including bringing in additional law firms to work with the Attorneys on the case. In the event that Client and the Attorneys should disagree with respect to litigation tactics or should disagree over advice given to Client with respect to settlement of the Client's individual claims, the Attorneys shall have the right to withdraw as counsel with respect to Client.

## 4.    CLIENT'S DUTIES

Client agrees to be truthful with Attorney and not withhold information. Further Client agrees to cooperate, to keep Attorney informed of any information or developments which may come to Client's attention, to abide by this Agreement, to pay Attorney's bills on time, and to keep Attorney advised of Client's address, telephone number and whereabouts. Client will assist Attorney by timely providing necessary information and documents. Client agrees to appear at all legal proceedings when Attorney deems it necessary, and generally to cooperate fully with Attorney in all matters related to the preparation and presentation of Client's claims. Client grants attorneys the right to sign, as Client's attorney in fact, any instrument, release or other document necessary to obtain a settlement that Client has approved or any money being paid in satisfaction of a judgment.

## 5.    LEGAL FEES AND COSTS

A.    The Attorneys will advance all costs of the action. In addition to our fees, we are to be paid and reimbursed for various in-house (internal) services, and expenses specifically related to your case. These include, but are not limited to, the following: paralegal time, photocopy and other reproduction costs, facsimiles, secretarial overtime, extraordinary administrative, technical or accounting support, computer legal research, long distance telephone charges, messenger and other delivery fees, postage, mileage, the cost of licensing and installation of special computer programming to manage your case and similar costs and expenses. If there is a settlement or judgment in your favor from which some or all of the internal costs and expenses we incur in your representation may be paid, those internal costs and expenses will be billed to and be payable by you solely out of your share ████ of the recovery, at our respective costs and without mark-up for administrative charges. If we do not obtain a recovery for you we will not charge you for our costs. External expenses generally will be charged to you at the firm's actual costs without mark-up including, but are not limited to, the following costs: service of process charges, filing fees, court and deposition reporters' fees, jury fees, witness fees, notary fees, depositions, transcripts, consultants, investigators, expert witnesses, professional mediator, arbitrator and/or special master fees, travel, including parking, transportation, meals and hotels. If we advance an external expense, we will ask you to make reimbursement payment to the firm out of your share ████ of the recovery received through settlement or judgment.

B.    Pursuant to California Rule of Professional Conduct 4-210(a)(3), Attorneys will pursue the reimbursement of the aforementioned costs only from any monetary

recovery in this matter. If there is no recovery or if the recovery is insufficient to satisfy the advanced costs, Attorneys will not pursue the reimbursement of any unsatisfied portion of the advanced costs from Client.

C.      Client agrees to pay Attorneys a contingency fee of ██████████████ of any recovery, whether such recovery is by way of settlement, judgment, or otherwise. If there is no recovery, there will be no fee for legal services under this Agreement. For purposes of computing the amount of recovery, all consideration obtained (or the reasonable value thereof), including any interest or other amounts separately awarded, shall be included.

D.      If there is a recovery of attorneys' fees, Attorneys agree to accept as fees either the amount of the fee award or ████ of the overall award, whichever is greater.

E.      Division of legal fees. Client agrees that Attorneys have associated to assist in the representation of Client. Client's legal fees under this agreement will not increase by reason of this association. The breakdown of the fees between the associated attorneys shall be as follows:

NSHM shall recover ████ of all Fees recovered.

Berger Montague shall recover ████ of all Fees recovered.

Motley Rice shall recover ████ of all Fees recovered.

In no event, will any disagreement regarding fees alter the amount of fees owed to Attorneys by Client under this agreement. By signing this agreement, Client has read and understands the above and confirms his consent to the terms of the association of counsel and division of fees.

F.      Client understands that the rates set forth above are not set by law, but are negotiable between Attorney and Client.

## 6.    LIEN

Attorneys have a lien on any and all claims that are the subject of Attorneys' representation under this Agreement. Attorneys' lien will be for any sums owing to Attorneys for any unpaid costs, or attorney's fees, at the conclusion of Attorneys' services. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise. The effect of such a lien is that Attorneys may be able to compel payment of fees and costs from any such funds recovered on behalf of Client even if Attorneys have been discharged before the end of the case. In the event Attorneys withdraw from representing Client without cause, Attorneys will not be entitled to any lien for fees. The lien will exist and attach to any recovery only for costs already advanced by Attorney pursuant to Paragraph 5. Because a lien may affect Client's property rights, Client may seek the advice of an independent lawyer of Client's own choice before agreeing to such a lien. By initialing this paragraph, Client represents and agrees that Client has had a reasonable opportunity to consult such an independent lawyer and – whether or not Client has chosen to consult such an independent lawyer – Client agrees that Attorneys will have a lien as specified above.

_____ (Client initials here)          _____ (Attorney's initials here)

## 7.    PROFESSIONAL LIABILITY INSURANCE DISCLOSURE

Attorneys represent to Client that the Attorneys currently have in effect and will maintain in effect during the term of this contract professional errors and omissions insurance coverage.

## 8.    NO TAX ADVICE

Attorneys have not been retained to provide Client with any tax advice concerning any of the services described in paragraph 2. Any documents prepared by Attorneys may have specific tax ramifications. To be sure Client understands and is certain of all the potential tax consequences, Client should consult with tax advisors regarding these matters.

## 9.    DISCHARGE AND WITHDRAWAL

Client may discharge Attorneys at any time. Attorneys may withdraw with Client's consent or for good cause or if permitted under the Rules of Professional Conduct of the State Bar of California and/or applicable law. Among the circumstances under which Attorneys may withdraw are: (a) with the consent of Client; and/or (b) Client's conduct renders it unreasonably difficult for the Attorneys to carry out the employment effectively.

If we are discharged by you prior to final resolution of the Claims by a settlement or judgment, or if we withdraw for justifiable cause, we are entitled to be compensated for our time spent in the prosecution of your Claims at our usual hourly rates as well as payment for all fees and costs outstanding. The hourly rate for all attorneys who work on this file will be ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. This rate may change from time to time. In the event Attorneys voluntarily withdraw from representing Client without cause, Attorneys waive, and will not be entitled to be paid, any fees by Client.

## 10.    CONCLUSION OF SERVICES

When Attorneys' services conclude, whether by completing the services covered by this Agreement, or by discharge or withdrawal, Client may have access to Client's case file at Attorneys' office at any reasonable time. At the end of the engagement, Client may request the return of Client's case file. If Client has not requested the return of Client's file, and to the extent Attorneys have not otherwise delivered it or disposed of it consistent with Client's directions, Attorneys will retain the case file for a period of 5 years, after which Attorneys are authorized by this agreement to have the case file destroyed. If Client would like Attorneys to maintain Client's case file for more than 5 years after the conclusion of Attorneys' services for Client on a given matter, a separate written agreement must be

made between Attorneys and Client, which may provide for Client to bear the cost of maintaining the file. In the event Client requests that Attorneys transfer possession of Client's case file to Client or a third party, Attorneys are authorized to retain copies of the case file at Attorneys' expense. The case file includes Client's papers and property as defined in Rule 3-700(D)(1) of the California Rules of Professional Conduct.

## 11.    DISCLAIMER OF GUARANTEE

Client understands and hereby acknowledges that any recovery is contingent on establishing the legal liability of other parties and that no particular result or amount of compensation can or is guaranteed, implied or promised. Client further understands that the collectability of any award or judgment is contingent on the existence of funds and assets or insurance sufficient to satisfy such award or judgment.

## 12.    ARBITRATION

### A. ARBITRATION OF ALL DISPUTES INCLUDING CLAIMS OF MALPRACTICE

Any dispute between Attorneys and Client arising under this Agreement or in connection with Attorneys' services hereunder, including without limitation any claim for breach of contract, professional negligence, misrepresentation, fraud, breach of fiduciary duty and disputes regarding attorney fees and/or costs charged under this Agreement (except as provided in Paragraph A below) shall be resolved by binding arbitration in accordance with the rules of California Code of Procedure section 1280, et seq. The arbitrator shall be empowered to order the losing party in the arbitration to reimburse the prevailing party for all expenses incurred in connection with the arbitration, including but not limited to the arbitrator's fees and reasonable attorneys' fees and costs.

**With respect to any arbitration, Attorneys have explained to Client that:**

- **the parties are waiving their right to a jury trial and to seek remedies available in court proceedings;**

- **pre-arbitration discovery is generally more limited and different from court proceedings;**

- **the arbitrator's award is required to include factual findings or legal reasoning; and**

- **any party's right to appeal or seek modification of the award is strictly limited and the award is final and binding on the parties,**

**unless it is determined the award is not in accordance with Code
of Civil Procedure section 1280, et seq.**

Client and Attorneys confirm that they have read and understand the paragraphs set
forth above, and voluntarily agree to binding arbitration. Client may consult with an
independent lawyer of Client's choice to review these arbitration provisions, and this entire
agreement, prior to signing this Agreement.

B.  MANDATORY FEE ARBITRATION

Notwithstanding paragraph A, the parties acknowledged that in any dispute over
attorney's fees, costs or both subject to the jurisdiction of the State of California over
Attorneys' fees, charges, costs or expenses, Client has the right to elect arbitration pursuant
to procedures set forth in California Business and Professions Code Sections 6200-6206
(the Mandatory Fee Arbitration Act). If after receiving Notice of Client's Right to Fee
Arbitration, Client does not elect to proceed under the Mandatory Fee Arbitration Act
procedures by failing to file a request for fee arbitration within 30 days, any dispute over
fees, charges, costs or expenses, will be resolved by binding arbitration as provided in the
previous paragraph A. Arbitration pursuant to the Mandatory Fee Arbitration Act is non-
binding unless the parties agree in writing, after the dispute has arisen, to be bound by the
arbitration award. The Mandatory Fee Arbitration Act procedures permit a court trail after
non-binding arbitration, or subsequent binding contractual arbitration if the parties have
agreed to binding arbitration, if either party rejected the award within 30 days after the
award is mailed to the parties.

## 13.    MEDIATION

Attorneys and Client agree to try and settle all disputes between them informally or
through private mediation before initiating any arbitration, litigation or other dispute
resolution procedure. Any party to this Agreement may initiate mediation through service
of a written demand on the opposing party by U.S. mail. The mediation session will occur
at a time and location mutually agreed upon by the parties, though no later than two months
after the date of service of the initial notice, unless otherwise agreed by the parties and the
mediator. Each party shall bear its own fees and costs for the mediation.

## 14.    COPY RECEIVED BY CLIENT

Client acknowledges receipt of a copy of this Agreement concurrently with Client's
execution of the Agreement.

## 15.    ENTIRE AGREEMENT

This Agreement contains the entire agreement of the parties.  No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

## 16.    SEVERABILITY IN EVENT OF PARTIAL INVALIDITY

If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

## 17.    MODIFICATION BY SUBSEQUENT AGREEMENT

This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing signed by both of them.

## 18.    CALIFORNIA LAW

California law shall govern the interpretation of this agreement.

## 19.    SOCIAL MEDIA/FACEBOOK/TWITTER/EMAIL/ DOCUMENT PROTECTION ETC.

We have informed you that during the pendency of this case, we recommend you limit your posts to or shut down any social media accounts.  You should not post any photo of yourself anywhere during the pendency of the case. We have also informed you that you must not delete or destroy any documents you have in your possession or delete any email, documents or any postings you have on any social media account.

## 20.    EFFECTIVE DATE

This Agreement will govern all legal services performed by Attorneys on behalf of Client commencing with the date Attorneys first performed services. The date at the beginning of this Agreement is for reference only. Even if this Agreement does not take effect, Client will be obligated to pay Attorneys the reasonable value of any services Attorney may have performed for Client.

**THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES.  IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT.**

If this letter Agreement meets with your approval, please sign the enclosed copy of this letter and return your signature page to us via email or mail.

If at any time you have questions concerning our representation, billings, costs or expenses, or any other matters, please do not hesitate to call me to discuss these matters. It is of paramount concern to us that you, as our Client, be satisfied with our services. We look forward to working with you on this matter.

AGREED TO AND ACCEPTED

Date: _____     By: _____

Address: _____

_____

Telephone: _____

Email: _____

[Attorney signature blocks on following page.]

_____    Date: _____

Shanon J. Carson
Berger Montague PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-4656
Email: scarson@bm.net

_____    Date: _____

Daniel Lapinski
Motley Rice, LLC
210 Lake Dr. East, Suite 101
Cherry Hill, NJ  08002
Telephone: (856) 667-0500
Email: dlapinski@motleyrice.com

_____    Date: _____

Timothy C. Hale
Nye, Stirling, Hale & Miller, LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Telephone: (805) 963-2345
Email: timothy@nshmlaw.com

**THIS CONTRACT IS SUBJECT TO ARBITRATION UNDER THE FEDERAL ARBITRATION ACT AND THE NEW YORK GENERAL ARBITRATION STATUTE**

# BSSA RETAINER AGREEMENT

**TO:   NS PR LAW SERVICES LLC**
         **d/b/a NAPOLI SHKOLNIK PLLC**

I, _____, the undersigned (client) retains NS PR LAW SERVICES LLC d/b/a NAPOLI SHKOLNIK PLLC, (law firm) as my attorneys to prosecute a claim for negligence against any and all parties individuals and/or corporations that are found to be liable under the law for damages suffered by me arising from sexual abuse during my time with the Boy Scouts of America. I specifically agree as follows:

1.     **INVESTIGATION**:   The law firm undertakes to represent the client, "subject to investigation" and will not commence suit and/or initiate a claim until after the law firm has had an opportunity to obtain and review the relevant records, including but not limited to medical/hospital records.

**2.     FEE PERCENTAGE:** Although I have been advised of the right to retain the law firm under an agreement whereby the firm would be compensated on the basis of the reasonable value of services rendered or on an hourly rate, I and the law firm agree that the law firm shall be paid a legal fee of ███████ █████████████████████ of the sum recovered, whether by suit, settlement or otherwise**. Under such agreement the client shall not be obligated to pay the law firm a legal fee if there is no recovery.**

I have been given the following options with respect to how such percentage shall be computed, and have made the selection of how the percentage shall be computed as reflected by the initialing of the line below:

_____(initials) Option Number One: The Client remains Liable for Repayment of All Disbursements, Costs and Expenses, Regardless of the Outcome of this Matter. The percentage of the recovery due the law firm as a legal fee shall be computed on the net sum recovered after deducting from the amount recovered expenses and disbursements for expert medical testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action.

_____ (initials) Option Number Two: The law firm Agrees to Pay and Remain Liable for **All Reasonable** (at the law firm's discretion) Disbursements, Costs and Expenses, Regardless of the Outcome of this Matter. The percentage of the recovery due the law firm as a legal fee shall be computed on the gross sum recovered before deducting costs, expenses and disbursements. **The law firm agrees to pay all reasonable disbursements, costs and expenses of the action and the client will not remain responsible for any costs, expenses or disbursements in the event the claim or action is dismissed or otherwise rejected by any court of competent jurisdiction.**

The following reflects the financial consequences of each of the above two Options, using as an example a case in which there is a recovery of $100,000 -and this number is used only as an example that is easy to understand - and the expenses, costs and disbursements in the case are $10,000:

Option Number One Example (The Client Remains Liable for Repayment of All Disbursements Costs and Expenses, Regardless of the Outcome of This Matter):

| | |
|---|---|
| Total recovery | $100,000.00 |
| Less expenses and disbursements | - $10,000.00 |
| Less ████████ remaining $90,000.00 | - ████████ |
| Client Recovery: | |

Option Number Two Example (The Law Firm Agrees to Pay and Remain Liable for All Reasonable Disbursements Costs and Expenses, Regardless of the Outcome of This Matter):

| | |
|---|---|
| Total recovery: | $100,000.00 |
| Less ███████ of $100,000.00 ████████ | |
| Less expenses and disbursements: | - $10,000.00 |
| Client Recovery | ████████ |

The Client understands and agrees that, if the Client has selected Option Number One, the law firm reserves the right, in its sole discretion, to elect to make payment in the first instance of some or all costs, expenses and disbursements, so as not to hinder the enforcement of the claim or prosecution of the action. If the law firm has advanced these payments, the Client understands that he or she remains fully responsible to reimburse the law firm for such costs, expenses and disbursements. *If the law firm elects not to make payment under Option Number One, of some or all costs, expenses and disbursements, the Client will advance and prepay to the law firm all such costs, expenses and disbursements as they are incurred or anticipated for the enforcement of the claim and the prosecution of the action. The law firm may, in its discretion, require the Client to deposit with the law firm a specified amount of money, as the law firm deems appropriate, in order for such costs, expenses and disbursements to be paid. Should the Client not comply with his or her financial obligations under Option Number One, the Client understands and agrees that such failure to comply shall constitute good cause for the law firm to withdraw in accordance with this agreement and the applicable rules of professional conduct.*

3.    **EXPENSES AND DISBURSEMENTS**: Examples of costs, expenses and disbursements: for expert medical and other testimony and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action include, but are not limited to, charges for: retaining investigators; storage fees relating to the preservation of evidence; document management charges. (document management charges are the fees charged by the law firm for processing documents during litigation, such as medical records, documents produced by defendant(s) and/or other parties, etc. Processing of the documents may include but is not limited to the following: (1) scanning; (2) conversion of native files to PDF documents; (3) OCR (optical code recognition); and/or (4) indexing). fees obtaining medical records; retaining expert witnesses and consultants, including locating and preparing expert witnesses and consultants, obtaining reports and testimony, and related transportation, parking, mileage, meals and hotel costs; court filing fees; service of process fees; subpoena fees; costs associated with taking depositions, including stenographer's fees; videographer's fees and video teleconferencing costs; , long distance telephone charges, court reporter fees; notary fees; mediator, arbitrator and/or special master fees; specialized medical and legal research fees; computerized research fees; expenses for focus groups and jury consultants; interest incurred pursuant to paragraph eleven hereof, photography; preparation of exhibits; photocopying and other reproduction costs; and expenses of non-expert witnesses; postage and delivery fees; travel costs, including parking, mileage, transportation, meals and hotel costs; long distance telephone and fax charges; and all other necessary and incidental expenses and disbursements incurred on the Client's behalf. This list is not exclusive.

In the event that the law firm has been retained by others having the same claim or a similar case, disbursements regarding the liability and/or damages of the defendants shall be shared proportionately by all such plaintiffs.  It is contemplated that this may be accomplished by participating with other firms nationally in a pooling of research and information for which a case by case membership fee will be necessary.  As such, this will be deemed Disbursements, which shall also be deducted from the recovery.

In computing the fee, the costs as taxed, including interest upon a judgment, shall be deemed part of the amount recovered. For the following or similar items there shall be no deduction in computing such percentages: Liens, assignments or claims in favor of hospitals, for medical care and treatment by/of doctors and nurses, or of self-insurers or insurance carriers.

The Client understands and agrees that, without regard to whether the Client has selected Option Number One or Option Number Two, under no circumstances will the law firm be responsible for the payment of any judgment that may be entered against the Client arising out of either the incident or the prosecution of the action, including any bill of costs.

4**.**        **STRUCTURED SETTLEMENTS**:    Should this matter be concluded on the basis of a "structured settlement"(that is with payment to be made over a period of time), The law firm's entire fee plus all disbursements , costs and expenses shall be deducted from the initial cash payment.

**5.**        **MEDICAL BILLS:**  All medical bills incurred which are not paid by client's medical insurance and are due and owing shall be chargeable to the client's portion of the settlement.  There may be additional deductions representing outstanding medical bills, liens to doctors for unpaid medical services rendered, or medical services not covered by medical insurance.  The recovery of these medical services are included in the gross settlement and shall be paid from the net settlement.  Unpaid medical providers often will wait for payment until the conclusion of the case, however, in consideration for such abeyance, they will request a lien upon the settlement proceeds.  The client expressly authorizes the firm to sign such lien forms, which may be requested by physicians, and to directly pay outstanding medical bills for treatment to such physicians or other health care providers at the conclusion of the case.  This authorization shall include medical and hospital expenses, and subrogation claims. The client understands that medical providers do not provide medical services contingent upon the outcome of a case, and that in the event that there is no recovery, or an insufficient recovery, the client will remain responsible for the payment of such medical bills.

 **Medicare, Medicaid, and Private Insurance Carriers are entitled to reimbursement of their payments made on the behalf of the client all such payments are the responsibility of the client and not the law firm.**

6**.**        **WITHDRAWAL:** The law firm expressly reserves the right to withdraw its representation at any time upon reasonable notification to the client. Notwithstanding anything to the contrary contained herein:

a.        In the event that the client advises the law firm to discontinue the handling of this claim, or if the client fails to cooperate with the law firm in the handling of this claim, client agrees reimburse the law firm or all costs, expenses and disbursements incurred by the law firm in the prosecution of the claim and to compensate the law firm a reasonable amount for its services and for the time spent on this claim on an hourly basis or under such other arrangement that may be agreed upon by the parties.

b.        In the event that the client desires to transfer the file from the law firm, or otherwise terminate the representation of the client by the law firm, the client shall be responsible to compensate the law firm for the reasonable value of their services and reimburse the law firm for all costs, expenses and disbursements. Such transfer shall not include documents or attorney work product regarding the general liability of the defendants.

**7.**        **APPEALS:**   The above contingency fee does not contemplate any appeal.  The law firm is under no duty to perfect or prosecute such appeal until a satisfactory fee arrangement is made in writing regarding costs and counsel fees.

**8.** <u>**PROBATE, TRUST AND ESTATES:**</u> It is further understood and agreed by the Client that this retainer agreement does not include, nor will the law firm represent the Client in, trust and estate work and/or Surrogate Court work. For example, matters which are not included in this retainer agreement, and for which the Client would have to retain separate counsel, would include: a) any work that would have to be performed if the appointment of an Executor/Administrator or Guardian is required and/or if trust or guardianship proceedings must be initiated and/or Surrogate Court proceedings are required, in order to proceed with the underlying claim and/or lawsuit; and b) any work that would have to be performed in connection with proceedings which might need to be initiated in any court to withdraw funds deposited pursuant to an Infant Compromise Order or similar order or court directive. If such work is required, the Client understands and agrees that the Client would have to retain separate counsel to perform such work.

**9.** <u>**NO FAULT, DISIBILITY AND OTHER MATTERS**</u>  It is further understood and agreed by the Client that this retainer agreement neither includes nor will the law firm represent the Client for: no fault, Federal and/or State disability benefits, arbitration/litigation of no fault benefits, Worker's Compensation benefits, litigation involving liens or rights of subrogation, appeals of any kind, supplemental proceeding to collect on or enforce any judgment or award or to assist in settlement advance funding arrangements of any kind, unless a separate agreement in writing is entered into between the Client and the law firm. All liens of any kind shall be payable solely out of the Client's share of the recovery and there shall be no deduction for said items in computing the legal fee due the law firm.

**10.** <u>**STATUTE OF LIMITATIONS:**</u> I understand that the Statute of Limitations period for my case must be investigated and that this Retainer Agreement is made subject to that investigation as well as an investigation of my entire case pursuant to paragraph 1. I understand that the law firm has accepted this case conditionally depending upon independent confirmation of all facts relative to liability and the injuries claimed to have been sustained by the client.

**11.** <u>**FINANCING OF CASE**</u>: If the law firm borrows money from any lending institution to finance the cost of the client's case, the amounts advanced by this firm to pay the cost of prosecuting or defending a claim or action or otherwise protecting or promoting the client's interest will bear interest at the highest lawful rate allowed by applicable law.  In no event will the interest be greater than the amount paid by the firm to the lending institution.

**12.** <u>**RESULTS NOT GUARANTEED:**</u> No attorney, nor any employee of this law firm can accurately predict the outcome of any legal matter; accordingly, no representations are made, either expressly or impliedly, as to the final outcome of this matter.  I further understand that I must immediately report any changes in my residence, telephone number or health to the law firm.  **I understand that this Retainer Agreement is a binding legal contract.  I expressly agree that I will fully and freely cooperate with my attorneys in all aspects required for the prosecution of this legal matter and that I will take no actions that frustrate or impair the success of this action. _____(initials)**

**13.** <u>**APPROVAL NECESSARY FOR SETTLEMENT:**</u> The law firm and it's Attorneys are hereby granted a power of attorney so that they may have full authority to prepare, sign and file all legal instruments, pleadings, drafts, authorizations, and papers as shall be reasonably necessary to conclude this representation, including settlement and/or reducing to possession any and all monies or other things of value due to the Client under the claim as fully as the Client could do so in person. The law firm and its Attorneys are also authorized and empowered to act as Client's negotiator in any and all negotiations concerning the subject of this Agreement.

**14.** <u>**ASSOCIATION OF OTHER ATTORNEYS:**</u> The law firm or its Attorneys may, at their own expense, use or associate other attorneys in the representation of the aforesaid claims of the Client.  Client understands that ***the law firm*** is a limited liability partnership under the laws of New York with a number of attorneys.  Various firm attorneys may work on Client's case.

**15**.        <u>**ASSOCIATE COUNSEL:**</u> The law firm or its Attorneys may participate in the division of fees in this case and assume joint responsibility for the representation of the client either in the event that the law firm or its Attorneys retains associate counsel or that the client later chooses new counsel, provided that the total fee to the client does not increase as a result of the division of fees and that the attorneys involved have agreed to the division of fees and assumption of joint responsibility.

**16**.        <u>**NEW YORK LAW TO APPLY:**</u> This Agreement shall be considered construed under and in accordance with the laws of the State of New York and the rights, duties and obligations of Client and of the law firm regarding the law firm's representation of Client and regarding anything covered by this Agreement shall be governed by the laws of the State of New York.

**17**.        <u>**CONSENT TO ARBITRATION AND WAIVER OF CLASS ACTION :**</u> Any and all disputes, controversies, claims or demands arising out of or relating to (1) this Agreement or (2) any provision hereof or (3) the providing of services by the law firm or any of its attorneys to Client or (4) the relationship between the law firm and Client, whether in contract, tort or otherwise, at law or in equity, for damages or any other relief, shall be resolved by binding arbitration pursuant to the Federal Arbitration Act in accordance with the Commercial Arbitration Rules then in effect with the American Arbitration Association. Client shall not file a class action against the law firm or any of its attorneys or seek to assert any claims or demands against the law firm or any of its attorneys by or through a class action, either as the named plaintiff or as a member of the class, but rather shall submit his/her claims or demands to binding arbitration pursuant to the provisions of this Paragraph (17). Any such arbitration proceeding shall be conducted in Nassau County, New York before a single arbitrator appointed by American Arbitration Association pursuant to the Rules for Commercial Arbitration, except the Arbitrator shall be selected from the list of personal injury arbitrators. This arbitration provision shall be enforceable in either federal or state court in Nassau County, New York pursuant to the substantive federal laws established by the Federal Arbitration Act. Any party to any award rendered in such arbitration proceeding may seek a judgment upon the award and that judgment may be entered by any Supreme Court in Nassau County, New York having jurisdiction.

**18**.        <u>**PARTIES BOUND:**</u> This Agreement shall be binding upon and inure to the benefit of the parties, hereto, and their respective heirs, executors, administrators, legal representative, successors, guardians and assigns.

**19**.        <u>**LEGAL CONSTRUCTION:**</u> In case any one or more of the provisions contained in this Agreement shall for any reason be held invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provisions thereof and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein. This agreement may be signed in counterparts.

**20**.        <u>**PRIOR AGREEMENTS SUPERSEDED:**</u> This Agreement constitutes the sole and only Agreement between the client and the law firm and supersedes any prior understandings or written or oral agreement between the parties respecting the within subject matter. It is further agreed that any oral changes or modifications of the above contract are null and void unless subscribed to in writing and executed by the law firm.

I certify and acknowledge that I have received a copy of this Retainer Agreement, have had the opportunity to read this Retainer Agreement and have had answered any questions pertaining thereto. I further state that I have voluntarily entered into this Agreement fully aware of its terms and conditions. I understand and agree to be bound by the terms and conditions contained herein

## THIS CONTRACT IS SUBJECT TO ARBITRATION
## UNDER THE FEDERAL ARBITRATION ACT AND
## THE NEW YORK GENERAL ARBITRATION STATUTE

NS PR LAW SERVICES LLC
*d/b/a* NAPOLI SHKOLNIK, PLLC

**Print Client's Name:** _____

By:_____

**Client's Signature:**_____

_____
**Printed Name of Attorney**

**Address:**_____

_____

_____

**Phone:** _(_____)_____



# POWER OF ATTORNEY AND EMPLOYMENT AGREEMENT: BOY SCOUTS OF AMERICA ABUSE LITIGATION

This Agreement between _____ (the "Client"), _____, Reich & Binstock, LLP ("RB"), and Shapiro Legal Group, PLLC ("Shapiro") (collectively, the "Attorneys"), is for the legal representation in prosecuting Client's cause(s) of action for damages and personal injuries against the Boy Scouts of America.

Client hereby retains and employs Attorneys to represent Client only in connection with the February 18, 2020 bankruptcy filing or related global resolution of sex abuse claims against the Boy Scouts of America. Client understands that this contract for legal services is for representation for client's claims against the Boy Scouts of America only. It does not extend to any probate, tax advice, criminal defense, divorce or other kind of legal service or proceeding.

Client requests a contingency fee contract rather than an hourly fee and grants Attorneys a lien to assure payment of percentage fee and costs from any recovery. Client conveys to the Attorneys the present undivided interest in the above claim the amount of ██████████ of the gross amount of the total sum collected. **If the Attorneys are not successful, the client will not owe any attorney fees or case expenses to the Attorneys.**

Attorneys will advance all of the court costs and other expenses, including common costs that are reasonably necessary for the investigation, preparation, and/or settlement of this matter. All such costs and expenses, including common costs, advanced or incurred by the Attorneys shall be deducted from any settlement out of the Client's portion of recovery. The Attorneys' contingent fee shall be computed on the total recovery without deduction for court costs, expenses, common costs, or disbursements.

The terms "costs and other expenses" include, without limitation: filing fees, court costs, expert witness fees for evaluation, expert reports, postage, long distance telephone calls, fax transmissions or receptions, messengers, court reporter fees, record service fees, photocopying, service of citations, medical records, subpoenas, and all other reasonable and necessary costs and expenses which the Attorneys in their professional judgment, determine to be reasonably needed to the prosecution and/or settlement of the Claims of the Client.

**The Client expressly understands that, in the event that no recovery is obtained on the Client's claim, the Attorneys will make no charges for his or her time, services, fees, costs, or other expense which may have been advanced.**

No settlement shall be made without Client's approval and permission. Client grants Attorneys the power of attorney to execute all documents connected with the claim for the prosecution of which the attorney is retained, including pleadings, contracts, checks or drafts, settlement agreements, compromises, releases, verifications, dismissals, and orders, as well as all other documents which the Client could properly execute.

The Client acknowledges and agrees that each of the Attorneys will assume joint responsibility for the representation and prosecution of the Client's claim(s). It is understood and expressly agreed to by the Client that, at the conclusion of the case, if a recovery is made on the Client's behalf, Attorneys' fee will be shared by each of the Attorneys as follows: RB will receive ████ and Shapiro will receive ████

The Client shall keep the Attorneys advised of his/her current address and telephone numbers at all times, shall appear on reasonable notice at any and all depositions and court appearances, and shall comply with all reasonable requests from the Attorneys in connection with the preparation of the Client's claim and causes of action.

Repayment to third parties that paid the Client's medical expenses may be required by contract or statute. Such payment obligations shall be the Client's responsibility and shall be paid out of the Client's settlement proceeds. By the Client's signatures on this employment contract, Client grants the Firm(s) a lien and security interest in Client's case or claim to secure payment of all sums due under this contract for legal services rendered and cost advanced, if any.

The Attorneys may, at their option, withdraw from the case and cease to represent the Client for any reason. If the Attorneys exercise this right, they shall notify the Client in writing and forward said notice to the Client's last known address. In the event the Attorneys exercise their right to close the case, the Client will not owe the Attorneys any attorney fees or expenses.

Arbitration proceedings are private, while trials are public; arbitration has unique methods of choosing the persons who will serve as the arbitrators; and arbitration may be more expensive than judicial proceedings in that the parties must pay higher costs.

Client agrees that any dispute whatsoever out of this agreement, including disputes regarding fees or the proper and reasonable rendition of legal services, will be resolved by arbitration, to take place in Harris County, and governed by Texas law. Such arbitration will take place before three arbitrators. Client will choose one, Attorneys will choose one, and the arbitrators chosen by Client and Attorneys will mutually choose the third arbitrator. Any court action to compel arbitration or enforce any arbitration award relating to this agreement must be initiated in Harris County, Client agrees that the arbitrator will apply Texas law to any dispute relating to this agreement. Client specifically has read, understands, and agrees to the terms laid out in this Paragraph.

A statute of limitations is a deadline that is established by law or contract that determines the deadline by which a person with a legal claim must file a lawsuit to preserve their claim. Attorneys cannot determine Client's statute of limitations deadline and the proper parties against whom Client's potential claims could be made without investigating Client's claims and statute of limitations. Therefore, Client agrees Attorneys' scope of representation is limited to the extent that Attorneys' obligation to file a lawsuit on behalf of the Client shall arise only after Attorneys have had a reasonable opportunity to investigate Client's claims and statute of limitations. If, after completing their

investigation, Attorneys determine Client's statute of limitations <u>has not passed</u>, Attorneys shall file a lawsuit for Client's claims within a reasonable time after such determination is made.   Client understands the Courts may disagree with Attorney's determination of Client's statute of limitations deadline.  If, after completing their investigation, Attorney's determine Client's statute of limitations <u>has passed</u>, then Attorney's may withdraw from representing Client and Client shall not be obligated to pay any fees or expenses or costs to the Attorneys.   Client understands that the statute of limitations to file Client's lawsuit may have already passed prior to hiring Attorneys or could pass soon after Client hires Attorneys, or while Attorneys' investigation is ongoing.  Client understands another law firm might be willing to represent Client without the limitations on Attorneys' representation contained in this section.

This agreement represents the final and mutual understanding of the parties. It replaces and supersedes  any prior agreements or understandings, whether  written  or  oral. This agreement may not  be modified, amended,  or replaced except by another signed written agreement.

The Client acknowledges that he or she has read this Agreement in its entirety, which is three (3) letter size pages in length, that he or she fully understands the terms and conditions of same, and that he or she agrees to abide by its terms.

EXECUTED on the  _____ day of _____, 20 ___.

Client Signature: _____

Client Printed Name: _____

Client Telephone Number: _____

Client Address: _____

REICH & BINSTOCK, LLP: _____

# <u>RETAINER AGREEMENT</u>

**TO:    Slater Slater Schulman LLP**
**445 Broad Hollow Road, Suite 419**
**Melville, NY 11747**

    The Client, _____, residing at_____, engages **Slater Slater Schulman LLP** (the "Firm") to prosecute, negotiate, and/or adjust claim for damages relating to the sexual misconduct, abuse, assault, and/or exploitation committed by <u>Boy Scouts of America</u> persons or entities, employees, affiliates, partners or other related parties. Specifically, the Firms agree to prosecute, negotiate and/or adjust claims pertaining to sexual misconduct, abuse, assault, and/or exploitation claims under Federal or State law. Specifically, the Firm agrees to prosecute, negotiate and/or adjust claims pertaining to: <u>sexual misconduct, abuse, assault, and/or exploitation claims under Federal or State law.</u> Should other claims arise through the course of representation, the Firm may, or may not, agree to represent the Client for those claims. If the Firm agrees to negotiate, adjust and/or prosecute other claims, such agreement shall first be memorialized in a separate written agreement.

    The Client hereby gives said attorneys the exclusive right to take all legal steps to enforce said claims and to reject the same after reviewing and investigating the merits if a determination is made in the attorneys' sole and professional judgment that an action is not maintainable. The Client hereby further agrees not to settle this action in any manner without the attorneys' written consent. In consideration of the services rendered and to be rendered by said attorneys, the Client hereby agrees to pay said attorneys out of any verdict or settlement, and that said attorneys are authorized to endorse for the Client any checks that may be paid by reason of the above claim or action, and to retain the fees out of any moneys received by reason of the above claim or action:

    **Either: (a)** ██████████████████████████ **of the total sum recovered, whether recovered by verdict, settlement or otherwise, (Contingency Fee); or (b) any Court award or settlement amount in which attorneys' fees are enumerated and recovered, and which is greater than the contingency fee (Fee Award).**

    Such percentage shall be computed <u>by one of the following two methods to be selected by Client:</u>
Select one by placing initials:

[  ]    [Option 1]:    ***Firm pays costs and expenses*** of the action. ***Firm risks not being reimbursed if there is no recovery***. Attorneys' fees shall be computed on the gross sum recovered before deducting expenses and disbursements; or

[  ]    [Option 2]:    ***Client pays costs and expenses*** of the action as they are billed. **Client risks not being reimbursed if there is no recovery.** Upon recovery, client is reimbursed first and attorneys' fees shall be

computed on the net sum recovered after deducting from the amount recovered expenses and disbursements, including expert fees and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action.

Financial Consequences of selecting Option 1 or Option 2 are demonstrated on Page 3.

Such Contingency Fee percentage shall be computed on the gross sum recovered. In computing the attorneys' fee, the costs as taxed, including interest upon a judgment, shall be deemed part of the amount recovered. Expenses and disbursements may be advanced by the attorneys but are the client's responsibility and payable <u>at the conclusion of the case</u>, and may include, but are not limited to, court filing fees, process server charges, charges for records, court reporter charges, expert witness fees (if applicable), investigative and other services properly chargeable to the enforcement of the claim(s) or prosecution of the action.

**In the event there is no recovery, there shall be no attorneys' fees payable.**

Nothing contained in this Retainer shall be applicable to the fixing of attorneys' fees for services rendered in connection with appeals. Client acknowledges that this Retainer does not include appeals and that our law firm reserves the right to negotiate new terms for the payment of costs, disbursements and attorneys' fees in connection with prosecuting or defending any appeal which may arise during the enforcement of the claim or prosecution of the action.

I understand that the Firm may borrow funds to pay for disbursements paid on my behalf and waive any requirement that the Firm advise me in advance of the fact or the specifics of any such borrowing. If the Firm borrow money from any lending institution to finance the cost of my case, the amount advanced by the firm to pay the costs of prosecuting or defending a claim or action or otherwise protecting or promoting the my interest will bear interest at the rate charged by lender, which interest rate shall not be higher than the highest lawful rate allowed by law. Any such interest amounts will be a disbursement in this matter, for which the Client agrees to reimburse the firm under this Agreement.

I understand that the statute of limitations period for my case must be investigated and that this agreement is made subject to that investigation as well as investigation of my entire case.

I understand that no attorney can accurately predict the outcome of any legal matter, accordingly, no representations are made, either expressly or impliedly, as to the final outcome of this matter. I further understand that I must immediately report any changes in my residence, telephone number, email address, and contact information to the law firm.

I understand that attorneys may, at their own expense, use or associate other attorneys in the representation of the aforesaid claims of the Client. Attorney may participate in the division of fees in this case and assume joint responsibility for the representation of the client either in the event the Attorney retains associate counsel or that the client later chooses new counsel, provided that the total fee to the client does not increase as a result of the division of fees and that the attorneys involved have agreed to the division of fees and assumption of joint responsibility.

In the event the Client fails to comply with any of the terms of this Retainer, the attorneys reserve the right to withdraw and preserve their rights to seek fees and recovery of expenses. A facsimile or electronic copy shall be deemed an original.

Client Signature: _____       Dated: _____

Phone number: _____

Email address: _____

Attorney Name:        _____

Attorney Signature:        _____

## <u>Financial consequences of selecting Option 1 or Option 2:</u>

| | <u>Gross settlement</u> | <u>Expenses</u> | <u>Attorney's Fees</u> | <u>Client's Recovery</u> |
|---|---|---|---|---|
| **Option 1:**<br><br>***Lawyer pays cost and expenses*** of the action.<br><br>***Lawyer risk not being reimbursed if there is no recovery.***<br><br>Attorneys' fees shall be computed on the gross sum recovered before deducting expenses and disbarments. | $10,000.00 | $750.00 paid by *Lawyer* | ▉▉▉▉<br><br>Calculated as follows: $10,000 gross sum ▉▉▉<br><br>*plus return of expenses paid by Lawyer* | ▉▉▉▉ |
| **Option 2:**<br><br>***Client pays cost and expenses*** of the action as they are billed.<br><br>***Client risk not being reimbursed if there is no recovery.***<br><br>Upon recovery, client is reimbursed first and attorneys' fees shall be computed on the *net* sum recovered after deducting from the amount recovered expenses and disbursements, including expert fees and investigative or other services properly chargeable to the enforcement of the claim or prosecution of the action | $10,000.00 | $750.00 *paid by the Client.* | ▉▉▉▉<br><br>Calculated as follows: $10,000 - $750.00+ net sum of 9,250 ▉▉▉ = | ▉▉▉▉ *plus return of expenses paid by Client.* |

Client Initials: _____

Client Initials: _____

**EXHIBIT A-4**

**Request for Written Acknowledgment**

**Request for Written Acknowledgment**

I acknowledge and agree that [**FIRM**] has joined, as a representative for its clients, the Coalition of Abused Scouts for Justice (the "Coalition" or the "Ad Hoc Committee"), an ad hoc committee representing the collective interests of its members (*i.e.*, Boy Scout sexual abuse victims) in the Boy Scouts Chapter 11 jointly administered bankruptcy cases pending before the United States Bankruptcy Court for the District of Delaware, Case No. 20-10343 (the "Chapter 11 Cases"). I further acknowledge and agree that the Coalition has retained experienced bankruptcy counsel, Brown Rudnick LLP ("Brown Rudnick"), and Delaware counsel, Monzack Mersky Browder and Hochman, P.A. ("MMBH"), to represent the collective interests of its members. I further acknowledge and agree that I have been provided with access to and an opportunity to review a copy of the Coalition's Confirmation of Engagement with Brown Rudnick dated July 21, 2020 and the Coalition's Engagement Agreement with MMBH dated September 13, 2020 (together, the "Engagement Letters"), and that I consent and agree to becoming a member of the Ad Hoc Committee in accordance with and subject to the terms of the Engagement Letters. I further acknowledge and agree that a portion of the fees and expenses incurred by Brown Rudnick and MMBH will be paid by [**FIRM**] and any payment of such fees and expenses by [**FIRM**] will not increase the fees and expenses owed by me under the terms and conditions of my Employment Agreement or Retainer Agreement with [**FIRM**]. I have had an opportunity to consult with my legal counsel about the terms of the Brown Rudnick and MMBH engagement and my participation as a member of the Coalition. I further acknowledge and agree that [**FIRM**] has authority to represent my interests and to direct and instruct Brown Rudnick and MMBH in connection with the activities of the Coalition and the Chapter 11 Cases, and to engage and retain on the Coalition's behalf, and at no additional cost to me, other professional advisors, including, without limitation, financial advisors and insurance counsel, to assist the Coalition in its efforts.

Executed on [          ] _____, 2020          By: _____

## EXHIBIT A-5

**Initial Communication to Members**

**New Member Template Advisement Communication**

Dear Client:

We are pleased to announce that [FIRM] has joined a coalition to better achieve compensation for survivors of Boy Scout sexual abuse.  The Coalition of Abused Scouts for Justice is an ad hoc committee representing the interests of its members (i.e. abused scouts) in the Boy Scouts Chapter 11 bankruptcy case.  The Coalition has retained experienced lead bankruptcy counsel, Brown Rudnick LLP and Delaware counsel Blank Rome LLP, and has commenced productive negotiations with the BSA and their insurance carriers to obtain compensation for its members.

We intend that each of our clients will be a member of the Coalition. Participation will not require you to perform any extra work.  If you prefer not to be a member, you may contact us at any time at [ADDRESS] to let us know. If for any reason you do not want to participate in the Coalition, you will remain in good standing as our client. Please feel free to contact us with any questions or to discuss the Coalition.

We believe that this is an effective strategy to obtain compensation from the BSA and its Local Councils and insurance carriers.

Regards,