# EXHIBIT 19

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | Jointly Administered |
|  | Re: D.I. No. 6380 |

## CENTURY'S OBJECTION TO MARC J. BERN & PARTNERS' MOTION TO QUASH SUBPOENA TO PRODUCE DOCUMENTS ISSUED TO KLS LEGAL SOLUTIONS, LLC

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware 19801

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York 10036-6537

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Boy Scouts of America (6300) and Delaware Boy Scouts, LLC (4311).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ..................................................................................................... 3

    A.    Unrebutted evidence shows that claims aggregators participated in and facilitated a nationwide campaign to generate facially questionable POCs. ................................................................................ 3

    B.    The evidence also shows that Bern partner Joseph Cappelli was among the lawyers who signed hundreds of POCs in a single day. .......... 4

    C.    KLS appears to have submitted questionable POCs with Mr. Cappelli's signature. ................................................................................ 4

    D.    The Court authorized Rule 2004 discovery of certain third-party aggregators and then permitted even broader discovery in connection with confirmation. .................................................. 5

ARGUMENT ........................................................................................................... 5

  I.    THE MOTION IS PROCEDURALLY DEFECTIVE............................................. 5

    A.    Bern has no standing to move to quash a subpoena to another party. ................................................................................................... 5

    B.    Bern's motion does not comply with the Local Rules for discovery disputes. ........................................................................................... 6

  II.    CENTURY SEEKS PLAINLY RELEVANT INFORMATION............................... 7

  III.    THE INFORMATION CENTURY SEEKS IS NOT PRIVILEGED. ....................... 8

    A.    KLS provided ministerial paralegal services that were not necessary for Bern to communicate with any clients................................ 8

    B.    Century's requests seek factual information, not analysis that could be subject to privilege. ........................................................... 11

    C.    If Bern claims privilege over any documents, then it must produce a privilege log. ................................................................................. 12

  IV.    TO THE EXTENT PRIVILEGE APPLIES, DISCLOSURE OF COMMUNICATIONS TO KLS WAIVED THE PRIVILEGE. ........................................................... 13

CONCLUSION....................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*,
 174 F.R.D. 609 (M.D. Pa. 1997) ............................................................. 11

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
 352 F. Supp. 3d 207 (E.D.N.Y. 2019) ..................................................... 14

*In re Teleglobe Commc'ns Corp.*,
 493 F.3d 345 (3d Cir. 2007), as amended (Oct. 12, 2007)............................ 3, 9, 13

*Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*,
 1999 WL 378337 (S.D.N.Y. June 10, 1999).............................................. 14

*Ravenell v. Avis Budget Grp., Inc.*,
 No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012)....................... 10, 11, 14

*United States v. Ackert*,
 169 F.3d 136 (2d Cir. 1999)................................................................ 10, 11

*United States v. Kovel*,
 296 F.2d 918 (2d Cir. 1961)................................................................ 14

*United States v. Schwimmer*,
 892 F.2d 237 (2d Cir. 1989)................................................................ 14

*Westinghouse Elec. Corp. v. Republic of Philippines*,
 951 F.2d 1414 (3d Cir. 1991)............................................................. 9, 13

**Other Authorities**

8 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2016 (West 1977).. 9

8 Wigmore, *Evidence* § 2301 (McNaughton rev. 1961)........................................ 10, 12

**Rules**

Fed. R. Bankr. P. 7026 ......................................................................... 6

Fed. R. Bankr. P. 9014 ......................................................................... 6

Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America ("Century"), respectfully submits the following objections to the Motion of Marc J. Bern & Partners ("Bern") LLC to Quash Subpoena to Produce Documents Issued to KLS Legal Solutions, LLC ("KLS").

## PRELIMINARY STATEMENT

Joseph Cappelli's signature appears on 625 POCs dated November 14, 2020.[2] Unrebutted expert analysis shows that all or nearly all of these POCs have an identical pre-printed signature page appended to them.[3]  Someone simply scanned each claim form with this signature page and then submitted the entire batch to Omni.  Amazingly, Mr. Cappelli admits that he had no client authority to file those POCs, stating that "he signed 635 of those claims when Bern & Partners did not receive an executed signature page from the client for those claims prior to the bar date."[4]  In fact, Mr. Cappelli was so removed from the POCs that he apparently did not even file them himself.  Rather, third-party vendor KLS completed and submitted the POCs on his behalf.[5]

Mr. Cappelli does not dispute that KLS filed POCs for him.  Nor does he assert that either he or anyone at Bern conducted any pre-complaint investigation.  Instead, Mr. Cappelli now claims that he amended or withdrew these defective claims—a proposition for which he offers absolutely no evidentiary support.  But what is perhaps even more disturbing is that he undertook these alleged corrections only after Century presented in its Rule 2004 motion

---

[2]   *See* D.I. 1975 at 2–3, 4–15.

[3]   January 22, 2021 Declaration of Erich Speckin ("Jan. 22, 2021 Speckin Decl.") ¶¶ 7–8, D.I. 1974-5.

[4]   *Id.* ¶ 9.

[5]   D.I. 6380 at 7.

evidence of systemic abuses—by Mr. Cappelli and other lawyers—of this Court's and the

Bankruptcy Code's safeguards against submitting unvetted POCs.[6]  Given Mr. Cappelli's

abysmal record, there is good reason to investigate other filings that KLS did for him and Bern.

      The material Century seeks is plainly relevant to investigating the claims explosion that

overwhelmed BSA post-petition.  Indeed, in permitting discovery against aggregators, this Court

made the following observation:

> I think the evidence that was submitted raises concerns about how some of these
> claims were generated and the recent declaration where Mr. Kosnoff adds to that
> concern.  So, at this time, I'm going to permit that discovery.  I think that the
> discovery could be relevant to voting and I think we need to get that underway,
> regardless of the plan that's in front of me.[7]

The plan proponents propose to allow Bern to use a master ballot to vote based on his POC

filings and then pay his POCs through TDPs that are now before the Court.  Bern's and KLS's

conduct raises questions about the validity of many POCs, not only whether they should be

deemed presumptively valid but whether they should be entitled to vote on the Proposed Fifth

Amended Plan of Reorganization.

      But Mr. Cappelli and Bern, where he states that he is the managing partner of the

Pennsylvania office, do not want any investigation into KLS's role.  So without meeting and

conferring—as this Court's Local Rules expressly require—Bern rushed into Court to quash the

KLS subpoena, arguing that ***all*** of the requested discovery is privileged.  To start, Bern has no

standing to move to quash a subpoena to another party.  Notably, KLS—the subpoenaed party—

has not requested any relief or submitted a declaration in support of the motion.

---

[6]   *See* D.I. 1975 at 2–3, 4–15.

[7]   Aug. 30, 2021 Hr'g Tr. at 46:11–20.

On the substance, Bern fails to carry *its* burden of proving that any privilege applies

(instead, wrongly claiming that Century has some burden on Bern's motion).  No privilege could

apply because (i) KLS provided ministerial paralegal services that were not necessary for Bern to

communicate with its clients, and (ii) Century seeks purely factual information.  Moreover, any

privilege would belong to the unnamed clients and not the law firm.  Importantly, no client has

offered any supporting declaration.

In any event, to the extent a privilege applies to some of the document requests, Bern

waived it.  Disclosing communications to a third party whose work is not necessary for a lawyer

to provide legal advice amounts to a waiver.  And here, Bern claims that KLS is simply a

"paralegal" service.[8]  A paralegal service is hardly essential for a lawyer to advise a client.

## BACKGROUND

### A.    Unrebutted evidence shows that claims aggregators participated in and facilitated a nationwide campaign to generate facially questionable POCs.

In its motion for Rule 2004 discovery, Century introduced unrebutted evidence showing

that claims aggregators participated in and facilitated a nationwide campaign to generate facially

questionable claims for the BSA bankruptcy.[9]  It seems that the goal was to generate numerical

superiority of POCs to deliver control of the bankruptcy to a certain constituency of claimant

lawyers.[10]  This surge in claims was fueled by hedge fund money.[11]

---

[8]    Bern Br. at ¶ 7.

[9]    For a complete description of the evidence necessitating the Rule 2004 discovery, Century respectfully refers to the Court to its prior motions (D.I. 1974, 1975).

[10]    D.I. 1285-1.

[11]    *See* D.I. 1975 at 8–9 (citing UCC filings that detail the capital invested in generating claims and collateral exchanged in return); *id.* at 12–15 (discussing the role of claims aggregators).

**B.    The evidence also shows that Bern partner Joseph Cappelli was among the lawyers who signed hundreds of POCs in a single day.**

Century proffered evidence of claimant lawyers signing hundreds of POCs in a single day, who likely did not lay eyes on the POCs before they were filed, let alone read and vet them.[12]  These attorneys mass-signed POCs despite this Court's caution that an attorney who signs a claim "might be[come] . . . a fact witness" and "may be subject to a deposition."[13]  The Court added that attorneys signing POCs is "ill-advised"[14] and explained that it would be "concern[ed]" if "a thousand claims [are] signed by a particular lawyer."[15]  Mr. Cappelli apparently did not heed this caution as he allegedly signed 625 POCs on November 14, 2020.[16]  These POCs have an identical pre-printed signature page appended to them.[17]  Mr. Cappelli almost certainly did not vet—or even read—the claim forms submitted under his name.  Bern and Mr. Cappelli do not deny these facts.

**C.    KLS appears to have submitted questionable POCs with Mr. Cappelli's signature.**

Mr. Cappelli used KLS, a third-party vendor, to submit the POCs.[18]  Bern's brief concedes that KLS assisted it in preparing and uploading POCs.[19]  Bern contends that KLS employees are physically located in the Bern offices.[20]  But neither Mr. Cappelli nor Bern offers

---

[12]  *See* D.I. at 10–11.

[13]  Oct. 14, 2020 Hr'g at 183:19–22; 170:2–12.

[14]  Oct. 14, 2020 Hr'g Tr. at 190:12–17, D.I. 1520.

[15]  Oct. 14, 2020 Hr'g at 183:19–22; 170:2–12.

[16]  Hinton Decl. tbl. 1.

[17]  Jan. 22, 2021 Speckin Decl. ¶¶ 7–8.

[18]  D.I. 6380 at 7.

[19]  *Id.* ¶¶ 7–8.

[20]  D.I. 6380 at 3.

any evidence in support of that statement or anything else they assert in the motion. They rely

on a two-paragraph declaration from Mr. Cappelli that states where he practices law and that he

has "personal knowledge of the facts set forth in the Motion to Quash."[21] That is all.

### D. The Court authorized Rule 2004 discovery of certain third-party aggregators and then permitted even broader discovery in connection with confirmation.

On August 30, 2021, the Court held a conference on pending discovery motions and

authorized discovery to move forward against claims aggregators.[22] On September 14, Century

served a document subpoena on KLS.[23] Century's subpoena seeks documents relating to the

POCs submitted by KLS to Omni, the processes used for soliciting claimants, the processes used

for obtaining attorney signatures on the POCs, the intake systems used to process and track such

POCs, and other related information.

## ARGUMENT

### I. THE MOTION IS PROCEDURALLY DEFECTIVE.

#### A. Bern has no standing to move to quash a subpoena to another party.

Bern has no standing to quash a third-party subpoena. A "motion to quash or modify a

subpoena, in general, must be brought by the individual to whom it was directed."[24] An

exception exists where a third party can demonstrate the existence of "a privilege or privacy

---

[21]    Joseph Cappelli's September 27, 2021 Declaration ¶ 2, D.I. 6380-1.

[22]    Aug. 30, 2021 Hr'g Tr. at 46:10–21.

[23]    *See* D.I. 6346 (Century's Notice of Subpoena).

[24]    *Duffy v. Kent Cty. Levy Court*, 800 F. Supp. 2d 624, 628 (D. Del. 2011); *accord Wash. V. Thurgood Marshall Academy*, 230 F.R.D. 18, 21 (D.D.C. 2005); *United States v. Nachamie*, 91 F. Supp. 2d 552, 559 (S.D.N.Y. 2000).

interest in the subpoenaed information."[25]  But that exception does not apply here because Bern

has not even tried to establish a privilege or privacy interest in the subpoenaed documents.

Any alleged privilege belongs to Bern's underlying clients, not Bern itself.[26]  And no

client has proffered a supporting declaration or even objected—perhaps because there are no

clients for many of Bern's claims.  Nor does Bern have any privacy interest in documents that

Century seeks from KLS.[27]  Because there is no evidence that Bern owns or has a financial stake

in KLS, Bern cannot assert a privacy interest over the processes KLS used in preparing and

submitting POCs.  Similarly, Bern has not argued or tried to prove that it is protecting its clients'

confidentiality, an issue on which they too have been silent.

### B.     Bern's motion does not comply with the Local Rules for discovery disputes.

This Court's Local Rules require litigants to attempt to streamline and narrow discovery

disputes before making a discovery motion.  Bern simply ignores those rules.  Specifically, Local

Rule 7026-1(a) states that parties must meet and confer and cooperate on the appropriate scope

of discovery.  Just like the local rules in many other districts, Local Rule 7026-1(d) requires that

any discovery motion be accompanied by an averment that the parties met and conferred in good

faith and were unable to reach agreement; failure to comply with this requirement could result in

"dismissal of the motion."[28]  Bern did not comply with these requirements.  The Court should

deny the Motion on this basis alone and require Bern to meet and confer with Century.

---

[25]   *Id.*

[26]   *In re Chevron Corp.*, 650 F.3d 276, 283 n.8 (3d Cir. 2011).

[27]   *Ponsford v. United States*, 771 F.2d 1305, 1308 (9th Cir. 1985) (holding that absent proprietary interest in documents sought, party had no standing to quash).

[28]   *See Rodriguez v. Pie of Port Jefferson Corp.*, 2015 WL 1513979, at *3 (E.D.N.Y. Mar. 13, 2015) (denying discovery motion where moving party failed to "comply with the meet and confer rule").

Decisions on privilege issues are inherently fact-intensive and context-specific.[29]  At a minimum, the Court should deny the Motion to permit the parties to try and resolve the discovery disputes before burdening the Court with additional disputes to resolve.  Of course, Bern has presented no basis at all for granting the motion on the merits.

## II.   CENTURY SEEKS PLAINLY RELEVANT INFORMATION.

Under Federal Rules of Civil Procedure 26(b), "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."[30]  The discovery that Century seeks is relevant to investigate the post-petition eighty-fold increase in claims, particularly KLS's involvement in submitting POCs for Bern and Mr. Cappelli, whose signature appears on an inordinate number of questionable POCs.[31]  Investigating facially defective claims is relevant to assessing BSA's potential liability (which it seeks to discharge in bankruptcy) and the TDPs now before the Court through which the plan proponents propose to pay the POCs.  As this Court has observed, the sort of discovery at issue here could help determine the presumptive validity of the POCs and whether they should be entitled to vote on the Proposed Fifth Amended Plan of Reorganization.[32]

Century's subpoena will likely expose efforts to submit POCs that this Court should not even consider.  This weeding out will benefit the estate and all the parties, because it will lead to

---

[29]  *See In re Tribune Co.*, 2011 WL 386827, at *9 (Bankr. D. Del. Feb. 3, 2011) (noting that determining whether a privilege "applies is an intensely fact-and-circumstance-driven exercise.  The balancing of tensions which arise during the search for truth may, depending upon the particular circumstances involved, fall either way.").

[30]  The Federal Rules of Civil Procedure apply to these bankruptcy proceedings.  Fed. R. Bankr. P. 7026, 9014.

[31]  *See* D.I. 1975 at 2–3, 4–15.

[32]  Aug. 30, 2021 Hr'g Tr. at 46:11–20.

eliminating meritless claims.  A plan of reorganization that compensates real victims is impossible without this threshold inquiry into abuses in the claims process.

There are no facts before the Court to support Bern's assertion that all but three claims now either have a claimant's signature or have been withdrawn.  And the amendments that Bern describes—which it made, if at all, ***after*** insurers raised myriad problems with thousands of POCs—would only raise additional questions about a claims mill pumping out last-minute POCs.  As Mr. Cappelli admits, when he submitted hundreds of POCs just before the bar date, he had no claimant authority to do so.[33]  He would surely not have admitted that if Century had not called him out.  What about the POCs for which he has not been subject to inquiry yet?

## III.   THE INFORMATION CENTURY SEEKS IS NOT PRIVILEGED.

### A.   KLS provided ministerial paralegal services that were not necessary for Bern to communicate with any clients.

This is Bern's motion, and as the party asserting a privilege, Bern must establishing that some privilege applies—and Century has no burden to prove the opposite.[34]  Yet Bern offers no proof other than a two-paragraph declaration from Mr. Cappelli that states he has "personal knowledge of the facts set forth in the Motion to Quash."[35]  Mr. Cappelli does not specify which "facts" he has in mind.  To be clear, in his declaration Mr. Cappelli does not assert any specific facts relevant to the motion:  the declaration contains no statement about the relationship between KLS and Bern, what KLS did for Bern, or what specific reason there may be to consider any relevant documents privileged.  KLS itself has offered no proof or even an objection.

---

[33]   *Id.* ¶ 9.

[34]   *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019).

[35]   Joseph Cappelli's September 27, 2021 declaration at ¶ 2, D.I. 6380-1.

It is blackletter law that communications with a third-party are not privileged.[36]  Because "the attorney-client privilege obstructs the truth-finding process, it is construed narrowly, and protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege."[37]  That KLS might be Bern's preferred vendor, confers no special privilege status.  And Bern cites no authority to the contrary.

On the contrary, communications or work product from a third party that provides only ministerial services to a lawyer without any special analysis (such as an accountant might provide) are not privileged.  Nor does any privilege attach to what a lawyer says to such a party.[38]  There is nothing in the record to suggest that Bern is claiming any communications directly with any client, and communications between Bern and any (unspecified) client are not privileged if made in the presence of or communicated to third parties.[39]

*Ravenell v. Avis Budget Grp., Inc.*, is instructive.[40]  There, defendants refused to produce documents that they claimed were covered by the attorney-client privilege, including communications shared with a third-party that conducted audits on defendants' behalf.[41]  The court held that no privilege extended to communications with the vendor because its involvement

---

[36]  *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 352 F. Supp. 3d 207, 213–14 (E.D.N.Y. 2019) (disclosures to third party consultants not privileged where consultants were not necessary to improve the comprehension of counsel to enable counsel to provide legal advice).

[37]  *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991) (internal citations omitted).

[38]  *Emmanouil v. Roggio*, 499 Fed. App'x 195, 199 (3d Cir. 2012) ("Excluded from the privilege's protection is any advice that is not legal in nature, such as … communications made in the presence of a third party.").

[39]  *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), as amended (Oct. 12, 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *Barr Marine Products, Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979) (Communications between attorney and client are not privileged if made in the presence of or communicated to third parties.").

[40]  No. 08-CV-2113 (SLT), 2012 WL 1150450 (E.D.N.Y. Apr. 5, 2012).

[41]  *Id.* at *1.

9

was not necessary for effective communication between counsel and client.[42]  Specifically, the vendor's work involved creating "an online platform for the dissemination and collection of questionnaires," and "summariz[ing] the collected data in a chart, and, based on criteria provided by defendants' counsel," and "ma[king] a preliminary assessment of whether the individuals who completed the questionnaires met [certain] requirements."[43]  The court held that defendants failed to show why the auditing firm needed "to review the contents of the responses," as opposed to simply providing the platform,[44] and the auditing firm's "preliminary assessments neither 'improved the comprehension of the communications between attorney and client, nor provided advice outside the general expertise of attorneys yet essential to the ability of defendants' lawyers to provide legal advice.'"[45]

KLS's work was very similar to that of the vendor in *Ravenell*.  Bern has made no showing that disclosing anything at all—let alone confidential client communications—to KLS was "necessary" for Bern to render legal advice.  On the contrary, Bern states that KLS "provides contract paralegal and legal assistant services" and "KLS employees assisted Bern & Partners in preparing and uploading proofs of claim in the Boy Scouts case."[46]  Leaving aside that there are no facts in the record to support even these limited assertions, these are both administrative functions—surely the type of work that "neither 'improved the comprehension of the communications between attorney and client, nor provided advice outside" of Bern's "general expertise," yet "essential to the ability of defendants' lawyers to provide legal advice."[47]

---

[42]   *Id.* at *3.

[43]   *Id*. at *3.

[44]   *Id*. at *3.

[45]   *Id.* at *3 (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).

[46]   Motion to Quash ¶¶ 7, 8.

[47]   *Ravenell*, 2012 WL 1150450 at *3 (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.

**B.      Century's requests seek factual information,
          not analysis that could be subject to privilege.**

Additionally, most of the requests do not seek information that could possibly be

privileged.  Request numbers 1, 2, and 15 seek claim files and copies of intake logs—***not***

communications.  Such information is manifestly not protected, because "[t]he privilege attaches

to the communication itself, not to the facts communicated."[48]  Likewise, request number 3 seeks

names and email addresses, which are plainly not communications.  Indeed, "[f]acts gathered by

counsel in the course of investigating a claim or preparing for trial"—such as names and email

addresses—"are not privileged and must be divulged if requested in the course of proper

discovery."[49]

*Request 4* seeks contracts or agreements with law firms pertaining to services performed

in relation to this case.  These are clearly not "communication[s] made between privileged

persons in confidence for the purpose of obtaining or providing legal assistance for the client."[50]

If these documents helped establish that KLS provided some sort of service to Bern that could be

shielded from discovery, then surely Berm would have produced them.

*Request 5* seeks documents about the processes and procedures followed in providing

services in connection with this case, such as the protocols used for executing signatures for the

POCs.[51]  This request too seeks factual information.  Moreover, this information does not relate

to any specific clients, but rather to the nature of the work KLS performed.  Bern offers no

explanation why the attorney-client privilege would shield such factual information.

---

1999)).

[48]   *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997).

[49]   *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 174 F.R.D. 609, 632 (M.D. Pa. 1997).

[50]   *In re Chevron Corporation*, 650 F.3d 276, 289 (3d Cir. 2011) (internal quotations omitted).

[51]   *See* Subpoena at 9-10, D.I. 6346-2.

Other requests similarly seek factual information or information does not have anything to do with attorney-client communications:

- ***Request 6*** seeks documents concerning communications about obtaining attorney signatures for POCs submitted in this case.

- ***Request 8*** seeks the names of employees or members of other organizations who performed work in connection with this case.

- ***Request 12*** seeks documents and communications sent or received from KLS email addresses concerning POCs that KLS prepared.

- ***Request 13*** seeks documents and communications concerning KLS's advertisements and advertisements of other entities concerning this case.

- ***Request 14*** seeks documents concerning incentive bonuses and/or payments made to non-attorneys based on volume of claimants recruited in this case.

By their plain terms, all of these requests seek purely factual information about matters that have nothing to do with legal advice—matters to which no privilege could apply.

**C.**     **If Bern claims privilege over any documents, then it must produce a privilege log.**

Bern cannot just assert privilege and then not produce any documents. That is not how it works. If it claims privilege, then it must produce a privilege log.[52] That log must contain sufficient information for Century and the Court to assess whether the claim of privilege is valid.[53] As it stands now, there is no basis to evaluate any privilege claim.

---

[52] Fed. R. Civ. P. 26(b)(5); *see also AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, 2019 WL 917990, at *5 (D. Del. Feb. 25, 2019) (requiring that "if [party] withholds privileged or work-product protected documents, it will submit a privilege log that satisfies the requirements of Fed. R. Civ. P. 26(b)(5)").

[53] *See*, *e.g.*, *AbbVie Inc.*, 2019 WL 917990, at *5 (requiring that the party withholding documents based on privilege submit a privilege log with "a description of the document that will be meaningful to a reviewing judge" and "a description of the purpose of the document that establishes its privilege or work-product status.").

**IV.**     **TO THE EXTENT PRIVILEGE APPLIES, DISCLOSURE OF COMMUNICATIONS TO KLS WAIVED THE PRIVILEGE.**

Tellingly, Bern does not represent that it owns KLS.  Century seeks materials in ***KLS's possession***, which is by definition information for which any privilege—if it existed—was waived.[54]  No exception to this rule applies.  Courts have recognized a narrow exception to the above rule where "disclosure to a third party is necessary for the client to obtain informed legal advice."[55]  "As with the attorney-client privilege generally, '[w]hat is vital to the privilege is that the communication must be made in confidence for the purpose of obtaining legal advice from the lawyer."[56]  "Courts must narrowly construe the exception," because it applies only where "the third party [is] 'nearly indispensable or serve[s] some specialized purpose in facilitating the attorney-client communication.'"[57]  For example, communications to an accountant that the client's tax lawyer hires do not waive the privilege because "[a]ccounting concepts are a foreign language" to some attorneys, and the accountant's ability to translate can enable the attorneys to render sound legal advice.[58]

KLS's paralegal services are at most similar to creating "an online platform for the dissemination and collection of questionnaires," and "summariz[ing] the collected data in a

---

[54]   *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007), as amended (Oct. 12, 2007) ("Disclosing a communication to a third party unquestionably waives the privilege."); *Barr Marine Products, Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979) (Communications between attorney and client are not privileged if made in the presence of or communicated to third parties.").

[55]   *Westinghouse Elec. Corp.*, 951 F.2d at 1424 (citing 8 Wigmore, *Evidence* § 2301 at 583 (McNaughton rev. 1961)).

[56]   *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (quoting *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (emphasis in original)).

[57]   *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 352 F. Supp. 3d 207, 211 (E.D.N.Y. 2019) (quoting *Nat'l Educ. Training Grp., Inc. v. Skillsoft Corp.*, 1999 WL 378337, at *4 (S.D.N.Y. June 10, 1999)).

[58]   *See United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961).

chart" and "ma[king] a preliminary assessment of whether the individuals who completed the

questionnaires met [certain] requirements."[59]  Because the law does not protect from disclosure

communications with a vendor that performs this sort of work, any privilege that may have

existed has been waived.[60]

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion of Marc J. Bern & Partners

LLC to Quash Century's Subpoena to Produce Documents Issued to KLS Legal Solutions, LLC.

Dated:  October 12, 2021

Respectfully Submitted,

By:   /s/ Stamatios Stamoulis
    Stamatios Stamoulis (#4606)

STAMOULIS & WEINBLATT LLC
800 N. West Street
Third Floor
Wilmington, Delaware  19801
Telephone:     302 999 1540
Facsimile:      302 762 1688

O'MELVENY & MYERS LLP
Tancred Schiavoni (*pro hac vice*)
Gary Svirsky (*pro hac vice*)
Times Square Tower
7 Times Square
New York, New York  10036-6537
Telephone:     212 326 2000
Facsimile:      212 326 2061

*Counsel for Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and Indemnity Insurance Company of North America*

---

[59]   *Ravenell*, 2012 WL 1150450 at *3.

[60]   *Id.* at *3.