Adam J. Tunning
Katherine E. Antonson
MOULTON BELLINGHAM PC
27 North 27th Street, Suite 1900
P. O. Box 2559
Billings, Montana 59103-2559
Telephone: (406) 248-7731
Fax: (406) 248-7889
Adam.Tunning@moultonbellingham.com
Kat.Antonson@moultonbellingham.com

     Attorneys for Reciprocity Industries, LLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| Reciprocity Industries, LLC,<br><br>               Plaintiff,<br><br>  -vs-<br><br>Century Indemnity Company,<br><br>               Defendant. | Case No. 21-00011<br><br>**RECIPROCITY INDUSTRIES, LLC'S COMBINED REPLY BRIEF IN SUPPORT OF ITS MOTION TO QUASH SUBPOENA AND RESPONSE BRIEF IN OPPOSITION TO CENTURY'S MOTION TO TRANSFER** |

## TABLE OF CONTENTS

INTRODUCTION ...................................................................1

BACKGROUND ...................................................................1

ARGUMENT ......................................................................5

I.    THE SUBPOENAED INFORMATION IS IRRELEVANT .........................5

II.   THE SUBPOENA IS UNDULY BURDENSOME ..............................8

      A.    Reciprocity is entitled to special protection from burdensome discovery requests as a non-party. .......................................9

      B.    The Subpoena Is Unduly Burdensome Because It Is Not Narrowly Tailored To The Current Litigation......................................11

      C.    Transferring The Subpoena Would Further Burden Reciprocity. ......12

III.  THE ATTORNEY CLIENT PRIVILEGE PROTECTS THE SUBPOENAED INFORMATION.............................................13

      A.    The Disclosure To Reciprocity Did Not Waive The Attorney-Client Privilege...................................................................13

      B.    The Magnitude Of The Requested Document Production Makes Producing A Privilege Log Unusually Difficult. ...............................15

IV.   THE SUBPOENAED DOCUMENTS ARE PROTECTED BY THE WORK PRODUCT DOCTRINE ...............................................16

V.    THE SUBPOENA REQUESTS RECIPROCITY'S PROPRIETARY INFORMATION ...............................................................18

VI.   TRANSFERRING THE MOTION TO QUASH WILL SUBSTANTIALLY BURDEN RECIPROCITY..........................................20

VII.  RECIPROCITY IS ENTITLED TO ATTORNEYS FEES .........................21

CONCLUSION ...................................................................22

# TABLE OF AUTHORITIES

## Cases

9:18-CV-80311, 2021 WL 4482837 (S.D. Fla. Feb. 24, 2021) .................................................... 14

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142 (9th Cir. 2005) ...................................................................................................................................... 16

*Cellular Commc'ns Equip., LLC v. HTC Corp.*, No. 15CV2373-JAH-MDD, 2015 WL 12570944 (S.D. Cal. Dec. 16, 2015) ........................................................................................ 20

*CMB Expert, LLC v. Atteberry*, No. 3:14-MC-51-B-BN, 2014 WL 2197840, (N.D. Tex. May 27, 2014) ............................................................................................................................... 20

*Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Atty's, P.A.*, 519 F. Supp. 3d 1184 (S.D. Fla. 2021) ........................................................................................................... 14

*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, (9th Cir. 1994) .................................. 8

*Gonzales v. Google, Inc.*, 234 F.R.D. 674 (N.D. Cal. 2006) ......................................................... 19

*Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) ......................................... 9

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995) ........................................................................................................................................ 9

*In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) .......... 17

*In Re Riddell Concussion Reduction Litig.*, No. CV 13-7585 (JBS/JS), 2016 WL 7325512 ......... 5

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) ................................. 8, 10

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005) ........................................................ 10

*Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 629 (D. Nev. 2013) ..................................... 13, 17, 18

*United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982) ........................ 10

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997) .............................. 14

## Rules

Fed. R. Civ. P. 26 ................................................................................................................... 5, 17

Fed. R. Civ. P. 45 ............................................................................................... 5, 15, 18, 20, 21

ii

## INTRODUCTION

The Court should deny Century's Motion to Transfer and grant Reciprocity's Motion to Quash. This is not a fight Reciprocity should be thrust into. Century has already undertaken a massive discovery campaign in Delaware against thousands of claimants and numerous lawyers to undermine the legitimacy of the votes they will make in the Boy Scouts of America bankruptcy proceedings. Those discrete issues are being actively resolved in the Delaware Bankruptcy Court.

There is no reason to also subject Reciprocity to the extreme burden posed by Century's subpoena which literally requests tens of thousands of documents, most of which will need extensive review for attorney-client communications, work-product, and proprietary software information. Reciprocity has offered to provide Century verified responses to its questions about the claim aggregation process Reciprocity assisted with. No other burden is justified in this case.

## BACKGROUND

Reciprocity has previously described the facts relevant to the parties' motions in its Motion to Quash (Dkt. 1) and Motion in Opposition to Century's Motion to Expedite and in Support of Motion for Extension (Dkt. 13). Reciprocity incorporates those facts and standards by reference.

1

In its Response to Reciprocity's Motion to Quash and Motion to Transfer, Century has alleged new facts which necessitate further clarification regarding Reciprocity's role in the aggregating the boy scout abuse claims filed in Delaware. In fact, it seems Century is confused about Reciprocity's role and the following information about what services Reciprocity provided should, in and of itself, be enough to eliminate the need for the unduly burdensome subpoena.

Reciprocity was retained by three law firms: AVA Law Group, Eisenberg, Rothweiler, Winkler, Eisenberg & Jack, P.C., and Kosnoff Law (the "Law Firms") to help with providing advertising and intake of scouting abuse victims. However, no formal written engagement agreements were executed between the Law Firms and Reciprocity or those would have been produced to Century already.

Reciprocity began the project by creating and running television and digital ads focused on abuse in scouting. (*See e.g.* https://abusedinscouting.com/.) Potential claimants then contacted the Law Firms through Reciprocity by phone, web submissions, media outlets, and mail.

The Law Firms had provided Reciprocity with general information and base criteria for claims they would consider. For example, the Law Firms created the following questionnaire for Reciprocity to use when contacted by potential victims:

1) Were you or a loved one sexually abused by a Boy Scouts leader?
2) Name of abuser, if known?
3) When did the abuse occur? (year range – make sure they were under 18 when abuse occurred if not REJECT)

4) Where did the abuse occur? (need full address of description including city, state if it didn't occur at an actual address)
5) Please explain as best as possible the events that occurred (including # of times abuse occurred and if multiple, where each instance occurred to match up with locations and years of abuse)

Reciprocity's intake representatives objectively gathered the answers to these questions.

Next, Reciprocity's case managers reviewed the information collected to ensure the details were accurately recorded and, if necessary, would contact the client to gather more information.

Reciprocity's dedicated review team then provided a final review of the gathered information according to the Law Firms' parameters to ensure only qualified clients could engage with the Law Firms.

Following this review, a dedicated team of paralegals reviewed the potential client's information. If the claims passed the paralegal's review, the paralegal wrote up a narrative summary and sent the summary to the Law Firms for further review.

If the claim passed the Law Firms' review, the Law Firms, via Reciprocity's proprietary system, sent the client another detailed questionnaire developed by the Law Firms. Once the questionnaire was received and again reviewed, the Law Firms were able to use Reciprocity's proprietary software to create proof of claim forms using the information gathered throughout the intake and review process described.

The proof of claim forms were then provided to the clients to review and sign. If for some reason a proof of claim form was unable to be signed by a client, the attorneys at the Law Firms reviewed and signed them. Reciprocity did not sign any proof of claim forms.

Importantly, Century is baldly alleging there was some sort of nefarious arrangement to generate claims that did not have any merits. But, of the over 60,000 contacts to Reciprocity, only 16,868 proof of claims were filed by the Law Firms that used Reciprocity's services. The detailed review process used by Reciprocity and the Law Firms effectively filtered out unsupported or illegitimate claims. All of the claims which made it through this process were reviewed by an attorney prior to filing.

Reciprocity has offered to provide verified answers to Century's questions about the processes described above. Unfortunately, Century continues to maintain that Reciprocity must respond to the subpoena in full or submit itself to Delaware jurisdiction. That burden is not justified.

4

**ARGUMENT**

This Court should grant Reciprocity's Motion to Quash and deny Century's Motion to Transfer for the following reasons: (1) the Subpoenaed information is irrelevant, (2) the Subpoena is unduly burdensome, (3) the attorney-client privilege protects the subpoenaed information, (4) the Subpoenaed documents are protected by the work product doctrine, (5) the Subpoena requests Reciprocity's propriety information, and (6) transferring the Motion to Quash will substantially burden Reciprocity.

The power to issue subpoenas to nonparties under Fed. R. Civ. P. 45 (a)(1) is tempered by Fed. R. Civ. P. 26 (b)(1) which limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" Because Century's Subpoena requests information that is privileged, irrelevant, and not proportional to Century's needs in the underlying litigation, the Subpoena should be quashed.

## I.    The Subpoenaed Information Is Irrelevant

Under Fed. R. Civ. P. 26(b)(1), discovery is limited to that which is "relevant to any party's claim or defense." Speculative arguments regarding the relevance of tangentially related fee agreements is insufficient to meet the relevance test of Fed. R. Civ. P. 26(b)(1).  *See, In Re Riddell Concussion Reduction Litig.*, No. CV 13-7585 (JBS/JS), 2016 WL 7325512, at *3 (D.N.J. Jan. 19, 2016) (discovery of class representatives' fee agreements denied on the ground that the defendant's arguments

were "speculative and insufficient to demonstrate the relevance of the sought-after fee agreements.").

Here, Century alleges the information sought in its Subpoena is relevant to determine whether illegitimate claims were filed through Reciprocity's system. (Dkt. 6 "Century's Mem. In Opp'n to Reciprocity's Mot. To Quash" at 1-8). However, Century has failed to offer any evidence or argument supporting how much of the information it has requested could result in a claim's invalidity.

In support of its contention, Century cites to the Delaware Bankruptcy Court's observation that there is some concern about how the claims in the underlying BSA litigation were generated and that discovery related to the claim generation process "could be relevant to voting." (Dkt. 6 at 1). The Court's statement that some discovery regarding the claim generation process may be relevant to voting does nothing to establish that Century's specific requests are relevant to voting. While some of the Subpoenaed information may be relevant to voting, the bulk of the information requested is, at best, only tangentially related to the validity of the claims.

Specifically, Request for Production No. 15 requests documents concerning incentives paid to Reciprocity's employees for recruiting claimants and completing Claim Forms connected to the BSA litigation. (Dkt. 2-4 "Subpoena Duces Tecum to Reciprocity" at 12). Even if Reciprocity's employees were paid incentives for

6

completing Claim Forms, such information regarding incentives cannot establish the invalidity of even a single claim.

Likewise, Request No. 9 seeks documents regarding ownership or financial interest in claims in the BSA cases. However, any ownership or financial interest in claims in the BSA cases is irrelevant to the claims and defenses in the BSA litigation. Information regarding fee agreements cannot establish the validity of proof of claim forms.

Further, Century's Subpoena requests documents which are entirely unrelated to the BSA litigation. Request No. 12 seeks all documents regarding Reciprocity's website, caseopp.com, and Request No. 15 seeks copy of the contents of Reciprocity's entire intake system and all associated documents. (Dkt. 2-4 at 11, 12). These requests require the production of documents pertaining to any matter Reciprocity has ever been involved in. Such requests are clearly irrelevant.

Century has failed to establish why its requests regarding Reciprocity's employee bonus structure, financial interests, and unrelated claims within their intake system are relevant to any claim or defense in the BSA litigation.

Instead, Century's requests are plainly fishing for information to undermine the claim generation process as a whole. This is unnecessary, as Century itself notes, the Bankruptcy Court is already on notice that there may be concern with respect to that process. (Dkt. 6 at 1). The concern, though, involves numerous other

aggregation companies and many other lawyers representing BSA claimants. Reciprocity's detailed processes described above, on the other hand, were specifically designed to weed out non-meritorious claims before they were reviewed by the Law Firms. Again, Reciprocity will provide verified answers to Century's questions on the processes it used. What else could Century actually need to advance its interests in Delaware?

Century argues the Subpoenaed documents are relevant to establish the validity or invalidity of the claims in the BSA litigation. However, Century is seeking production of documents which cannot possibly achieve that purpose. Therefore, Century's Subpoena should be quashed because it seeks the production of irrelevant documents and information. Claim specific information can be acquired from the parties in the Delaware proceedings and Century's concerns about Reciprocity's processes can be resolved through written interrogatories.

## II.    The Subpoena Is Unduly Burdensome

Courts have broad discretion to determine whether a subpoena is unduly burdensome. *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). A subpoena which seeks to compel information regarding topics unrelated to or beyond the scope of the litigation is unduly burdensome. *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003).

8

**A.** Reciprocity is entitled to special protection from burdensome discovery requests as a non-party.

Century seems to argue that the subpoena is not unduly burdensome because Reciprocity is a party to the BSA litigation. Dkt. 6 at 8. Century asserts that Reciprocity is a party due to its relationship with Mr. Van Arsdale who "owns, operates, and closely supervises Reciprocity." Dkt. 6 at 8.

Reciprocity is not a party to the BSA litigation. Reciprocity has never appeared in the BSA litigation. Reciprocity and Mr. Van Arsdale are distinct legal entities. Reciprocity is a Montana limited liability company. Mr. Van Arsdale is merely one of its members. Even Mr. Van Arsdale, who is counsel for some of the parties to the BSA litigation, though, is not necessarily a party for discovery purposes. *See, Hickman v. Taylor*, 329 U.S. 495, 504, 67 S. Ct. 385, 390, 91 L. Ed. 451 (1947). In any event, Century cites to no authority in support of its claim that the connection between Mr. Van Arsdale and Reciprocity could possibly subject Reciprocity to the Delaware Bankruptcy Court's jurisdiction.

The Ninth Circuit, meanwhile, routinely grants extra protection to non-parties who are burdened with discovery requests. *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86 (N.D. Cal. 1995). This extra protection is warranted because "[n]onparty witnesses are powerless to control the scope of litigation and discovery and should not be forced to subsidize an unreasonable share of the costs of litigation to which they are not a party." *United States v. Columbia*

*Broad. Sys., Inc.*, 666 F.2d 364 (9th Cir. 1982); *see also Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003) (upholding order to quash subpoena seeking documents from non-party where "no attempt had been made to try to tailor the information request to the immediate needs of the case").

Where documents can be obtained from a party to a case, subpoenaing a nonparty for the documents without first attempting to obtain them from a party is unduly burdensome. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005). In *Moon*, plaintiff subpoenaed a nonparty demanding "any and all documents" over a ten-year period which pertaining to winter pool covers sold in any region. *Id.* The Court found that the requests were overbroad and should have been regionally and temporally tailored, at the very least. *Id.* Further, the Court found that the documents could have been obtained from the defendants, rather than from a nonparty. *Id.* The Court held that because plaintiffs failed to show that they attempted to obtain the documents from the defendant, requiring a nonparty to produce the documents imposed an undue burden. *Id.*

Here, as in *Moon*, Century could obtain the subpoenaed documents from parties to the litigation. Reciprocity should not subsidize that cost.

Century admits that it could request some of the subpoenaed information from the claimants in the underlying litigation but argues it would "invite accusations that Century is invading the privacy of 15,000 claimants…" Dkt. 6 at 9. Century has not

10

attempted to obtain the documents it requires from the actual parties to the case. Accordingly, subpoenaing Reciprocity for documents which it could obtain from parties to the litigation imposes an undue burden. Reciprocity, as a nonparty, is entitled to heightened protection from unduly burdensome discovery requests.

      B.  <u>The Subpoena Is Unduly Burdensome Because It Is Not Narrowly Tailored To The Current Litigation.</u>

Century alleges that its Subpoena is not unduly burdensome because it "merely seeks documents concerning Reciprocity's work on ***this*** case, i.e., work relating to a single project spanning less than two years." Dkt. 6 at 10. This statement is false and misleading. As outlined above, Century's Request for Production No. 12 seeks all documents regarding Reciprocity's website, caseopp.com, and Request No. 15 seeks copy of the contents of Reciprocity's entire intake system and all associated documents. (Dkt. 2-4 at 11, 12). These requests are not tailored to Reciprocity's work "on ***this*** case." Century's requests would Require Reciprocity produce documents relevant to any matter contained in Reciprocity's intake system, and any matter relating to Reciprocity's website. Century's Subpoena is unduly burdensome because it is not tailored to information relevant to the underlying case. Further, "***this*** case" involved over 60,000 contacts that resulting in over 15,000 proof of claim forms being filed. There is a lot of data to process and Century refuses to narrowly tailor its requests.

11

**C.** <u>Transferring The Subpoena Would Further Burden Reciprocity.</u>

Century argues that Reciprocity would not be unduly burdened if this Court transferred the Motion to Quash to the Delaware Bankruptcy Court because Reciprocity has "already sought relief there." Dkt. 7 at 14. That is not true. As described above, Reciprocity is not a party to the BSA litigation. Further, even the Delaware District Court's September 9th, 2021, Order refutes Century's contention that Reciprocity has appeared in Delaware Court. (Dkt 7 "Def.'s Mem. In Supp. Of Mot. To Transfer" at 8). The Order states, "Due to notice concerns raised in Mr. Simon's letter (DI 6166), I have not included Reciprocity Industries, LLC in this Order." Clearly the Delaware Court Judge was not under the impression that Reciprocity had made an appearance in Delaware Court, as she specifically found that her Order did not apply to Reciprocity due to lack of notice. (Dkt. 10-11 "Sept. 9th, 2021, Order" at ¶5). Reciprocity has not appeared in the BSA litigation and would be substantially burdened if it were forced to appear in Delaware.

Century contends that "transferring the Motion to Quash will not impose any burden on Reciprocity" and that "[o]nly a simple internet connection is needed to argue the Motion to Quash in Delaware." Dkt. 7 at 17, 18. Transferring the Motion would significantly burden Reciprocity. Reciprocity is not a Delaware Company. Reciprocity has not retained counsel licensed in Delaware and therefore cannot simply connect to the internet to argue a Motion in Delaware Court. The Delaware

Bankruptcy Court does not have jurisdiction over Reciprocity in the underling BSA litigation. Century's Motion to Transfer should be denied, as it would further burden Reciprocity, which already faces the undue burden of Century's Subpoena.

### III.    The Attorney Client Privilege Protects The Subpoenaed Information.

The Subpoenaed documents are protected by the attorney-client privilege. The privilege has not been waived due to Reciprocity's administrative involvement in the communications, or due to the format of Reciprocity's "privilege log."

### A. The Disclosure To Reciprocity Did Not Waive The Attorney-Client Privilege.

Century argues that the information Subpoenaed from Reciprocity is not privileged because Reciprocity's involvement in the claims process resulted in a waiver of the attorney-client privilege.  Dkt. 6 at 17. Century admits that an exception applies where a third party is involved in facilitating the communication but argues that Reciprocity's involvement was unnecessary and therefore destroys the privilege. Dkt. 6 at 19.

In deciding whether the attorney-client privilege protects a particular communication, a court's main focus is on whether the primary purpose of a communication is to solicit or provide legal advice. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D. Nev. 2013). If the primary purpose of a communication is to obtain to give legal advice, the communication is protected by the attorney-client privilege. *Id.* Courts routinely find that the attorney-client privilege protects individuals within

a "magic circle" who are helpful or appropriate in representation, rather than only individuals who are indispensable to representation (*e.g.,* secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consults a lawyer). *See, United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997). "The underlying concern is functional: that the lawyer be able to consult with others needed in the representation and that the client be allowed to bring closely related persons who are appropriate, even if not vital, to a consultation." *Id.*

Where a client seeks legal advice through a third-party secretary or other office administrator, the attorney-client privilege is not waived. *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Atty's, P.A.*, 519 F. Supp. 3d 1184, 1210 (S.D. Fla. 2021), *reconsideration denied,* No. 9:18-CV-80311, 2021 WL 4482837 (S.D. Fla. Feb. 24, 2021). In *Diamond Resorts*, the Court considered whether communications to an administrative assistant regarding services such as "document collection, document processing, and other ministerial tasks" were protected by the attorney client privilege. *Id.* at 1211. The Court found that the administrative assistant's services were "reasonably necessary for effective representation of the client," and therefore the communications were privileged. *Id.* at 1210.

Here, as in *Diamond Resorts*, the communications at issue were made with Reciprocity, which assisted in the administrative tasks necessary to representation. Reciprocity issued advertisements and questionnaires generated by the Law Firms,

14

collected responses, and sorted potential clients pursuant to Law Firm created criteria. These "document collection, document processing, and other ministerial tasks" are protected by the attorney-client privilege. The Subpoenaed information is protected by the attorney-client privilege.

**B.** The Magnitude Of The Requested Document Production Makes Producing A Privilege Log Unusually Difficult.

Century claims that Reciprocity has waived its privilege claim because it failed to produce a privilege log. Dkt. 6 at 15, 16. As Century asserts, the log must "describe the nature of the withheld documents, communications, or tangible things in a manner that" "enable[s] the parties to assess the claim." Dkt. 6 at 15, Fed. R. Civ. P. 45 (e)(2).

The Ninth Circuit has instructed that courts determining the sufficiency of a privilege log should consider:

(1) "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged;"

(2) "the timeliness of the objection and accompanying information about the withheld documents;"

(3) "the magnitude of the document production;" and

(4) "other particular circumstances of the litigation that make responding to discovery unusually easy ... or unusually hard."

15

*Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). Courts should apply these factors "in the context of a *holistic reasonableness analysis*" rather than in a "mechanistic determination of whether the information is provided in a particular format." *Id., emphasis added.*

Here, when considering these factors in light of the volume of the document production, Reciprocity's Motion to Quash sufficiently outlines its position that certain categories of responsive documents are privileged. While the particular format provided by Reciprocity may not meet Century's requirements for a "privilege log," the information provided by Reciprocity speaks to the material withheld and the specific reasons it is being withheld. In its Statement of Facts, Reciprocity has now clarified the underlying factual information requested by Century regarding the privileged information. The sheer magnitude of the requested documents makes it unreasonable to expect Reciprocity to separately identify in a privilege log each individual document being withheld for each of the 16,868 Proof of Claim forms filed through its system. Accordingly, Reciprocity has not waived its privilege by failing to provide a "privilege log" in a particular format.

## IV.    The Subpoenaed Documents Are Protected By The Work Product Doctrine

Century alleges that the work product doctrine does not protect the documents Subpoenaed under Requests for Production numbers 3, 5, and 6, which "seek factual

16

information about how Reciprocity submitted the POCs, including its processes." Dkt. 6 at 21.

The Ninth Circuit has held that documents prepared in anticipation of litigation are protected under Rule 26(b)(3) even where they are prepared by or for a party or for a party's representative. *In re Grand Jury Subpoena (Mark Torf/Torf Env't Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004). The Ninth Circuit applies the "because of" standard in considering whether a document is protected.  If the document has been prepared "in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation" and would not have been produced in substantially similar form without the prospect of impending litigation. *Id.*

Work product which was prepared at an attorney's direction in anticipation of litigation is protected by the work product doctrine. *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615 (D. Nev. 2013). In *Phillips*, the Court considered whether a memorandum which was prepared prior to the retention of an expert in a particular matter could be protected under the work product doctrine. *Id.* The memo was prepared by a Doctor in his business role at a corporation at the request of the Corporate Defendant's counsel. *Id.* The Court found that while the memo may have been prepared prior to the doctor's formal retention by the legal department, it was

17

prepared at the direction of Defendant's counsel in anticipation and furtherance of litigation. *Id.*

Here, the Subpoenaed documents are protected by the work product doctrine because the protected information includes the Law Firms' criteria for screening potential claimants, and the Law Firms' process for screening clients. The work product provided by the Law Firms includes their legal analysis regarding what is required to make a valid claim against the BSA and which factual scenarios would result in valid or invalid claims. As in *Phillips*, the fact that the clients had not yet been officially retained does not decrease the interest that the Law Firms have in protecting their work-product. Century's Subpoena seeks documents prepared in anticipation of litigation which are protected by the work product doctrine.

## V.    The Subpoena Requests Reciprocity's Proprietary Information

Century alleges that Reciprocity has failed to prove the specific harm that will result from disclosure of trade secrets and other proprietary information. Dkt. 6 at 22. Courts may quash or modify a subpoena which seeks trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i).

To determine whether the information is protected as confidential commercial information, the party opposing discovery must make a showing that it has "historically sought to maintain the confidentiality of this information." *Gonzales v.*

*Google, Inc.*, 234 F.R.D. 674, 685 (N.D. Cal. 2006). When a subpoenaed party meets that initial burden, the burden shift to the issuing party to show a "substantial need for testimony or material that cannot be otherwise met without the undue hardship." *Id.* A "substantial need" requires a showing that the requested information is at lease relevant and essential to the party's case. *Id.*

Here, Century seeks production of all documents and communications concerning Reciprocity's website and a copy of Reciprocity's intake systems. Dkt. 2-1 at RFP Nos. 12, 15. This information is proprietary and confidential.

Century seeks the production of information regarding Reciprocity's website and proprietary intake system which are specifically designed for their use in claims such as the underlying litigation. Reciprocity, understandably, does not wish to disclose this information to similarly situated businesses (some of whom have been subpoenaed in this case too). Reciprocity has historically sought to maintain the confidentiality of this information. It invests heavily in its information technology security to ensure that the work put into developing its software is protected from outside interests.

Century has offered no evidence in support of its position that the information is discoverable. Century has failed to meet its burden of showing the information cannot be otherwise obtained without undue hardship and is relevant and essential

to its case. Century's Subpoena should be quashed because it seeks Reciprocity's proprietary and confidential business information.

## VI.    Transferring The Motion To Quash Will Substantially Burden Reciprocity

Under Fed. R. Civ. P. 45(f), a court may transfer a motion to the issuing court only with the consent of the person subject to the subpoena or "if the court finds exceptional circumstances."   The proponent of the transfer has the burden of establishing that exceptional circumstances exist. *Id.* The primary factor in this analysis is any burden that will be imposed on local non-parties by transferring. *Cellular Commc'ns Equip., LLC v. HTC Corp.*, No. 15CV2373-JAH-MDD, 2015 WL 12570944, at *1 (S.D. Cal. Dec. 16, 2015). Even where the "underlying action is 'fairly complex,'" a "related" case is pending in the issuing court, and other "related motions are pending before the [foreign[ court", "exceptional circumstances warranting a Rule 45(f) transfer" do not exist. *CMB Expert, LLC v. Atteberry*, No. 3:14-MC-51-B-BN, 2014 WL 2197840, at *2 (N.D. Tex. May 27, 2014).

Transferring the Motion to Quash would substantially burden Reciprocity. Reciprocity has not appeared in the Delaware Bankruptcy Court in the underlying BSA action. Reciprocity has not retained counsel licensed in Delaware Bankruptcy Court. Reciprocity is a small Montana business ill-equipped to retain counsel and litigate issues thousands of miles away. Because Century's Motion to Transfer

would significantly burden Reciprocity, and Century has not cited to "exceptional circumstances" warranting transfer, Century's Motion should be denied.

## VII.   Reciprocity Is Entitled To Attorneys Fees

Reciprocity is entitled to recover attorney's fees regarding its motion to quash and the associated motions. Under Fed. R. Civ. P. 45(c)(1), a party responsible for issuing a subpoena must take steps to avoid unduly burdening the person subject to the subpoena.

As outlined above, the Subpoena is unduly burdensome. Century completely failed to make a good faith effort to reduce the unnecessary burden the Subpoena imposed on Reciprocity. Reciprocity objected to Century's Subpoena in detail, explaining why the Subpoena was so burdensome to a small Montana Company. Dkt. 2-2. Century failed to respond to Reciprocity's objection with anything but a blanket statement ordering compliance regarding the entire request. Dkt. 2-3. Century refused to compromise on a single request in order to limit Reciprocity's burden. Dkt. 2-2.

In short, Century issued an extremely burdensome Subpoena against Reciprocity, continues to refuse to reimburse Reciprocity for its efforts in responding to the Subpoena, and has filed hundreds of pages of documentation in support of their already burdensome request. Accordingly, Reciprocity is entitled to Attorneys fees to compensate its efforts in quashing the Subpoena and the related Motions.

## CONCLUSION

For these reasons, Reciprocity respectfully requests this Court grant Reciprocity's Motion to Quash Century's Subpoena and deny Century's Motion to Transfer Reciprocity's Motion to Quash to the Bankruptcy Court for the District of Delaware.

**DATED** this 6th day of December, 2021.

MOULTON BELLINGHAM PC

By: _/s/ Adam J. Tunning_
    ADAM J. TUNNING
    KATHERINE E. ANTONSON

*Attorneys for Reciprocity Industries, LLC*

22

# **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was duly served upon the following via CM/ECF on this 6th day of December, 2021.


MATTHEW M. HIBBS
Crowley Fleck PLLP
1915 South 19th Avenue
Bozeman, MT 59718
Main: 406.556.1430
Fax: 406.556.1433


                                          ___*/s/ Adam J. Tunning*___
                                          Adam J. Tunning
                                          Katherine E. Antonson

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(d)(2)(e), I certify that this document is printed text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word is 4,693 excluding the Caption, Signature Line, and Certificate of Compliance.


By: _/s/ Adam J. Tunning___
    Adam J. Tunning
    Katherine E. Antonson